UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**WAYNE R. GOLD**, Regional Director     \*
of Region Five of the National Labor     \*
Relations Board, for and on behalf     \*
of the **NATIONAL LABOR RELATIONS**     \*
**BOARD**,     \*
    \*
       103 S. Gay Street, 8th Floor     \*
       Baltimore, MD 21202     \*
    \*
                **Petitioner**     \*
      v.     \*          **CIVIL No.**
    \*
    \*
**STATE PLAZA, INC.,**     \*
**A WHOLLY-OWNED SUBSIDIARY**     \*
**OF RB ASSCOIATES, INC.,**     \*
**D/B/A STATE PLAZA HOTEL**     \*
    \*
       Mr. James Marten, President     \*
       State Plaza Inc., A Wholly-Owned     \*
       Subsidiary of RB Associates, Inc.,     \*
       d/b/a State Plaza Hotel     \*
       2117 E Street, NW     \*
       Washington, DC  20037     \*
    \*
             **Respondent**     \*
    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PETITION FOR INJUNCTION UNDER SECTION 10(j)**
**OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED**

To The Honorable, the Judges of the United States District Court for the District of Columbia.

Wayne R. Gold, Regional Director of Region Five of the National Labor Relations Board (the Board) petitions this Court for and on behalf of the Board pursuant to Section 10(j) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C. Sec. 160(j), herein, the Act) for appropriate injunctive relief pending the final disposition of the matters involved now pending before the Board on unfair labor practice charges alleging that STATE PLAZA, INC., A WHOLLY-OWNED SUBSIDIARY OF RB ASSOCIATES, INC., D/B/A STATE PLAZA HOTEL (Respondent) has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1), 8(a)(3), and 8(a)(5) of the Act (29 U.S.C. 158(a)(1), (3), and (5)).

The facts of this case, as summarized in this Petition, chronicle an unremedied course of continuing unlawful conduct by Respondent in response to protected, concerted and Union activity among its employees in the recently certified bargaining unit. Petitioner has reasonable cause to believe that Respondent has interrogated employees about their Union activity, created the impression of surveillance concerning their Union activity, promulgated an overly broad no distribution rule, solicited decertification petitions, promised employees a raise if they signed the anti-Union petitions, withdrew recognition from the Union in the context of the tainted decertification efforts, and dealt directly with employees by granting the promised pay raises after its unlawful withdrawal of recognition. This egregious misconduct occurred in the context of Respondent's prior, unremedied, unfair labor practices in Case 5-CA-31346, where the Administrative Law Judge concluded that Respondent unlawfully discharged a leading Union

2

organizer, threatened employees that Respondent would sell its business if employees voted for the Union, solicited and promised to remedy employee grievances, and granted wage increases and other benefits to discourage Union activity.[1]

Accordingly, Petitioner shows that interim injunctive relief is just and proper to protect employees from Respondent's continued retaliation, prevent irreparable harm to the Union's level of support and employees' Section 7 rights, and to restore the status quo and preserve the remedial purposes of the Act.

In support of the request for injunctive relief, Petitioner respectfully shows the following:

1. Petitioner is the Regional Director of Region Five of the Board, an administrative agency of the United States, and files this petition for and on behalf of the Board.

2. The Court has jurisdiction of this matter under Section 10(j) of the Act.

3. (a) On July 25, 2005, under the provisions of the Act, the Hotel and Restaurant Employees, Local 25, UNITE HERE International Union, (the Union or Local 25), filed an unfair labor practice charge with the Board alleging in Case 5-CA-32594 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act. A copy of this charge was served by mail on Respondent on July 26, 2005 and is attached as Exhibit A.

(b) On August 11, 2005, the Union filed a first amended unfair labor practice charge with the Board alleging in Case 5-CA-32594 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act. A

---

[1] That case, JD-44-04, 2004 WL 1149361, is currently pending before the Board on

copy of this first amended charge was served by mail on Respondent on August 12, 2005 and is attached as Exhibit B.

(c)    On October 14, 2005, the Union filed a second amended unfair labor practice charge with the Board alleging in Case 5-CA-32594 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act.  A copy of this second amended charge was served by mail on Respondent on October 15, 2005 and is attached as Exhibit C.

(d)    On October 31, 2005, the Union filed a third amended unfair labor practice charge with the Board alleging in Case 5-CA-32594 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. A copy of this third amended charge was served by mail on Respondent on October 31, 2005 and is attached as Exhibit D.

(e)    The unfair labor practice charges described in paragraph 3(a)-(d), were referred to Petitioner, as the Regional Director of Region Five of the Board, whose office is located in Baltimore, Maryland.

4.    (a)    On October 31, 2005, upon the unfair labor practice charges referred to above in paragraphs 3(a)-(d), the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued a Complaint and Notice of Hearing under Section 10(b) of the Act, alleging in Case 5-CA-32594 that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section

---

Respondent's exceptions to the judge's decision.

8(a)(1), (3) and (5) of the Act.  A copy of the Complaint and Notice of Hearing in Cases 5-CA-

32594 is attached as Exhibit E.

(b)      On November 10, 2005, Respondent filed an Answer to the Complaint and

Notice of Hearing in Case 5-CA-32594.  A copy of Respondent's Answer is attached as

Exhibit F.

5.      (a)  On December 27, 2005, upon the unfair labor practice charges referred to

above in paragraphs 3(a)-(d), the General Counsel of the Board, on behalf of the Board, by the

Petitioner as the Regional Director of Region Five of the Board, issued an Amended Complaint

and Notice of Hearing under Section 10(b) of the Act, alleging in Case 5-CA-32594 that

Respondent has engaged in, and is engaging in, unfair labor practices as charged within the

meaning of Section 8(a)(1), (3) and (5) of the Act.  A copy of the Amended Complaint and

Notice of Hearing in Cases 5-CA-32594 is attached as Exhibit G.

(b)      On January 9, 2006, Respondent filed an Amended Answer to the

Amended Complaint and Notice of Hearing in Case 5-CA-32594.  A copy of Respondent's

Amended Answer is attached as Exhibit H.

6.  There is reasonable cause to believe that the allegations of the Amended Complaint in

Case 5-CA-32594 are true, and that Respondent has engaged in and is engaging in unfair labor

practices within the meaning of Section 8(a)(1), (3) and (5) of the Act, affecting commerce within

the meaning of Section 2(6) and (7) of the Act.  More particularly, there is reasonable cause to

believe that Respondent is interfering with, restraining and coercing employees in the exercise of

their rights guaranteed in Section 7 of the Act; discriminating in regard to the hire, tenure and

terms and conditions of employment of employees to discourage membership in the Union; and

refusing to bargain in good-faith with the Union as the certified and exclusive collective-bargaining representative of unit employees.  In support of this request for injunctive relief, Petitioner shows the following:

(a)    Respondent is a District of Columbia corporation that maintains an office and place of business in Washington, DC, within this judicial district.  Respondent owns and operates a hotel and provides food, beverage, and lodging to its customers.  During the preceding twelve months, a representative period, in the course and conduct of its business operations, Respondent derived gross revenues in excess of $500,000, and purchased and received goods, supplies, and services valued in excess of $5,000 directly from points located outside the District of Columbia.

(b)    Respondent is now, and at all material times has been, an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

(c)    The Union is an unincorporated association in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and other terms and conditions of employment.

(d)    The Union is now, and has been at all material times, a labor organization within the meaning of Section 2(5) of the Act.

(e)    At all times material herein, the following named persons have occupied the position set forth opposite their respective names, and are now, and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and/or agents of Respondent within the meaning of Section 2(13) of the Act:

| | | |
|---|---|---|
| Alexandra Guillen | - | Agent |
| Reina Lozano | - | Agent |
| Corrado Palenzona | - | General Manager |
| Steve Belo | - | Supervisor |

(f)  At all material times, an unnamed agent held the position of Counsel to Respondent and has been an agent of Respondent within the meaning of Section 2(13) of the Act.

(g)  The following employees of Respondent, herein called the Unit, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time employees, including cooks, prep cooks, dishwashers, pantry, utility, waiters, busers, hosts, bartenders, room servers, servers, housekeepers, room attendants, lobby attendants, housemen, turn-down attendants, laundry attendants, guest service agents, bellmen, bell captains, mini-bar attendants and restaurant cashiers, employed by the Employer at the State Plaza Hotel in Washington, D.C; excluding all reservation sales representatives, office clericals, engineers, painters, guards and supervisors as defined by the Act.

(h) On or about June 30, 2004, the Union was certified as the exclusive collective-bargaining representative of the Unit.

(i) At all times since June 30, 2004, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

7.  Beginning in March 2005, Respondent reacted to the employees' and the Union's continued efforts to bargain toward an initial contract by engaging in a second round of flagrant and substantial unfair labor practices, which extended and exacerbated the egregious and unremedied unfair labor practices already engaged in by Respondent as documented in Case

5-CA-31346, described above at footnote 1. Specifically, Respondent interrogated employees about their Union activity, created the impression of surveillance concerning their Union activity, promulgated an overly broad no distribution rule, solicited decertification petitions, promised employees a raise if they signed the anti-Union petitions, withdrew recognition from the Union in the context of the tainted decertification efforts, and dealt directly with employees by granting the promised pay raises after its unlawful withdrawal of recognition from the Union, and engaged in other coercive actions, all of which have had the effect of inhibiting and eroding the employees' support for the Union and the Union's ability to bargain on behalf of employees in an atmosphere free from the taint of debilitating unfair labor practices.

Absent interim injunctive relief ordering Respondent to recognize and bargain with the Union, Respondent's continued disregard for the Union's representational role will irreparably deprive employees of the benefits of collective bargaining pending the Board's administrative adjudication and will inevitably lead to further erosion of employee support for the Union.

8. Thus Petitioner has reasonable cause to believe that Respondent, through the supervisors and agents named in paragraph 6(e), acting on Respondent's behalf, engaged in a course of conduct designed to: interfere with, coerce, and restrain its employees in the exercise of their rights guaranteed in Section 7 of the Act to form, join or assist labor organizations; to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection; discriminate in regard to hire, tenure and terms and conditions of employment of employees to discourage membership in the Union; and refuse to bargain in good-faith with the Union with respect to wages, hours, and other terms and conditions of employment. More specifically, and in support of

this request for injunctive relief, Petitioner submits there is reasonable cause to believe the following:

9.  In or around June 2005, the exact date being presently unknown to the undersigned, Respondent, by Alexandra Guillen in the employee cafeteria, restrained and coerced employees in the exercise of their rights guaranteed in Section 7 of the Act by telling employees that they have betrayed Respondent by not signing a decertification petition.

10.  Respondent, by Corrado Palenzona:

(a)  in or around March 2005, the exact date being presently unknown to the undersigned, in a conference room, restrained and coerced employees by telling them that Respondent was going to rid itself of the Union by sponsoring a decertification petition;

(b)  in or around March 2005, the exact date being presently unknown to the undersigned, in his office, told employees that, because they support the Union, he does not want anything to do with them; and

(c)  on or about April 19, 2005, and again on or about May 12, 2005, in his office, through oral announcements, promulgated the following rule:

> Employees cannot distribute pro-union literature inside the Hotel at any time and that pro-union literature is prohibited within the Hotel.

11.  Respondent, by the individuals named below, on or about the dates (where exact dates are not set forth, they are presently unknown to the undersigned) and at the locations opposite their respective names, created the impression among its employees that their union activities were under surveillance by Respondent:

| (Agent) | (Date) | (Location) |
|---------|--------|------------|
| Corrado Palenzona | March 2005 | Palenzona's Office |
| Corrado Palenzona | April 19, 2005 | Palenzona's Office |
| Corrado Palenzona | May 12, 2005 | Kitchen |
| Corrado Palenzona | May 12, 2005 | Palenzona's Office |
| Alexandra Guillen | June 2005 | Employee Cafeteria |
| Corrado Palenzona | June 2005 | First Floor, Hotel |

12  Respondent, by the individuals named below, on or about the dates (where exact dates are not set forth, they are presently unknown to the undersigned) and at the locations opposite their respective names, interrogated employees about their union activities:

| (Agent) | (Date) | (Location) |
|---------|--------|------------|
| Corrado Palenzona | March 2005 | Palenzona's Office |
| Corrado Palenzona | April 19, 2005 | Palenzona's Office |
| Corrado Palenzona | May 12, 2005 | Kitchen |
| Corrado Palenzona | May 12, 2005 | Palenzona's Office |
| Alexandra Guillen | June 2005 | Employee Cafeteria |
| Corrado Palenzona | June 2005 | First Floor Hotel Room |

13  Respondent, by the individuals named below, on or about the dates (where exact dates are not set forth, they are presently unknown to the undersigned) and at the locations opposite their respective names, promised employees increased benefits and improved conditions of employment, if employees signed a petition to decertify the Union:

| (Agent) | (Date) | (Location) |
|---|---|---|
| Alexandra Guillen | March 2005 | North Side Elevator, Hotel |
| Alexandra Guillen | March 2005 | Second Floor, Hotel |
| Alexandra Guillen | March 2005 | First Floor, Hotel |
| Alexandra Guillen | March 2005 | Room, Hotel |
| Reina Lozano | March 2005 | North Side Elevator, Hotel |
| Reina Lozano | March 2005 | Second Floor, Hotel |
| Reina Lozano | March 2005 | Room, Hotel |
| Corrado Palenzona | March 2005 | Palenzona's Office |
| Alexandra Guillen | April 2005 | Hallway, Hotel |
| Reina Lozano | April 2005 | Hallway, Hotel |
| Alexandra Guillen | June 2005 | Hotel Cafeteria |

14  Respondent, by the individuals named below, on or about the dates (where exact dates are not set forth, they are presently unknown to the undersigned) and at the locations opposite their respective names, restrained and coerced employees by soliciting employees to sign a decertification petition:

| (Agent) | (Date) | (Location) |
|---|---|---|
| Corrado Palenzona | March 2005 | Palenzona's Office |
| Alexandra Guillen | March 2005 | In Hotel's North Side Elevator |
| Alexandra Guillen | March 2005 | Second Floor, Hotel |
| Alexandra Guillen | March 2005 | First Floor, Hotel |

| | | |
|---|---|---|
| Alexandra Guillen | March 2005 | Room, Hotel |
| Reina Lozano | March 2005 | North Side Elevator, Hotel |
| Reina Lozano | March 2005 | Second Floor Hotel |
| Reina Lozano | March 2005 | Room, Hotel |
| Alexandra Guillen | April 2005 | Hallway, Hotel |
| Reina Lozano | April 2005 | Hallway, Hotel |
| Alexandra Guillen | June 2005 | Hotel Cafeteria |

15  Respondent, by the individuals named below, on or about the dates (where exact dates are not set forth, they are presently unknown to the undersigned) and at the locations opposite their names, restrained and coerced employees by telling and instructing employees to solicit a decertification petition:

| (Agent) | (Date) | (Location) |
|---|---|---|
| Corrado Palenzona | March 2005 | Diplomat Room |
| Corrado Palenzona | March 2005 | Food & Beverage Office, Hotel |

16     (a)  On or about July 8, 2005, Respondent increased the benefits of its employees by granting all employees in the housekeeping department a wage rate raise.

(b)  Respondent engaged in the conduct described above in paragraph 16(a), because employees of Respondent formed, joined or assisted the Union and engaged in concerted activities; to discourage employees from engaging in these activities; and to encourage employees to refrain from these activities.

17  Since on or about December 2, 2004, the Union, by letter, requested that Respondent bargain collectively with the Union as the exclusive collective-bargaining representative of the Unit.

18  On or about July 5, 2005, Respondent withdrew its recognition of the Union as the exclusive collective-bargaining representative of the Unit.

19      (a)  On or about July 8, 2005, Respondent granted all employees in the housekeeping department a wage rate raise.

        (b)  The subject set forth above in paragraph 19(a) relates to wages, hours and other terms and conditions of employment of the Unit and is a mandatory subject for the purposes of collective bargaining.

        (c)  Respondent engaged in the conduct described above in paragraph 19(a), without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct and the effects of this conduct.

20.  On various dates between March and July 2005, Respondent, by Corrado Palenzona, Reina Lozano and Alexandra Guillen, in various locations, bypassed the Union and dealt directly with its employees in the Unit by promising benefits to employees who signed the decertification petition.

21.  There is reasonable cause to believe that by the acts and conduct set forth in paragraphs 9 through and including paragraph 16(a), and by each of those acts, Respondent has interfered with, restrained and coerced and is interfering with, restraining and coercing its employees in the exercise of their rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

22.  There is reasonable cause to believe that by the acts and conduct set forth in paragraph 16, and by each of those acts, Respondent has been discriminating in regard to the hire or tenure, or terms or conditions of employment, of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

23.  There is reasonable cause to believe that by the acts and conduct set forth in paragraphs 18, 19, and 20, and by each of those acts, Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees within the meaning of Section 8(d) of the Act in violation of Section 8(a)(1) and (5) of the Act.

24.  The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

25.  The unfair labor practices of Respondent described above in paragraphs 7 through 24 have taken place within this judicial district.

26.  In these circumstances, Petitioner has reasonable cause to believe that Respondent thwarted its employees' attempts to unionize and support the certified Union's collective-bargaining efforts and coerced loss of support for the Union by:

(a)     engaging in the serious unfair labor practices alleged in paragraphs 9 through 16(a) and 18 through 20, including;

(b)     promulgating an overly broad no-distribution/solicitation rule;

(c)     creating the impression of surveillance of Union activity;

(d)     interrogating employees about their Union involvement;

(e)     telling employees that Respondent was going to rid itself of the Union;

14

(f)    telling and instructing employees to solicit a decertification petition;

(g)    promising benefits by telling employees they would receive a raise if they signed a petition seeking the removal of the Union;

(h)    telling employees that Respondent does not want anything to do with them because they support the Union;

(i)    telling employees that they have betrayed Respondent by not signing a decertification petition;

(j)    soliciting signatures from employees for a decertification petition;

(k)    withdrawing recognition from the Union based on a tainted decertification petition and without evidence that an uncoerced majority of employees no longer support the Union;

(l)    dealing directly with employees regarding wages after unlawfully withdrawing recognition; and

(m)    granting employees in the bargaining unit wage increases in accordance with the promises made when the decertification petitions were circulated.

27.  Petitioner submits that based on the conduct pending before the Board in Case 5-CA-31346 and the conduct at issue in this Case 5-CA-32594, it may fairly be anticipated that unless Respondent's conduct of the unfair labor practices described above is immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices in violation of Section 8(a)(1), (3) and (5) of the Act, and will continue to:  (1) interfere with, restrain and coerce employees in the exercise of the rights guaranteed them by Section 7 of the Act; (2) discriminate against employees in regard to their hire

or tenure of employment or their terms and conditions of employment to discourage membership in the Union; and (3) fail and refuse to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees within the meaning of Section 8(d) of the Act in violation of Section 8(a)(1) and (5) of the Act.

28.  Petitioner submits that such violations of the Act, if they are not enjoined immediately, will deprive employees of the benefits of collective bargaining that lie at the heart of the Act, and will lead inevitably to further erosion of employee support for the Union.  In this regard, a Board order that issues months in the future after the administrative proceeding fully runs its course, will be unable to prevent the irreparable harm that is occurring now, to both the Union's level of support and to employees' Section 7 rights to bargain collectively through their chosen representative, as a result of Respondent's unfair labor practices.  On the other hand, the interim relief sought in this proceeding, namely, an order from this Court enjoining Respondent's conduct, restoring the status quo, and requiring that Respondent recognize and bargain with the Union immediately, will prevent any further loss of support and is far superior to a Board order that may issue months from now, when employee support for the Union may be completely extinguished as a result of Respondent's flagrant, continuing, and unremedied unfair labor practices.  An interim bargaining order will permit employee support for the Union and its bargaining efforts to renew itself in an atmosphere cleansed from the taint of Respondent's unlawful conduct while there is still an opportunity for free and uncoerced choice with respect to Union representation and bargaining.  Thus, in these circumstances, injunctive relief is warranted to prevent irreparable destruction to the Union's level of support and employees' Section 7 rights,

to prevent unit employees from losing the benefits of collective bargaining pending Board

Decision and Order, and to insure the efficacy of the Board's final Order.

29. Moreover, unless Respondent's unfair labor practices are restrained immediately,

clear and serious violations will continue to strike at the heart of the Act and to undermine the

important public policy fostering free choice in collective bargaining before Respondent can be

placed under legal restraint through the regular procedures of a Board order and the ultimate

enforcement decree of an appropriate United States Court of Appeals. Thus, unless injunctive

relief is immediately obtained, Respondent will continue the unlawful conduct described in this

Petition, or like or related acts and conduct, during the administrative proceedings before the

Board, and during any subsequent proceedings before a Court of Appeals to enforce or review a

Board Order. The ultimate result of such continuing conduct is that the rights of Respondent's

employees to bargain collectively through their chosen representative, and the rights of the Union

to continued representation and bargaining on behalf of said employees, are being held in

abeyance because of Respondent's unlawful conduct pending the ultimate outcome of the

administrative proceeding.

30. Further, Petitioner submits that the anticipated Board order and subsequent Court

decree may not effectively remedy the violations of the Act present here. Rather, the reliable and

foreseeable result of Respondent's conduct, during the interim, for however long it takes, is that

the Respondent will dissipate support for the Union, at the expense of the employees and the

Union. Equally important, during the passage of time in which Respondent has been and, unless

enjoined, will continue to be the beneficiary of its unlawful acts, Respondent will have

demonstrated its unchecked power to ignore employees' rights to organize and support their

17

Union, contrary to the purposes and policies of the National Labor Relations Act, thereby chilling the employees in the exercise of their fundamental Section 7 rights to form, join and assist the Union, and to bargain collectively through the Union as their chosen and certified representative. In fact, Respondent's unfair labor practices have had a chilling impact on the employees' support for the Union as reflected by the large number of signatures on the tainted decertification petition that Respondent sponsored and caused to be circulated after the onslaught of Respondent's other unlawful conduct, as outlined above.

31.  Absent interim injunctive relief, Respondent will likely succeed in irreparably destroying the Union's representational role and depriving employees of the benefits of collective bargaining, and a Board order in due course will be ineffective in restoring the lawful status quo ante.  If Respondent is not compelled to bargain immediately and cease and desist from its unlawful conduct, any remaining employee support for the Union will become extinct during the Board's administrative adjudication.  Absent interim injunctive relief, therefore, Respondent's continued disregard for the Union's exclusive representational role will vitiate the Section 7 rights of Respondent's employees freely to choose or reject a bargaining representative, and Respondent clearly will have demonstrated to the remaining employees that the Union is unable to come to the aid of its supporters.  Restoration of the lawful status quo ante will be impossible unless Respondent's employees are given affirmative signs by this Court that future union activity will not be futile because of the severity and pervasiveness of Respondent's unfair labor practices. Conversely, with the requested injunctive relief, the Union's negotiators can return to the bargaining table and leading Union supporters can report for work confident that their lawful

organizational and representational activities will be free from Respondent's coercion or

discrimination and enforced and protected by the Board and the courts, as mandated by the Act.

32.  In short, Respondent's unfair labor practices, as described above in paragraphs 7

through 24, have and are continuing to irreparably harm employees of the Respondent in the

exercise of the rights guaranteed them by Section 7 of the Act.  More particularly, Respondent's

unfair labor practices have caused and will continue to cause the following harm:

(a) As a result of Respondent's failure and refusal to bargain with the Union, the

Union's employee support will be irreparably undermined over time as conditions change in the

Hotel without any Union input.

(b) As a result of Respondent's failure and refusal to bargain with the Union, the

employees will be deprived of the benefits of collective bargaining.

33.  An order requiring interim bargaining is necessary to prevent the irreparable erosion

of the Union's majority support while the Union is unable to represent employees and affect their

working conditions.  Additionally, such an order is necessary to prevent irreparable harm to the

employees through their loss of the benefits of collective bargaining during Board litigation.

34.  Unless injunctive relief is immediately obtained, it can fairly be anticipated that

employees will permanently and irreversibly lose the benefits of the Board's processes and the

exercise of statutory rights for the entire period required for Board adjudication, a harm which

cannot be remedied in due course by the Board.

35.  There is no adequate remedy at law for the irreparable harm being caused by

Respondent's unfair labor practices, as described above in paragraphs 7 through 24.

36. Granting the temporary injunctive relief requested by Petitioner will cause no undue hardship to Respondent, particularly because Respondent will merely be doing what it is already legally obligated to do, i.e., cease and desist from unfair labor practices and bargain in good-faith with the certified and exclusive bargaining representative of its employees.

37. In balancing the equities in this matter, the harm to the employees involved herein, to the public interest, and to the purposes and policies of the Act if injunctive relief, as requested, is not granted, outweighs any harm that the grant of such injunctive relief will work on Respondent.

38. Consequently, to avoid the serious consequences set forth above, it is essential, appropriate, and just and proper for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to such policies, to the employees and the Union involved, and to the public interest, and in accordance with the purposes of Section 10(j) of the Act, that pending the final disposition of the matters involved now pending before the Board, Respondent be enjoined and restrained as prayed below:

## PRAYER FOR RELIEF

1. That the Court issue an Order directing Respondent to appear before this Court, at a time and place to be fixed by the Court, and show cause, if any there be, why, pending final adjudication by the Board of the matters pending in Case 5-CA-32594, a temporary injunction should not issue as follows:

A. Enjoining and restraining Respondent, **STATE PLAZA, INC., A WHOLLY-OWNED SUBSIDIARY OF RB ASSOCIATES, INC., D/B/A STATE PLAZA HOTEL,** its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert

or participation with it or them, at Respondent's Hotel located at 2117 E Street, NW, Washington, DC, or any other location obtained during the life of this injunction, and pending the final disposition of the matters involved now pending before the Board, to cease and desist from:

(1)  withdrawing recognition from Hotel and Restaurant Employees, Local 25, UNITE HERE International Union as the collective-bargaining representative of the unit employees;

(2)  failing and refusing to recognize and bargain with Hotel and Restaurant Employees, Local 25, UNITE HERE International Union;

(3)  dealing directly with unit employees regarding terms and conditions of work;

(4)  granting unit employees a wage rate raise without affording the Union an opportunity to bargain and to discourage employees' union activities;

(5)  instructing unit employees to solicit and sign a decertification petition;

(6)  promising unit employees increased benefits and improved conditions of employment if employees sign a decertification petition;

(7)  coercing employees in the exercise of their Section 7 rights;

(8)  promulgating and maintaining an overly broad no distribution rule;

(9)  creating the impression among its employees that their union activities were under surveillance;

(10)  interrogating employees about their union activities;

(11)  restraining and coercing employees by soliciting employees to sign a decertification petition; and

(12)  in any like or related manner interfering with, restraining or coercing employees in the exercise of their Section 7 rights.

B.    Affirmatively, requiring Respondent, its officers, representatives, agents, supervisors, employees, attorneys, and all persons acting in concert or participation with them, at Respondent's Hotel located at 2117 E Street, NW, Washington, DC, or any other location obtained during the life of this injunction, and pending the final disposition of the matters involved now pending before the Board, to:

(1)  Recognize and, upon request, bargain in good faith with the Union as the certified exclusive collective-bargaining representative of the unit employees regarding their wages, hours, and other terms and conditions of employment;

(2)  If requested by the Union, rescind the wage rate raise granted to its unit employees on July 8, 2005, and any other unilateral changes made in terms and conditions of employment since Respondent withdrew recognition from the Union on July 5, 2005;

(3)  Post copies of the District Court's opinion and order in this matter, in English and in Spanish translation, at all locations where Employer notices to employees are customarily posted, at all future work locations that Respondent acquires during the term of the Court's Order in this Section 10(j) injunction proceeding; and at each of Respondent's own offices in the Washington, DC, metropolitan area; maintain such notices free from all obstructions or defacements pending the Board's administrative proceeding; and grant to agents of the Board reasonable access to the Employer's facility to monitor compliance with this posting requirement; and

(4)  Within twenty (20) days of the issuance of this Order, file with the District Court, and serve a copy upon the Regional Director of Region 5 of the Board, a sworn affidavit from a responsible Employer official which describes with specificity how the Employer has complied with the terms of this decree, including the exact locations where the Employer has posted the materials required under this Order.

(5)  That upon return of the Order to Show Cause, the Court issue an order enjoining, restraining and directing Respondent in the manner set forth above.

(6)  That the Court grant such other and further relief as may be just and proper.

(7)  That the Court grant expedited consideration to this petition, consistent with 28 U.S.C. Sec. 1657(a) and the remedial purposes of Section 10(j) of the Act.


Dated in Baltimore, Maryland, this 24th day of February 2006.


/s/
_____

WAYNE R. GOLD, REGIONAL DIRECTOR
National Labor Relations Board, Region 5
103 S. Gay Street, 8th Floor
Baltimore, MD 21202


/s/                                                      /s/
_____          _____
Albert W. Palewicz, Regional Attorney        Thomas P. McCarthy, Counsel for Petitioner
National Labor Relations Board, Region 5     National Labor Relations Board, Region 5
103 S. Gay Street, 8th Floor                      Washington Resident Office
Baltimore, MD  21202                             1099 14th Street, N.W., Room 5528
410-962-2811                                         Washington, DC 20570
                                                            202-501-8659

23