BEFORE THE

NATIONAL LABOR RELATIONS BOARD

In the Matter of:

**STATE PLAZA, INC., a wholly
owned subsidiary of R.B.
ASSOCIATES, INC., d/b/a STATE
PLAZA HOTEL,**

               Respondent,

    and                             Case No.  **5-CA-32594**

**HOTEL AND RESTAURANT EMPLOYEES
LOCAL 25, UNITE HERE
INTERNATIONAL UNION,**

               Charging Party.

 

The above-entitled matter came on for hearing pursuant to notice, before **KARL H. BUSCHMANN,** Administrative Law Judge, at **National Labor Relations Board, 1099 14th Street, N.W., 5th Floor, Washington, D.C. 20570-0001,** on **Friday, March 17, 2006** at **9:36 a.m.**

<u>A P P E A R A N C E S</u>

**Counsel for the General Counsel:**

THOMAS P. McCARTHY, ESQ.
National Labor Relations Board
Region 5
1099 14th Street N.W.
Washington, D.C. 20570-0001
(202) 501-8859

STEPHANIE COTILLA, ESQ.
National Labor Relations Board
Region 5
103 South Gay Street
Baltimore Maryland 21202

**On behalf of the Charging Party:**

DEVKI VIRK, ESQ.
Bredhoff & Kaiser, PLLC
805 15th Street N.W.
Suite 1000
Washington, D.C. 20005
(202) 842-2600

**On Behalf of the Respondent:**

JONATHAN W. GREENBAUM, ESQ.
EMILY K. HARGROVE, ESQ.
Nixon Peabody, LLP
401 9th Street N.W.
Suite 900
Washington, D.C. 20004-2128
(202) 585-8326

**Also Present:**

MARTA ARAGON
Interpreter

# I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---------|--------|-------|----------|---------|-----------|
| Hilda Gonzalez | 736 | 740 | -- | -- | -- |
| Veronica Cruz | 745 | 750 | -- | -- | -- |
| Gladis Bonilla | 753 | -- | -- | -- | -- |
| Maria Leiva | 759 | 763 | -- | -- | -- |
| Juanita Perez | 765 | 768 | -- | -- | -- |
| Yessenia Cateres | 769 | 772 | -- | -- | -- |
| Anita Viera | 773 | 775 | 778 | -- | -- |
| Aida Fuentes | 778 | 781 | -- | -- | -- |
| Fanny Reid | 791 | -- | -- | -- | -- |
| Lisa Alvarado | 795 | 806 | -- | -- | -- |
| Stephen Bello | 807 | 819 | 829 | -- | -- |
| Corrado Palenzona | 831 | 837 | -- | -- | -- |
| Corrado Palenzona | 838 | -- | -- | -- | -- |
| Sang Nguyen | 854 | 859 | 868 | -- | -- |
| Jennifer Shykula | 869 | -- | -- | -- | -- |

## E X H I B I T S

| EXHIBIT | FOR IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| GENERAL COUNSEL'S | | |
| GC-152 and 152(a) | 851 | 852 |
| GC-153 and 153(a) | 851 | 852 |
| GC-154 through 156 | 852 | 853 |
| RESPONDENT'S | | |
| R-5 | 834 | 836 |
| R-6 | 834 | 836 |
| R-7 | 844 | 850 |

1                    P R O C E E D I N G S

2                                              (9:15 a.m.)

3        ADMINISTRATIVE LAW JUDGE BUSCHMANN:  On the record.

4        MS. HARGROVE:  Your Honor, the next witness is Hilda

5   Gonzalez.  And we will need an interpreter for her.

6        JUDGE BUSCHMANN:  Before you sit down I have to swear you

7   in.

8   (Whereupon,

9                        HILDA GONZALEZ

10  was called as a witness by and on behalf of the Respondent,

11  and after having been first duly sworn, was examined and

12  testified as follows:)

13       JUDGE BUSCHMANN:  Please sit down.  Thank you.

14                      DIRECT EXAMINATION

15  Q.   BY MS. HARGROVE:  Good morning, Ms. Gonzalez, could you

16  please state your full name, for the record?

17  A.   It's Hilda Argentina Gonzalez.

18  Q.   Ms. Gonzalez, are you currently employed?

19  A.   Working?

20  Q.   Yes.

21  A.   Yes.

22  Q.   Where do you work?

23  A.   At the State Plaza.

24  Q.   What position do you hold at the State Plaza?

25  A.   Housekeeper.

1  Q.  How long have you worked at the State Plaza?

2  A.  Next month is going to be three years.

3  Q.  Ms. Gonzalez, did you ever attend any union meetings?

4  A.  You mean if I went to the meeting?

5  Q.  Yes.

6  A.  Yes.  I did.

7  Q.  How many union meetings did you attend?

8  A.  I don't remember if it was two or three, but I did

9  attend.

10 Q.  Do you know the date of the last meeting you attended?

11 A.  I don't remember exactly because it varied.

12 Q.  Do you remember the year, what year the last meeting you

13 attended?

14 A.  Well, maybe it was 2001, 2000 because that's at the time

15 when I started working and that's the time when I attended.

16     MS. HARGROVE:  Your Honor, if I may approach the witness.

17     JUDGE BUSCHMANN:  Yes.

18 Q.  BY MS. HARGROVE:  Ms. Gonzalez, I'm going to direct your

19 attention to General Counsel's Exhibit 3.  Can you look at

20 that document?

21 A.  Yes.

22 Q.  Did you sign that document?

23 A.  Yes.

24 Q.  Do you recall who asked you to sign that document?

25 A.  I don't remember exactly but I signed it.  I did sign it.

1    MR. GREENBAUM:  Your Honor, could we go off the record

2    for a second?

3    **JUDGE BUSCHMANN:  Go off the record.**

4    **(Off the record.)**

5    **JUDGE BUSCHMANN:  Let's go back on the record.**

6    Q.  BY MS. HARGROVE:  Ms. Gonzalez, was anyone with you when

7    you signed GC Exhibit 3?

8    A.  Well, maybe the person who brought it to me because I

9    couldn't bring it myself.  So maybe that was the person who

10   was there.

11   Q.  Did anyone promise you a rise if you would sign this

12   petition?

13   A.  No.

14   Q.  Did anyone tell you that Mr. Palenzona would get you a

15   raise if you signed this petition?

16   A.  I signed it because I had attended the union meetings

17   several times and it was always the same.  There was never an

18   answer.  So what I wanted was to get rid of it.

19   Q.  What do you mean by "nothing ever happened"?  She just

20   testified that nothing ever happened.  What do you mean by

21   nothing ever happened?

22   A.  When I started attending, they said that they were going

23   to get some changes and, of course, if you attend those

24   meetings, it's because you want to improve.

25   MR. McCARTHY:  Your Honor, if I might show her the

1  exhibit.

2  Q.    BY MS. HARGROVE:   I direct your attention to GC Exhibit

3  5, the second and third page of GC Exhibit 5.  Do you

4  recognize this document?

5  A.    Yes.  I do.

6  Q.    Did you sign GC Exhibit 5?

7  A.    I signed two or three of these papers.  There was one

8  that I didn't sign, the second one.  I don't know because I

9  was on vacation.  So I don't know which was the one I didn't

10  sign.

11  Q.    But did you sign GC Exhibit 5 specifically?

12  A.    Is this five?

13  Q.    Yes.  That's what I just showed you GC Exhibit 5.  Do you

14  see your signature?

15  A.    Let me look for it.  Yes.

16  Q.    Do you recall who brought you this document to sign?

17  A.    I don't recall exactly who it was.  Somebody, one of my

18  co-workers maybe it was.

19  Q.    Why did you sign GC Exhibit 5?

20  A.    Well, because I wanted some changes and there were many

21  problems with the union, that they would come and go and so

22  many things.

23  Q.    What kind of problems with the union?

24  A.    Well, they would come to the hotel and they did -- how

25  can I tell you -- just talking, you know, like talking.

1    Q.    Did anyone from the union ever come to your house?

2    A.    At the beginning, yes.

3    Q.    How many times?

4    A.    Once or twice.  I don't remember but they did come.

5    Q.    Did anyone promise you a $2.50 raise if you would sign GC

6    Exhibit 5?

7    A.    This one, no.

8    Q.    Do you know Reina Lozano?

9    A.    Yes.  She works with us.

10    Q.    Do you know Alex Guillen?

11    A.    Yes.  I know her.

12    Q.    Did Alex or Reina ever tell you you'd get a raise if you

13    would sign GC Exhibit 5?

14         MR. GREENBAUM:  That's been asked and answered, Your

15    Honor?

16         JUDGE BUSCHMANN:  Objection overruled.

17         THE WITNESS:  Not at all.

18         MS. HARGROVE:  Thank you, Your Honor.  No further

19    questions, Your Honor.

20         MR. McCARTHY:  Your Honor, if I may have just a moment?

21         JUDGE BUSCHMANN:  Yes.

22         MR. McCARTHY:  I'm ready to proceed, Your Honor.

23         JUDGE BUSCHMANN:  Yes, please.

24                        **CROSS-EXAMINATION**

25    Q.    BY MR. McCARTHY:  Good morning, ma'am.  My name is Thomas

1    McCarthy.  I'm counsel for the General Counsel of the

2    National Labor Relations Board.  I'd like to ask you a few

3    questions about your testimony that you just gave.

4    A.   Yes.  Of course.

5    Q.   When you began working at the State Plaza Hotel, you were

6    making $9.35 per hour, correct?

7    A.   Yes.

8    Q.   And then I believe a year later in about April 2004, you

9    received an annual raise raising your salary, your wage from

10   $9.35 to $9.63, correct?

11   A.   I don't remember exactly, but yes they gave me raise,

12   $.35 or $.40.

13   Q.   Do you recall then in April of 2005 that you received a

14   raise from $9.63 to $9.94?

15   A.   Well, maybe.  I'm saying every year I would get a raise.

16   Q.   And every year your raise was about $.35 on your

17   anniversary date, wasn't it?

18   A.   I've only had two anniversaries.

19   Q.   But during those anniversaries, your raise was about

20   $.35, correct?

21   A.   Yes.

22   Q.   And then on July 5th, 2005 after you signed the third

23   petition, you received a raise to $12.50, didn't you?

24   A.   Well, yes, I received a raise but I can't tell you how

25   much.

1  Q.   You testified that you signed GC-5 because you wanted

2  some changes, correct?

3  A.   Yes.

4  Q.   And after you signed GC-5, you did receive a change

5  because you received a raise to $12.50 per hour, correct?

6  A.   Well, when I'm talking changes, I'm talking about not

7  wanting to be imposed where you working, not wanting to be

8  imposed to do things that you don't want to.

9  Q.   But my question was, you did receive a change in your pay

10  after you signed GC Exhibit 5, didn't you?

11  A.   I don't know if I'm explaining myself clearly.  When I'm

12  talking about changes, I'm talking about changes that I

13  expected from the union.

14  Q.   But you testified that you -- Okay.  You typically clean

15  the second floor rooms of the hotel, correct?

16  A.   When I'm cleaning the second floor rooms, that was during

17  the last year because when you just start you are sent from

18  downstairs to upstairs, back and forth.

19  Q.   So you could be sent to clean rooms on another floor to

20  help out another housekeeper, couldn't you?

21     MS. HARGROVE:  Objection, Your Honor, this is beyond the

22  scope of direct.

23     JUDGE BUSCHMANN:  Yes.  What's the point?  Mr. McCarthy,

24  I don't understand some of the questioning because I think

25  it's repetitious.  I mean the fact that she got a pay raise,

1  we all know that.  The fact that she signed the card, the

2  petition, she's testified to that.  I think it's just

3  belaboring the record with information that is repetitious.

4        MR. McCARTHY:  I have one more question, Your Honor.

5        JUDGE BUSCHMANN:  Don't you agree?

6        MR. McCARTHY:  I was exploring another area tangentially,

7  Your Honor, but I agree with regard to the wage raise, yes.

8        JUDGE BUSCHMANN:  Well, I don't want to preclude you from

9  inquiring about matters, which are relevant.  So, I don't

10  know where you are going with that question, but maybe you

11  ought to go ahead and ask it, make sure that I'm not

12  precluding you from any area that is, in your opinion,

13  relevant.

14  Q.   BY MR. McCARTHY:  There have been times when other

15  housekeepers have helped you clean rooms on a particular

16  floor?

17  A.   You mean if other housekeepers working there have helped

18  me cleaning on the floor?

19  Q.   You clean approximately 12 rooms per floor, correct?

20  A.   Yes.

21  Q.   And there's three more rooms per floor because there's 15

22  rooms per floor, isn't there?

23  A.   Yes.

24  Q.   So somebody else helps you clean those other three,

25  somebody else cleans those other three rooms you don't clean,

1  right?

2  A.    Yes.

3  Q.    And Adriana Nunez has helped you clean rooms on the

4  second floor, hasn't she?

5      MS. HARGROVE:  Objection, Your Honor.  Again, this is

6  going beyond the scope of direct.

7      JUDGE BUSCHMANN:  Yes.  I know it seems like it, but I'm

8  trusting his judgment that he's going, pursuing a line that's

9  relevant.  So far, I don't see it either.  But, go ahead,

10  Mr. McCarthy.

11      THE WITNESS:  Would you repeat the question, please?

12  Q.    BY MR. McCARTHY:  Adriana Nunez has helped clean rooms on

13  floors, hasn't she?

14  A.    Well, whenever she's sent there she cleans those three

15  rooms.  And if they pay me more I clean them too.

16      MR. McCARTHY:  No further questions.

17      JUDGE BUSCHMANN:  Anything?

18      MS. HARGROVE:  No, Your Honor.

19      JUDGE BUSCHMANN:  Okay.  Thank you very much.  You may

20  step down.

21      MS. HARGROVE:  Your Honor, if I may go get our next

22  witness.

23      JUDGE BUSCHMANN:  Yes.  Please.

24      MS. HARGROVE:  We will also need an interpreter for the

25  next witness.

1    JUDGE BUSCHMANN:  Off the record.

2  (Off the record.)

3    JUDGE BUSCHMANN:  Let's go back on the record.

4    Okay.  I have to swear you in.  Please raise your right

5  hand.

6  (Whereupon,

7                    VERONICA CRUZ

8  was called as a witness by and on behalf of the Respondent,

9  and having been first duly sworn, was examined and testified

10  as follows:)

11    JUDGE BUSCHMANN:  Please sit down.  Thank you.

12                    DIRECT EXAMINATION

13  Q.  BY MR. GREENBAUM:  Good morning, Ms. Cruz.  Just for the

14  record, please state your name.

15  A.  Veronica Cruz.

16  Q.  Where do you work, Ms. Cruz?

17  A.  At the State Plaza Hotel.

18  Q.  What's your job there?

19  A.  Housekeeping.

20  Q.  How long have you held that job?

21  A.  I've been there for three years.

22  Q.  Who is your supervisor?

23  A.  We have four supervisors in housekeeping.

24  Q.  Who are they?

25  A.  Lidia, Karen, Fanny and Abdullah.

1  Q.   Do you know who the general manager of the hotel is?

2  A.   Yes.

3  Q.   Who is that?

4  A.   Mr. Corrado Palenzona.

5       MR. GREENBAUM:  Your Honor, I'd like to direct the

6  witness to General Counsel's Exhibit Number 3.

7       Could the interpreter show her General Counsel's Exhibit

8  Number 3?

9       THE INTERPRETER:  Yes.  This is the one.

10 Q.   BY MR. GREENBAUM:  Have you seen that before?

11 A.   Yes.

12 Q.   Did you sign that document?

13 A.   Yes.

14 Q.   Why did you sign it?

15 A.   Because I didn't want any more union, that's all.

16 Q.   Why did you not want any more union?

17 A.   Because I just don't want any union.

18 Q.   Did you feel your managers treated you well at the time

19 you signed that document?

20 A.   Normal.

21 Q.   Did anyone promise you a raise if you signed that

22 document?

23 A.   No.  Nobody.

24 Q.   Do you recall who gave you this to sign?

25 A.   Yes.

1  Q.  Who was that?

2  A.  Reina.

3  Q.  What's Reina's last name?

4  A.  Lozano.

5  Q.  Who is Reina Lozano?

6  A.  She's the other co-worker, just a housekeeper.

7  Q.  Did Ms. Lozano say that she was carrying Mr. Palenzona's

8  orders when she asked you to sign this?

9  A.  No.

10  Q.  Did Ms. Lozano say, if you sign this you would get a

11  raise to $12.50 an hour?

12  A.  No.

13  Q.  I'd like to direct your attention to General Counsel's

14  Exhibit Number 4.  Do you recognize that?

15  A.  Yes.

16  Q.  Did you sign that?

17  A.  No.  Not this one.

18      MR. GREENBAUM:  Your Honor, can I approach?

19      JUDGE BUSCHMANN:  Yes.

20  Q.  BY MR. GREENBAUM:  Do you see your signature on that?

21  A.  Yes.  Here it is.

22  Q.  I'd like to direct your attention to General Counsel's

23  Exhibit Number 5.

24      MR. GREENBAUM:  What I pointed the witness to is General

25  Counsel's Exhibit 5 the second page.

748

1   Q.   BY MR. GREENBAUM:  Have you seen that before?

2   A.   Yes.

3   Q.   Did you sign that?

4   A.   Yes.

5   Q.   Now with respect to General Counsel's Exhibits 4 and 5,

6   did anyone make you any promises to sign that document?

7   A.   No, nobody.

8   Q.   Did anyone threaten you to sign that document?

9   A.   Nobody.

10   Q.   Did you sign that document on your own free will?

11   A.   Yes.

12   Q.   Did Mr. Palenzona ask you to sign that document?

13   A.   No.

14   Q.   Did any of your supervisors ask you to sign that

15   document?

16   A.   No, nobody.

17   Q.   Do you recall an employee named Marleni Jiron?

18   A.   Yes.

19   Q.   Did you accuse Marleni Jiron of taping a meeting?

20   A.   Not really accusing her that she was doing it, it was

21   that I felt that she was recording something, but I wasn't

22   sure of what she was doing.

23   Q.   Do you recall the meeting?

24   A.   Yes.

25   Q.   Where did that meeting take place?

1  A.  At the housekeeping department laundry.

2  Q.  Do you recall if anyone from management was at that

3  meeting?

4  A.  Yes.

5  Q.  Who?

6  A.  Mr. Corrado, Mr. Bello.

7  Q.  Who is Mr. Bello?

8  A.  He's the president it.  I'm not sure.

9  Q.  What was the purpose of that meeting?

10  A.  I don't remember.

11  Q.  Do you remember when the meeting was?

12  A.  No.  Not exactly the day when it was.

13  Q.  At that meeting, did Mr. Palenzona tell the employees to

14  sign a decertification petition?

15  A.  No.

16  Q.  Why do you think that Marleni Jiron was recording that

17  meeting?

18      MR. McCARTHY:  Your Honor, I'm going to object that she

19  said Marleni Jiron was recording the meeting.  She testified

20  that she never accused her of recording the meeting and I

21  think -- I don't think there's a fact in evidence that will

22  establish that she thought that.

23      MR. GREENBAUM:  I believe the testimony was she didn't

24  flatly accuse her but she thought she was.

25      JUDGE BUSCHMANN:  Well, maybe you ought to ask her what

1  evidence she had that caused her to believe that she was

2  taping the meeting.

3  Q.    BY MS. HARGROVE:  What caused you to believe that Marleni

4  Jiron was taping that meeting in the laundry room?

5  A.    Well, I didn't say that Marleni was recording.  I said I

6  asked if somebody in the room was recording.  And I said,

7  "Well, if somebody were recording this, what is happening

8  here, what would happen?"

9  Q.    Did Marleni say anything at that meeting?

10  A.    She was the one who talked.

11  Q.    And what was she saying at that meeting?

12  A.    She was the one who got rather excited, and I don't know

13  really what happened because I want to change and I went

14  home, but she was the one who got kind of excited.

15      MR. GREENBAUM:  I have nothing further.

16      JUDGE BUSCHMANN:  Okay.

17                    **CROSS-EXAMINATION**

18  Q.    BY MR. McCARTHY:  Good morning ma'am.  My name is Thomas

19  McCarthy, and I represent the General Counsel of the National

20  Labor Relations Board in this matter.  I'd like to ask you a

21  few questions about your direct examination here this

22  morning.

23      The union never visited your house, did they?

24  A.    No.

25  Q.    I want to direct your attention to General Counsel's

1  Exhibit 3.

2      MR. McCARTHY:  May I approach, Your Honor?

3      JUDGE BUSCHMANN:  Yes.

4  Q.  BY MR. McCARTHY:  And I'd like for you to compare that

5  with General Counsel's Exhibit 112.  I'm showing you what's

6  in evidence as General Counsel's Exhibit 112.  I'd like to

7  ask you when did you sign General Counsel's Exhibit 3?

8  A.  I don't remember the exact date.

9  Q.  Do you recall whether you wrote your name twice on that,

10  the day you signed General Counsel's Exhibit 3?

11  A.  No.  They just gave me one paper.  I don't remember that

12  they had given me two papers.  I just signed one.

13  Q.  Taking a look at General Counsel's Exhibit 3, your name

14  is written there twice, isn't it?

15  A.  Yes.  It is here twice but this is the only one that I

16  wrote.

17  Q.  Did you write the one on the left or the right hand side?

18  A.  The left one.

19  Q.  And you did not write your name on the right hand side,

20  did you?

21  A.  No.

22  Q.  And then directing our attention to General Counsel's

23  Exhibit 112, did you write your handwriting -- Is that your

24  signature on that document?

25  A.  It's my name but not my signature because they requested

1   my name.  Not my signature.

2   Q.   Then directing your attention back to General Counsel's

3   Exhibit 3, if you see the 12th name on the first page.  Was

4   Francis Laryea's (ph.) name crossed out when you signed GC-3?

5   A.   I don't remember.

6   Q.   What about on the second page, Number 27, Felicia

7   Johnson, was her name crossed out when you signed GC-3?

8   A.   I don't remember.  I don't remember if it was crossed

9   out.

10      MR. McCARTHY:  No further questions, Your Honor.

11      JUDGE BUSCHMANN:  Anything?

12      MS. HARGROVE:  No.

13      JUDGE BUSCHMANN:  Okay.  Thank you very much.  You may

14   step down.

15      THE WITNESS:  Thank you.

16      JUDGE BUSCHMANN:  Thank you.

17      MR. McCARTHY:  Your Honor, are we still on the record?

18      JUDGE BUSCHMANN:  Yes.

19      MR. McCARTHY:  AT this time the General Counsel would

20   release Alexandra Guillen from the subpoena.

21      **JUDGE BUSCHMANN:  Good.  Off the record.**

22   **(Off the record.)**

23      **JUDGE BUSCHMANN:  Let's go back on the record.**

24   Call your next witness.

25      MS. HARGROVE:  Gladis Bonilla.

```
 1   (Whereupon,

 2                          GLADIS BONILLA

 3   was called as a witness by and on behalf of the Respondent,

 4   and having been first duly sworn, was examined and testified

 5   as follows:)

 6        JUDGE BUSCHMANN:  Please sit down.

 7        THE WITNESS:  Thank you.

 8                       DIRECT EXAMINATION

 9   Q.   BY MR. GREENBAUM:  Good morning.  Can you please state

10   your name for the record?

11   A.   Gladis Bonilla.

12   Q.   Good morning, Ms. Bonilla.  My name is John Greenbaum,

13   and I represent the State Plaza Hotel in this matter.

14        JUDGE BUSCHMANN:  Ms. Interpreter, can you repeat her

15   first name, what is it?

16        THE WITNESS:  Gladis.

17        JUDGE BUSCHMANN:  Gladis, I see, thank you.

18   Q.   BY MS. HARGROVE:  Could you spell your last name, spell

19   it out?

20   A.   B-o-n-i-l-l-a.

21   Q.   Where do you work, Ms. Bonilla?

22   A.   At the State Plaza.

23   Q.   What's your position there?

24   A.   Housekeeping.

25   Q.   How long have you worked there?
```

1  A.   It's going to be three years.

2  Q.   Who is your supervisor?

3  A.   Lidia, Karen, Fanny and Abdullah.

4  Q.   Do you know who the general manager of the hotel is?

5  A.   Mr. Corrado.

6  Q.   Is that Corrado Palenzona?

7  A.   Uh-huh.

8  Q.   Has he been the general manager the whole time you have

9  worked at that hotel?

10  A.   No.  We had Mr. John.  When I started Mr. John was there.

11  Q.   Was there some one after Mr. John?

12  A.   I don't remember.  I don't remember maybe it was a lady,

13  I don't recall her name.

14  Q.   Mr. John is John Reisch (ph.)?

15  A.   Yes.

16  Q.   And the lady was Mary Alice?

17  A.   Yes.

18  Q.   So after John Reisch there was Mary Alice?

19  A.   Yes.

20  Q.   And then Mr. Palenzona?

21  A.   Yes, sir.  Mr. Corrado.

22  Q.   Did the union ever visit your house?

23  A.   Yes.  They came to see me a few times.

24  Q.   Do you recall how many times?

25  A.   My husband gave me the messages.  He said, "The union was

1  here approximately four or five times.  I don't remember

2  exactly.

3  Q.  Did you ask the union to come back to your house?

4      MR. McCARTHY:  Objection, Your Honor, she's testified she

5  wasn't there.

6      JUDGE BUSCHMANN:  Sustained.

7  Q.  BY MR. GREENBAUM:  Were you ever there when the union

8  came to your house?

9  A.  Yes.  Once I was at home and I saw them through the

10  window, I saw it was the union but I didn't open the door.  I

11  went down to the basement with my daughter and I stayed there

12  until they left.  They stayed for a while.  They sat on the

13  staircase, on the steps to my house.  They were there for a

14  while.  Then they left.

15  Q.  Why did you go into the basement?

16  A.  Because I didn't want to talk to them.

17  Q.  Do you recall when that was?

18  A.  I don't remember.

19  Q.  I'd like to point your attention to General Counsel's

20  Exhibit 3.

21      MR. GREENBAUM:  May I approach, Your Honor?

22      JUDGE BUSCHMANN:  Yes.

23  Q.  BY MR. GREENBAUM:  Have you ever seen that before?

24  A.  That we want to be a part of Local 25, I have never seen

25  it.

1       MR. GREENBAUM:  Could I approach, Your Honor?

2       JUDGE BUSCHMANN:  Yes.

3       MR. GREENBAUM:  That's it.

4   Q.  BY MR. GREENBAUM:  Is that your signature down there?

5   A.  Yes.  Yes.

6   Q.  Do you recall if anyone gave this to you to sign?

7   A.  I don't remember very well.  It was either Esmeralda or

8   Reina.

9   Q.  Did anyone make any promises to you to sign this

10  document?

11  A.  No.

12  Q.  Did anybody promise you a raise to $12.50 if you signed

13  this document?

14  A.  No.

15      MR. GREENBAUM:  May I approach, Your Honor?

16      JUDGE BUSCHMANN:  Yes.

17      MR. GREENBAUM:  What I'd like to show the witness is

18  General Counsel's Exhibit 4, and just while I'm up here

19  General Counsel's Exhibit 5.

20      MR. McCARTHY:  Does he have to point out to the witness

21  her signature, Your Honor?

22      MR. GREENBAUM:  I'm not pointing out her signature.

23  Q.  BY MR. GREENBAUM:  Do you have Number 4 in front of you?

24  A.  This one?

25  Q.  Yes.

757

1  A.   Yes.

2  Q.   You have seen that before?

3  A.   Yes.

4  Q.   Did anyone make any promises to you to sign that

5  document?

6  A.   No.  We wanted to sign.

7  Q.   You signed on your own free will?

8       MR. McCARTHY:  Objection, leading, Your Honor.

9       THE WITNESS:  Yes.  I did.

10      JUDGE BUSCHMANN:  Well, yes, would you please refrain

11  from leading.

12      MR. GREENBAUM:  Okay, Your Honor.

13  Q.   BY MR. GREENBAUM:  Did any member of management ask you

14  to sign that document?

15  A.   No.  At not time I talk to the management.

16  Q.   If I could direct your attention to General Counsel's

17  Exhibit Number 5.

18      MR. GREENBAUM:  May I approach, Your Honor?

19      JUDGE BUSCHMANN:  Yes.

20      MR. GREENBAUM:  And I'd like to refer the witness to the

21  second page.

22      THE WITNESS:  Yes.

23  Q.   BY MR. GREENBAUM:  Do you recall that?

24  A.   Yes.

25  Q.   Did you sign that?

1    A.    Yes.

2    Q.    Did anyone make any promises to you to sign that?

3    A.    No.

4    Q.    Did any member of hotel management ask you to sign that?

5    A.    No.

6    Q.    Did your supervisor tell you to sign that?

7    A.    No.

8    Q.    Did you do anything with that document other than sign

9    it?

10   A.    No.  I don't remember if it was this one.  It was one

11   that we went to drop off at the union's office but I don't

12   remember if it was this.

13   Q.    You recall dropping off a letter to the union?

14   A.    Yes.

15   Q.    Who was with you?

16   A.    Maria Neighbor, Gloria Castro, Monica, and Silvia and I

17   don't remember who else.  There were a few of us.

18   Q.    Why did you go?

19   A.    We didn't want the union to have any more demonstrations

20   in front of the hotel.

21   Q.    Did you speak with anyone from the union when you

22   delivered this?

23   A.    Yes.

24   Q.    Do you recall who you spoke with?

25   A.    I don't remember the name because I've never attended any

1    meeting.  I don't know any member of the union.

2    Q.   Did you exchange any words with anyone during that

3    meeting?

4    A.   When we delivered that letter I don't remember if it was

5    Esmeralda or if I did it myself.

6    Q.   Did you talk to anyone from the union when you delivered

7    this letter?

8    A.   Yes.  Two people came out a white woman and a black

9    woman.

10   Q.   Did you speak with them?

11   A.   Yes.  We told them that we were bringing this letter

12   because we didn't want them to come bothering us anymore, to

13   send us any more papers or anything.

14       MR. GREENBAUM:  Nothing further.

15       MR. McCARTHY:  No questions, Your Honor.

16       JUDGE BUSCHMANN:  Okay.  Thank you very much.  You may

17   step down.

18       Hello, I have to swear you in.

19   (Whereupon,

20                        **MARIA LEIVA**

21   was called as a witness by and on behalf of the Respondent,

22   and having been first duly sworn, was examined and testified

23   as follows:)

24       JUDGE BUSCHMANN:  Please sit down.

25                        **DIRECT EXAMINATION**

1    Q.    BY MR. GREENBAUM:  Please state your name, for the

2    record.

3    A.    Maria Leiva.

4    Q.    Good morning, Ms. Leiva.  My name is John Greenbaum.  I

5    represent the State Plaza Hotel.  Where do you work?

6    A.    At the State Plaza Hotel.

7    Q.    How long have you worked there?

8    A.    Fifteen years and seven months.

9    Q.    What's your job there?

10   A.    I work in several areas.

11   Q.    What's your current position?

12   A.    Now, I have a position at the lobby.

13   Q.    You are a lobby attendant?

14   A.    I just clean.

15   Q.    Are you in the housekeeping department?

16   A.    Yes.

17   Q.    Who is your supervisor?

18   A.    My supervisor is Lisa --

19   Q.    Do you know who the general manager of the hotel is?

20   A.    I don't remember the name.

21   Q.    Do you know Corrado Palenzona?

22   A.    Yes.  I remember the name.  Yes.  He's the manager.

23   Q.    Is part of your duties cleaning up the cafeteria?

24   A.    Yes.

25   Q.    Did you ever observe union flyers on the floor in the

1  cafeteria?

2  A.    Well, the other people who were distributing them they

3  would pass them out and people would throw them on the floor.

4  So since I was the one cleaning the place I had to pick them

5  up and I thought it wasn't fair that I had to be picking up

6  all those flyers.

7  Q.    Do you know who Reina Lozano is?

8  A.    Yes.

9  Q.    Who is she?

10  A.    Reina, she's somebody who works for the hotel.

11  Q.    Do you know who Alex Guillen is?

12  A.    Yes.

13  Q.    Who is she?

14  A.    Yes.  I know her because I worked there for such a long

15  time and she works there as I do.

16      MR. GREENBAUM:  May I approach, Your Honor?

17      JUDGE BUSCHMANN:  Yes.

18      MR. GREENBAUM:  What I'm going to show the witness has

19  been marked as General Counsel's Exhibit Number 3.

20  Q.    BY MR. GREENBAUM:  Have you ever seen that before?

21  A.    Yes.

22  Q.    Did you sign that?

23  A.    Yes.

24  Q.    Who asked you to sign that, if anyone?

25  A.    Well, we created -- Among all our housekeepers we created

1    this document.

2    Q.   Did anyone promise you anything to sign this document?

3    A.   No.

4    Q.   I would like to turn your attention to General Counsel's

5    Exhibit 5.

6         MR. GREENBAUM:  May I approach, Your Honor?

7         JUDGE BUSCHMANN:  Yes.

8    Q.   BY MR. GREENBAUM:  The second page.  Have you seen that

9    before?

10   A.   Yes.

11   Q.   Did you sign that?

12   A.   Yes.

13   Q.   Did anyone make any promises to you to sign that

14   document?

15   A.   No.

16   Q.   Did anyone promise you a raise to $12.50 if you signed

17   that?

18   A.   No.

19   Q.   Did you do anything with this letter?

20   A.   No.  I just signed it.

21   Q.   Did you deliver this letter to anyone?

22   A.   No.

23   Q.   Did you go with a group of -- Have you ever been to the

24   union office before?

25   A.   Only when we went to drop off a letter.

1  Q.   Was this the letter you went to drop off?

2  A.   Well, we just took a sealed envelope.  I don't know if

3  this was the letter we were delivering.

4  Q.   Do you remember when that was?

5  A.   No.

6  Q.   Did anyone tell you to go to the union office that day?

7  A.   No.  It was that we as a group went to deliver this

8  letter.

9  Q.   You received a subpoena in this case, didn't you?

10 A.   Yes.  I did get it.

11 Q.   That was a subpoena from the National Labor Relations

12 Board?

13 A.   No.  Well, I have never been in any labor matters or

14 union matters.

15     MR. GREENBAUM:  Nothing further, Your Honor.

16     JUDGE BUSCHMANN:  Yes.

17     MR. McCARTHY:  If I may have just a moment, Your Honor?

18     JUDGE BUSCHMANN:  Yes.

19     MR. McCARTHY:  I'm ready to proceed, Your Honor.

20     JUDGE BUSCHMANN:  Yes, please.

21                     CROSS-EXAMINATION

22 Q.   BY MR. McCARTHY:  Good morning, ma'am.  My name is Thomas

23 McCarthy.  I represent the General Counsel of the National

24 Labor Relations Board in this matter.  I'd like to ask you a

25 few questions about what Mr. Greenbaum just asked you.

1      When did you begin performing work in the lobby as a

2  lobby attendant?

3  A.   Well, about eight months ago, but my position has always

4  been in the lobby because in 1992 I worked in the lobby for

5  five years.

6  Q.   Prior to eight months ago you were cleaning rooms in

7  housekeeping, the guest rooms, weren't you?

8  A.   Yes.

9  Q.   Now, you are cleaning public areas like the cafeteria and

10  the lobby, correct?

11  A.   Yes.

12  Q.   The union never visited you at home, did they?

13  A.   No.

14      MR. McCARTHY:  No further questions, Your Honor.

15      JUDGE BUSCHMANN:  Okay.

16  Anything?

17      MR. GREENBAUM:  Nothing further, Your Honor.

18      JUDGE BUSCHMANN:  Thank you, very much.  You may step

19  down.

20      MR. GREENBAUM:  Your Honor, if we may take a recess

21  because they are getting more witnesses.

22      JUDGE BUSCHMANN:  Yes.  How many more witnesses?

23      MR. GREENBAUM:  I think there's a bunch, Your Honor, and

24  we have some management witnesses.  But they are going to go

25  fast, Your Honor.  Five short ones and then the management

1  witnesses, which will also be fast.

2      **JUDGE BUSCHMANN:  Okay.  Off the record.**

3  **(Off the record.)**

4      **JUDGE BUSCHMANN:  Let's go back on the record.**

5      I have to swear you in, please raise your right hand.

6  (Whereupon,

7                      **JUANITA PEREZ**

8  was called as a witness by and on behalf of the Respondent,

9  and having been first duly sworn, was examined and testified

10  as follows:)

11      JUDGE BUSCHMANN:  Please be seated.

12                  **DIRECT EXAMINATION**

13  Q.   BY MR. GREENBAUM:  Good morning.  Please state your name

14  for the record.

15  A.   Juanita Perez.

16  Q.   Ms. Perez, my name is John Greenbaum and I represent the

17  State Plaza Hotel.  Where do you work?

18  A.   At the State Plaza.

19  Q.   What is your job there?

20  A.   Housekeeping.

21  Q.   How long have you worked there?

22  A.   It's going to be 12 years.

23  Q.   Who is your supervisor?

24  A.   My supervisor is Lisa.

25  Q.   Who is the general manager of the hotel?

1  A.   The manager is Lisa.  My supervisor is --

2  Q.   Do you know who the general manager of the hotel is?

3  A.   I --

4  Q.   Do you know Corrado Palenzona?

5  A.   Yes.

6  Q.   I would like to direct the witness to General Counsel's

7  Exhibit Number 5.

8       MR. GREENBAUM:  May I approach, Your Honor?

9       JUDGE BUSCHMANN:  Yes.

10  Q.  BY MR. GREENBAUM:  Have you seen that before?

11  A.   No.

12      MR. GREENBAUM:  May I approach, Your Honor?

13      JUDGE BUSCHMANN:  Yes.

14  Q.  BY MR. GREENBAUM:  Is that your signature there?

15  A.   Oh, that was before.  Yes.

16  Q.   Did anyone promise you anything to sign that?

17  A.   No.

18  Q.   Did anyone say you would get a raise to $12.50 if you

19  signed that document?

20  A.   No.

21  Q.   Did anyone say to you, you would get a raise to $12.50 if

22  you signed any document?

23  A.   No.

24  Q.   Why did you sign that document?

25  A.   All of us were signing but I didn't know the union.

1  Q.   Did you sign this document because you didn't want the

2  union --

3       MR. McCARTHY:  Objection, Your Honor, leading.

4       JUDGE BUSCHMANN:  Sustained.

5  Q.   BY MR. GREENBAUM:  Did you want the union at the hotel?

6  A.   No.  I never belonged to the union.

7  Q.   Did you co-worker decide to write this letter?

8       MR. McCARTHY:  Objection, Your Honor, no knowledge of

9  what her co-workers decide.

10      JUDGE BUSCHMANN:  Has she indicated that she's familiar

11 with that document she signed?

12      MR. GREENBAUM:  Your Honor, she said she signed it.

13      JUDGE BUSCHMANN:  She signed it but not familiar with the

14 document.

15      MR. GREENBAUM:  Sorry.  I'll move on.

16 Q.   BY MR. GREENBAUM:  Do you recall anyone bringing this

17 letter to you to sign?

18 A.   Well, she stipulated there and I signed it.

19 Q.   Did any supervisor circulate it?

20 A.   No.

21 Q.   Did Mr. Palenzona circulate it?

22 A.   No.

23 Q.   When it was being circulated did anyone promise you

24 anything to sign?

25 A.   No.

1        MR. GREENBAUM:  That's it, Your Honor, no further

2    questions.

3        JUDGE BUSCHMANN:  Okay.

4        MR. McCARTHY:  Your Honor, I'm ready to cross.

5        JUDGE BUSCHMANN:  Yes.

6                          **CROSS-EXAMINATION**

7    Q.   BY MR. McCARTHY:  Who asked you to come down here today,

8    ma'am?

9    A.   I came out of my free will.

10       MR. McCARTHY:  No further questions, Your Honor.

11       JUDGE BUSCHMANN:  Thank you, very much.  You may step

12   down.

13       MS. HARGROVE:  Your Honor, our next witness will be

14   Yessenia Cateres.

15       JUDGE BUSCHMANN:  You know, the best thing is when you

16   walk in with them, because there is a way I can deal with the

17   witness.

18       MS. HARGROVE:  Yes, sir.  I understand.

19       **JUDGE BUSCHMANN:  Off the record.**

20   **(Off the record.)**

21       **JUDGE BRUDZINSKI:  Let's go back on the record.**

22       I have to swear you in.  Raise your right hand.

23       MS. HARGROVE:  Your Honor, Respondent's next witness is

24   Yessenia Cateres.

25   (Whereupon,

1                    **YESSENIA CATERES**

2  was called as a witness by and on behalf of the Respondent,

3  and having been first duly sworn, was examined and testified

4  as follows:)

5                    **DIRECT EXAMINATION**

6  Q.   BY MS. HARGROVE:  Good morning, Ms. Cateres.  Could you

7  please state and spell your name, for the record?

8  A.   Yessenia Cateres, Y-e-s-s-e-n-i-a, C-a-t-e-r-e-s.

9  Q.   Ms. Cateres, are you currently employed?

10 A.   Yes.

11 Q.   Where do you work?

12 A.   State Plaza Hotel.

13 Q.   What's your position there?

14 A.   Housekeeper.

15 Q.   How long have you been a housekeeper?

16 A.   It's going to be two years on March 31st.

17      MS. HARGROVE:  Your Honor, if I may approach the witness?

18      JUDGE BUSCHMANN:  I think this spelling is -- Cateres,

19 your last name?

20      THE WITNESS:  The thing is when I got married I got

21 another last name but I never changed my, the papers so this

22 is still my name.

23      JUDGE BUSCHMANN:  Okay.  Thank you.

24      THE WITNESS:  C-a-t-e-r-e-s.

25 Q.   BY MS. HARGROVE: I'm showing the witness the second page

1    of General Counsel's Exhibit 5.  Ms. Cateres, do you

2    recognize that document?

3    A.    Yes.

4    Q.    Did you sign GC Exhibit 5?

5    A.    Yes.

6    Q.    Do you remember when you signed that document?

7    A.    No.  Not really.

8    Q.    Do you remember who brought the document to you to sign?

9    A.    Yes.  The housekeeper.

10   Q.    Do you remember the housekeeper's name?

11   A.    Yes.  I remember the name of who had it.  It was a group

12   of them, Esmeralda?

13   Q.    Do you remember anybody else's name?

14   A.    No.

15   Q.    Did Esmeralda or any of those women tell you, you would

16   get a raise if you signed this document?

17   A.    No.

18   Q.    Did Esmeralda or any of those others tell you that

19   Mr. Palenzona wanted you to sign this document?

20   A.    No.

21   Q.    Did anyone promise you a raise if you'd sign GC Exhibit

22   5?

23   A.    No.

24   Q.    Why did you sign this document?

25   A.    Well, why I signed the document because my husband used

1  to belong to the union and while he was working he would have

2  to pay some fee to the union.  So by the time when he was not

3  working still he was required to pay fees to the union.

4  Q.   Have you ever been to the union offices?

5  A.   Yes.  Once.

6  Q.   When did you go to the union office?

7  A.   It was last year but I don't remember the date.

8  Q.   Why did you go to the offices?

9  A.   Because we went to deliver a letter saying that we had no

10 part with the union, that nobody was forcing us to be part of

11 the union and it was just our initiative not to be part of

12 the union.

13 Q.   Is GC Exhibit 5 the letter you took to the union?

14 A.   I really don't remember if it was.

15 Q.   Did you go by yourself to the union offices?

16 A.   No.  It was a group of us.

17 Q.   Do you remember the names of the other people that went?

18 A.   Esmeralda, Lidia, Maria Leiva, Lata, Hilda.

19 Q.   Did you speak with anyone from the union when you went to

20 the offices?

21 A.   Yes.  Two women came out to talk to us.

22 Q.   Do you know their names?

23 A.   I remember one of the names but the other one was Rita

24 and they say that her name was Olga.

25 Q.   Did you say anything to either of the women?

1  A.   No.  We just gave them the letter and they didn't want us

2  to leave.

3  Q.   What do you mean they didn't want you to leave?

4  A.   Well, we delivered the letter and we went to the elevator

5  and they came there and they were holding the doors of the

6  elevator trying to stop us from leaving.

7  Q.   Did they say anything to you?

8  A.   They were telling us to come in that they wanted to talk

9  to us.

10  Q.   How did that meeting end?

11  A.   We kept pushing the button for the doors to close and I

12  guess they got tired and they let us go.

13  Q.   Has anyone from the union ever come to your house?

14  A.   Yes.  Many times.

15  Q.   How many times?

16  A.   Four or five times.

17  Q.   Did you talk to anyone when the union people came to your

18  house?

19  A.   No.  Never.

20       MS. HARGROVE:  Nothing further, Your Honor.

21       JUDGE BUSCHMANN:  Cross.

22       MR. McCARTHY:  Yes, Your Honor, just a brief cross.

23       JUDGE BUSCHMANN:  Yes.

24                    **CROSS-EXAMINATION**

25  Q.   BY MR. McCARTHY:  How did you know that the union came to

1  your house if you did not talk to them?

2  A.   Because when they came to our house they would knock on

3  my door and the women who wanted the union at the hotel would

4  come with them and I wouldn't open the doors because my

5  husband works at night and he sleeps during the day.

6       MR. McCARTHY:  No further questions, Your Honor.

7       JUDGE BUSCHMANN:  All right.  Thank you very much.  You

8  may step down.

9       MS. HARGROVE:  Your Honor, Respondent calls Maria Viera.

10      JUDGE BUSCHMANN:  I have to swear you in.

11 (Whereupon,

12                         **ANITA VIERA**

13 was called as a witness by and on behalf of the Respondent,

14 and having been first duly sworn, was examined and testified

15 as follows:)

16                      **DIRECT EXAMINATION**

17 Q.   BY MR. GREENBAUM:  Please state your name for the record.

18 A.   Anita Viera.

19 Q.   Good morning, Ms. Viera.  My name is John Greenbaum and I

20 represent the State Plaza Hotel.  Ms. Viera, where do you

21 work?

22 A.   At the State Plaza Hotel.

23 Q.   What's your job there?

24 A.   Housekeeping.

25 Q.   How long have you worked there?

1  A.    Sixteen years.

2  Q.    Did you ever sign a petition to get rid of the union?

3  A.    Yes.

4  Q.    Did anyone make any promises to you to sign that?

5  A.    No.

6  Q.    Who is your supervisor at the hotel?

7  A.    Lidia.

8  Q.    Do you know who the hotel general manager is?

9  A.    Yes.

10  Q.    Who is that?

11  A.    I don't remember the name.

12  Q.    Do you know who Corrado Palenzona is?

13  A.    Yes.

14  Q.    Is he the general manager?

15  A.    Yes.

16  Q.    Why did you sign the petition to get rid of the union?

17  A.    We went to the union and they didn't pay much attention

18  to us.

19  Q.    Did you ever go to any union meetings?

20  A.    Oh, yes.

21  Q.    Were you at a meeting where Olga was in attendance?

22  A.    Yes.

23  Q.    Do you recall what Olga told you at one of those

24  meetings?

25        MR. McCARTHY:  Objection.

1       JUDGE BUSCHMANN:  Objection, overruled.

2       THE WITNESS:  In the last one she said that she couldn't

3  do anything with only seven people.

4  Q.  BY MR. GREENBAUM:  Is that when you decided not to be

5  with the union anymore?

6       JUDGE BUSCHMANN:  You should have an objection now to the

7  question.

8       THE WITNESS:  Yes.

9  Q.  BY MR. GREENBAUM:  Do you recall when that meeting was?

10  A.  Oh, no.  I don't remember that.

11  Q.  Did you ever meet Ms. Hargrove before?

12  A.  No.  She came to the hotel but I couldn't talk to her

13  when she came to the hotel.

14  Q.  Did you decide not to talk to her?

15  A.  No.  I didn't talk to her because I was very busy I had a

16  lot of work and I didn't want to talk.

17       MR. GREENBAUM:  No further questions, Your Honor.

18       MR. McCARTHY:  I have brief cross, sir.

19                    CROSS-EXAMINATION

20  Q.  BY MR. McCARTHY:  Good morning, ma'am, my name is Thomas

21  McCarthy and I represent the General Counsel of the National

22  Labor Relations Board.  You are not testifying here today

23  pursuant to a subpoena, are you?

24  A.  No.

25  Q.  When did you receive notice to come down here and

1    testify?

2    A.   No.  I haven't received anything.

3    Q.   When did you receive notice to come down here and

4    testify, not when you were subpoenaed?

5    A.   Now.

6    Q.   Now.  Who told you to come down here?

7    A.   (No response.)

8    Q.   Who told you to come down?

9    A.   All my co-workers have come here so I also came.

10   Q.   Who directed you to come down here at this time?

11   A.   The supervisor brought me here and told me to come here.

12   Q.   What supervisor was that?

13   A.   Fanny.

14   Q.   What time today did Fanny tell you to come down here?

15   A.   Now at 10:30.

16   Q.   Who else came with you and Fanny?

17   A.   All the ones who came with me already left.

18   Q.   My question was, ma'am, who else came with you?

19   A.   Nitina and Juanita.

20   Q.   Who else?

21   A.   Aida.

22   Q.   Aida Fuentes?

23   Q.   I think so.  She works at the front desk.

24   Q.   And who else?

25   A.   No one just us.

1  Q.  How are you getting back?

2  A.  Back where, home?

3  Q.  Are you going back to the hotel?

4  A.  Maybe.  I don't know.

5  Q.  Do you get to decide or does your supervisor get to

6  decide?

7  A.  No.  They haven't told me anything but I'm going to go.

8  Q.  You are going to go where?

9  A.  I might go to the hotel or home.  I don't know.

10  Q.  What time do you get off work today?

11  A.  At 4:30.

12  Q.  Where did the other housekeepers go?

13  A.  I don't know.

14  Q.  You didn't have any discussion with them about where they

15  were going after they testified here today?

16  A.  I haven't seen them.

17  Q.  I thought you testified a minute ago that you saw them

18  leave?

19  A.  Yes, because I was there by myself.  The others already

20  left.

21  Q.  Are you being paid for the full day today?

22  A.  I don't know.

23       MR. McCARTHY:  No further questions, Your Honor.

24       JUDGE BUSCHMANN:  Okay.

25       Anything?

```
 1        MR. GREENBAUM:  Your Honor,
 2                   REDIRECT EXAMINATION
 3   Q.   BY MR. GREENBAUM:  Ms. Viera, you swore to tell the truth
 4   before, correct?
 5   A.   Yes.
 6   Q.   And you are telling the truth, right?
 7   A.   Yes.
 8   Q.   Did anyone force you to come here today?
 9   A.   No.
10   Q.   You are here on your own free will?
11   A.   Yes.
12        MR. GREENBAUM: No further questions.
13        MR. McCARTHY:  No questions, Your Honor.
14        JUDGE BUSCHMANN:  Thank you very much.  You may step
15   down.
16        MS. HARGROVE:  Your Honor, Respondent's next witness is
17   Aida Fuentes.  We actually do not need an interpreter.
18        JUDGE BUSCHMANN:  I have to swear you in.
19   (Whereupon,
20                      AIDA FUENTES
21   was called as a witness by and on behalf of the Respondent,
22   and having been first duly sworn, was examined and testified
23   as follows:)
24                   DIRECT EXAMINATION
25   Q.   BY MR. GREENBAUM:  Please state your name for the record.
```

```
 1   A.    Aida Fuentes.

 2   Q.    Ms. Fuentes, my name is John Greenbaum.  I represent the

 3   State Plaza Hotel.  Where do you work?

 4   A.    State Plaza Hotel.

 5   Q.    What's your job there?

 6   A.    Front desk agent.

 7   Q.    How long have you worked there?

 8   A.    Three-and-a-half years.

 9   Q.    Who is you our supervisor?

10   A.    Esther.

11   Q.    Is that the first name or last name?

12   A.    First name.  Mohammed is our manager, our desk manager.

13   Q.    Who is the general manager of the hotel?

14   A.    Corrado Palenzona.

15   Q.    Do you know how long he's been the general manager?

16   A.    A year-and-a-half.

17   Q.    Who was the general manager before him?

18   A.    John Reisch -- No.  It was a lady.  I don't remember her

19   name.

20   Q.    Mary Alice?

21   A.    Yes.  Mary Alice.

22   Q.    Before Mary Alice?

23   A.    John Reisch.

24   Q.    I'd like to direct your attention to General Counsel's

25   Exhibit Number 5.
```

1      MR. GREENBAUM:  May I approach, Your Honor?

2      JUDGE BUSCHMANN:  Yes.

3  Q.  BY MR. GREENBAUM:  What I've shown the witness is General

4  Counsel's Exhibit 5.  Have you ever seen that before?

5  A.  Yes.

6  Q.  Your name appears on that?

7  A.  Yes, sir.

8  Q.  When did you first see this document?

9  A.  I'm the one who made the copy.

10  Q.  Did you do the typing?

11  A.  I did the typing, yes.

12  Q.  Are those your words?

13  A.  Yes, sir.

14  Q.  Did anyone tell you what to say?

15  A.  No, sir.

16  Q.  Now, there are 11 names on here, do you see that?

17  A.  Yes.

18  Q.  Are those employees in your department?

19  A.  All of them are my front desk and the office.

20  Q.  Did anyone tell you to do this?

21  A.  No, sir.

22  Q.  Did Mr. Palenzona tell you to do this?

23  A.  No, sir.

24  Q.  Did your supervisor tell you to do this?

25  A.  No.  I did it by myself.

1  Q.   Did anyone make any promises to you to do this?

2  A.   Nobody.

3  Q.   When was your last raise at the hotel?

4  A.   Well, I just had my interim review because I have --

5  Every year they interview, you know, it was last weekend.

6  Q.   That was your anniversary?

7  A.   Anniversary, yes.

8  Q.   So you were hired in March?

9  A.   I was hired February 7th.

10 Q.   So each February/March you get a raise?

11 A.   Exactly.

12 Q.   Did you get a raise last July?

13 A.   No.

14 Q.   Why did you do this petition?

15 A.   Because I don't want the union to be here.

16     MR. GREENBAUM:  No further questions.

17     JUDGE BUSCHMANN:  Ready for cross?

18     MR. McCARTHY:  Yes, sir.

19                    CROSS-EXAMINATION

20 Q.   BY MR. McCARTHY:  Good morning, ma'am.

21 A.   Good morning.

22 Q.   My name is Thomas McCarthy.  I'm counsel for the General

23 Counsel in this matter and as part of the National Labor

24 Relations Board.  I'd like to ask you a few questions about

25 what Mr. Greenbaum just asked you.  You never came to any

1  union meetings, did you?

2  A.    No.

3  Q.    You used to live with Alex Guillen in 2004, correct?

4  A.    Correct.

5  Q.    That was in an apartment in Arlington?

6  A.    (Nonverbal response.)

7        JUDGE BUSCHMANN:  You have to say yes or no.

8        THE WITNESS:  Yes.

9        MR. McCARTHY:  No further questions, Your Honor.

10       MR. GREENBAUM:  Nothing, Your Honor.

11       JUDGE BUSCHMANN:  Okay.

12       Did you drive here today?

13       THE WITNESS:  No.  I took a taxi.

14       JUDGE BUSCHMANN:  Taxi.  Did you take the taxi by

15  yourself?

16       THE WITNESS:  Uh-huh.  With my co-workers.

17       JUDGE BUSCHMANN: How many co-workers did you have in the

18  taxi?

19       THE WITNESS:  Three.

20       JUDGE BUSCHMANN:  Who told you to come here and testify?

21       THE WITNESS:  No.  I volunteer.  I wanted to come over

22  here and talk.

23       JUDGE BUSCHMANN:  How did you find out that there was

24  testimony being given here today?

25       THE WITNESS:  Well, my friends they were telling me they

1    were doing -- I heard that we were doing this testifying and

2    that's why I wanted to come and testify because I'm the one

3    who did all this paperwork and everything.

4        JUDGE BUSCHMANN:  How did you know to come at this time

5    rather than yesterday or the day before?

6        THE WITNESS:  Yesterday I couldn't come.  So --

7        JUDGE BUSCHMANN:  How about the day before?

8        THE WITNESS:  I couldn't come because we were real busy

9    at the front desk.

10        JUDGE BUSCHMANN:  And you are not busy today?

11        THE WITNESS:  Not that much.  No.

12        JUDGE BUSCHMANN:  So you just showed --

13        THE WITNESS:  We have a lot of co-workers working right

14    now than yesterday and the before.

15        JUDGE BUSCHMANN:  So you just decided on your on

16    account --

17        THE WITNESS:  Yes.

18        JUDGE BUSCHMANN:  -- to take a cab with three workers?

19        THE WITNESS:  Yes.

20        JUDGE BUSCHMANN:  Who told the other three workers to

21    come?

22        THE WITNESS:  I couldn't tell you.  Only the things I was

23    going through and I talked to them and they said, yeah, we

24    going to go.  I said, "Can I go with you guys because I want

25    to testify?"

1      JUDGE BUSCHMANN:  Okay.  So you wanted to testify on your

2  own account?

3      THE WITNESS:  Yes.

4      JUDGE BUSCHMANN:  What was the purpose of your testimony

5  here?

6      THE WITNESS:  Well, the thing is that I don't want, you

7  know, the union into this.

8      JUDGE BUSCHMANN:  To do what?

9      THE WITNESS:  I don't want the union to be in, you know,

10  in our hotel.

11      JUDGE BUSCHMANN:  Well, you already signed the petition.

12  Why would you want to testify here?

13      THE WITNESS:  Because I mean I think we can -- To hear my

14  words, you know, that I don't want, you know, so that's why.

15      JUDGE BUSCHMANN:  You said you didn't get a pay raise

16  last year?

17      THE WITNESS:  No.

18      JUDGE BUSCHMANN:  In July?

19      THE WITNESS:  In July, no.

20      JUDGE BUSCHMANN:  What is your pay now?

21      THE WITNESS:  Now?

22      JUDGE BUSCHMANN:  Yes.

23      THE WITNESS:  $12.54.

24      JUDGE BUSCHMANN:  Okay.  And you were making that last

25  year already?

1        THE WITNESS:  No.  I been for $12.12.

2        JUDGE BUSCHMANN:  $12.12, last year.

3        THE WITNESS:  Uh-huh, last year.

4        JUDGE BUSCHMANN:  And now you are at twelve fifty?

5        THE WITNESS:  $12.54.

6        JUDGE BUSCHMANN:  You are one of the desk agents, you are

7   checking people in and out of the hotel?

8        THE WITNESS:  Yes, sir.

9        JUDGE BUSCHMANN:  You are full-time, right?

10        THE WITNESS:  Yes, sir.

11        JUDGE BUSCHMANN:  Okay.  Well, thank you, very much.  You

12   may step down.

13        THE WITNESS:  Thank you.

14        MR. GREENBAUM:  Your Honor, at this time we would like to

15   take a lunch break, because we have to get more witnesses and

16   it will take at least 15 minutes to get them.  But I think we

17   should finish up today.

18        JUDGE BUSCHMANN:  How many more witnesses do you have?

19        MR. GREENBAUM:  I believe four but then Ms. Alvarado who

20   I indicated had minor surgery on Tuesday, still can't drive.

21   We thought she would be able to drive by Friday.  She could

22   come Monday.  So we may have to hold that testimony over

23   until Monday.  I believe Mr. McCarthy said he was in

24   agreement with that last week when we raised that

25   possibility.  But she wouldn't be a long witness anyway.

1        JUDGE BUSCHMANN:  I wanted to make sure that we finished

2   today.  You just said that you think we are going to finish

3   today.

4        MR. GREENBAUM:  We are going to finish with the witnesses

5   we have today.  Ms. Alvarado --

6        JUDGE BUSCHMANN:  I know that but I want to finish with

7   the potential witnesses as well, not witnesses down the road.

8        MR. GREENBAUM:  Yes, Your Honor.

9        JUDGE BUSCHMANN:  I mean not witnesses that may come

10   in --

11        MR. GREENBAUM:  We are not going to -- No.  The only one

12   -- If we don't finish today, the only one we would need

13   Monday would be Ms. Alvarado.  We are not going to make up

14   new witnesses if that's what you are asking?

15        JUDGE BUSCHMANN:  Well, I was merely responding to your

16   statement saying that we will be finishing up with witnesses

17   that are here today or that will be here today.  I anticipate

18   that there won't be any witnesses on Monday.

19        MR. GREENBAUM:  Except for Ms. Alvarado.

20        JUDGE BUSCHMANN:  Well, this is the first time I have

21   heard that.

22        MR. GREENBAUM:  No.  We brought that up in the conference

23   call I believe it was last Friday.

24        MR. McCARTHY:  They did, Your Honor, they said she would

25   be here testifying on Friday.

 1       Your Honor, it's my understanding we were going to finish

 2   today.  We have incurred expense to hire an interpreter,

 3   another language, for rebuttal this afternoon and that person

 4   will be on the payroll as of 2:00 o'clock.  Mr. Greenbaum

 5   indicated yesterday he had seven witnesses.  He has already

 6   called I believe seven.  Now, he's ticking off six more.  He

 7   represented to us yesterday seven witnesses and they would be

 8   short except for the management witnesses.  We have had seven

 9   employee witnesses already.  Now he has indicated he is going

10   to call at least four more.

11       JUDGE BUSCHMANN:  Yeah.  I'm ready to go forward because

12   it's fairly early to break for the lunch break.

13       MR. GREENBAUM:  Your Honor, that's fine.  We could move

14   forward.  However, I do want to make the record clear, we did

15   bring up on Friday in our conference call before this

16   hearing, that Ms. Alvarado was having surgery on Tuesday.  We

17   said she may be available Friday.  We were hoping she would

18   be.  But I was just informed that she still can't drive and

19   she would be made available Monday.  We indicated that that

20   was a possibility on Friday.

21       Mr. McCarthy said he had no objection to that because he

22   wanted to make sure we put our complete, we had the full

23   opportunity to put our case on the record.  So this does not

24   come as a surprise.  She doesn't need an interpreter anyway.

25   I don't believe any of our further witnesses need an

788

```
 1   interpreter.
 2       MR. McCARTHY:  May I respond to that, Your Honor?
 3       MR. GREENBAUM:  Oh, one does?  One does, Your Honor.
 4       MR. McCARTHY:  May I respond to that, Your Honor?
 5       JUDGE BUSCHMANN:  Yes.
 6       MR. McCARTHY:  Mr. Greenbaum advised me by e-mail that
 7   Lisa Alvarado would have surgery.  I brought it to Your
 8   Honor's attention during the conference call.  I indicated
 9   that I would be putting on a witness to which she, which
10   would be quite a rebuttal from her.  We had not objection to
11   taking the witness out of order.
12       JUDGE BUSCHMANN:  Yes.  I remember that.
13       MR. McCARTHY:  That was what Mr. Greenbaum suggested we
14   do.  He also represented at that time that that witness would
15   be available to testify on Friday.  There was no problem.
16       MR. GREENBAUM:  Your Honor, this is complete --
17       JUDGE BUSCHMANN:  Don't interrupt.
18       MR. GREENBAUM:  -- misrepresentation.
19       JUDGE BUSCHMANN:  Mr. Greenbaum, please don't interrupt.
20       MR. GREENBAUM:  Sorry, Your Honor.
21       JUDGE BUSCHMANN:  Go ahead.
22       MR. McCARTHY:  I'm through, Your Honor.
23       JUDGE BUSCHMANN:  What's that?
24       MR. McCARTHY:  I'm all through.
25       JUDGE BUSCHMANN:  I see.
```

1    MR. GREENBAUM:  Your Honor, it's a misrepresentation.

2    Ms. Hargrove was on the speakerphone.  We indicated -- He did

3    indicate we could take her out of turn, but if we took her

4    out of turn she would be testifying before any of their

5    witnesses came up and how could she rebut?  Mr. McCarthy

6    himself said he understood that was an issue.

7    JUDGE BUSCHMANN:  I've heard enough, Mr. Greenbaum.

8    How many more witnesses do you have for this afternoon?

9    MR. GREENBAUM:  We have four total left, Your Honor.  One

10   is the woman who had surgery, Ms. Alvarado.

11   JUDGE BUSCHMANN:  Four witnesses total.

12   MR. GREENBAUM:  Yes.

13   JUDGE BUSCHMANN:  Now, my experience, from my experience,

14   I would imagine that management witnesses are going to take a

15   whole lot longer than --

16   MR. GREENBAUM:  They may take a little longer than these

17   people but they are not going to take that much longer, Your

18   Honor.

19   JUDGE BUSCHMANN:  How about suggesting to this lady that

20   she will take a taxi to come here rather than driving

21   herself?

22   MR. GREENBAUM:  If we could take a recess, I will

23   inquire.

24   JUDGE BUSCHMANN:  Okay.  Let's then do this.  You said

25   that you wanted to break for lunch at this time, right?

1    MR. GREENBAUM:  Yes, Your Honor.

2    JUDGE BUSCHMANN:  Then let's break for lunch until 1:00

3  and I will ask you, Mr. Greenbaum, to see whether this

4  witness can come here as well.  Then you have the total of

5  four witnesses including her.

6    MR. GREENBAUM:  Yes.

7    JUDGE BUSCHMANN:  Mr. Greenbaum, is that correct?

8    MR. GREENBAUM:  Yes.

9    JUDGE BUSCHMANN:  Okay.  We will stand adjourned until

10  1:00, off the record.

11  **(Whereupon, at 11:55 a.m., a lunch recess was taken.)**

12

13

14

15

16               **A F T E R N O O N   S E S S I O N**

17                        **(Time Noted:  1:06 p.m.)**

18    **JUDGE BUSCHMANN:  Let's go back on the record.**

19    MS. HARGROVE:  Your Honor, Respondent calls Fanny Reid.

20    JUDGE BUSCHMANN:  I must swear you in.

21  (Whereupon,

22                    **FANNY REID**

23  was called as a witness by and on behalf of the Respondent,

24  and having been first duly sworn, was examined and testified

25  as follows:)

1          JUDGE BUSCHMANN:  Please be seated.

2                    **DIRECT EXAMINATION**

3   Q.   BY MS. HARGROVE:  Good afternoon, Ms. Reid.  State your

4   name and spell it for the record.

5   A.   Fanny Reid.

6   Q.   How do you spell your last name?

7   A.   F-a-n-n-y, R-e-i-d.

8   Q.   Ms. Reid, do you speak Spanish, English or both?

9   A.   Both.

10  Q.   Are you more comfortable testifying in Spanish or

11  English?

12  A.   Spanish.

13  Q.   Ms. Reid, are you currently employed?

14  A.   Yes.

15  Q.   Where are you employed?

16  A.   State Plaza Hotel.

17  Q.   What's your position there?

18  A.   Housekeeping supervisor.

19  Q.   Who is your supervisor?

20  A.   Lisa.

21  Q.   What's Lisa's last name?

22  A.   Alvarado.

23  Q.   Do you know who the general manager of the State Plaza

24  Hotel is?

25  A.   Corrado Palenzona.

1  Q.   Do you know Ana Majano?

2  A.   Yes.

3  Q.   Who is Ana Majano?

4  A.   A housekeeper.

5  Q.   Have you ever seen union papers or material in the hotel?

6  A.   Yes.

7  Q.   Did you ever tell Ana Majano she was not allowed to pass

8  out those papers?

9  A.   No.

10  Q.   Did you ever threaten to fire Ana Majano?

11  A.   No.

12  Q.   Do you know Adriana Nunez?

13  A.   Yes.

14  Q.   Who is Adriana Nunez?

15  A.   Housekeeper.

16  Q.   Did you ever tell Adriana Nunez she was not allowed to

17  pass out flyers?

18  A.   No.

19  Q.   Did you ever threaten to fire Adriana Nunez?

20  A.   No.

21  Q.   Do you know Margarito Velasquez?

22  A.   Yes.

23  Q.   Who is Margarito Velasquez?

24  A.   Houseman.

25  Q.   Did you ever tell Margarito Velasquez he's not allowed to

1  pass out flyers?

2  A.   No.

3  Q.   Did you ever threaten to fire Margarito Velasquez?

4  A.   No.

5  Q.   Do you know Marleni Jiron?

6  A.   Yes.

7  Q.   Who is Marleni Jiron?

8  A.   She was a housekeeper.

9  Q.   Did you ever tell Marleni Jiron she was not allowed to

10 pass out union papers?

11 A.   No.

12 Q.   Did you ever threaten to fire Marleni Jiron?

13 A.   No.

14 Q.   Did you ever threaten to fire any employee?

15 A.   No.

16 Q.   Did you ever promise -- Did you ever pass around any

17 paper to the employees?

18 A.   No.

19 Q.   Did you ever promise employees a raise?

20 A.   No.

21 Q.   Did Mr. Palenzona ever tell you to promise the employees

22 a raise?

23 A.   No.

24 Q.   Did Mr. Palenzona ever tell you not to let the employees

25 pass out union papers?

1  A.   No.

2  Q.   Ms. Reid, did you ask employees to come testify here

3  today?

4  A.   That if they wanted to come to come on their own will.

5  Q.   Did you tell any employees they had to come testify here

6  today?

7  A.   No.

8      MS. HARGROVE:  Nothing further, Your Honor.

9      JUDGE BUSCHMANN:  Thank you.

10     MR. McCARTHY:  No cross, Your Honor.

11     JUDGE BUSCHMANN:  Okay.  Thank you very much.  You may

12  stand down.  Thank you.

13     MS. HARGROVE:  Your Honor, I just might take a minute to

14  get the next witness.  She's on crutches.

15     JUDGE BUSCHMANN:  I see.  Is she the one we are talking

16  about?

17     MS. HARGROVE:  Yes, Your Honor.

18     **JUDGE BUSCHMANN:  Oh, I'm glad.  Off the record.**

19  **(Off the record.)**

20     **JUDGE BUSCHMANN:  Let's go back on the record.**

21     I have to swear you in.

22  (Whereupon,

23                        **LISA ALVARADO**

24  was called as a witness by and on behalf of the Respondent,

25  and having been first duly sworn, was examined and testified

1    as follows:)

2                          **DIRECT EXAMINATION**

3    Q.   BY MS. HARGROVE:  Good afternoon, Ms. Alvarado.  Can you

4    please state your name and spell it for the record?

5    A.   Lisa K. Alvarado, whole name?

6    Q.   Your last name.

7    A.   A-l-v-a-r-a-d-o.

8    Q.   Ms. Alvarado, did you have surgery this week?

9    A.   Yes.

10   Q.   Are you currently taking any medication?

11   A.   Yes.

12   Q.   When was the last time you took that medication?

13   A.   About an hour ago.

14   Q.   Will that affect your testimony here today?

15   A.   No.  I'm a little shaky, but I'm fine.

16   Q.   Okay.  Ms. Alvarado, are you currently employed at the

17   State Plaza Hotel?

18   A.   Yes, ma'am.

19   Q.   What's your position there?

20   A.   Executive housekeeper.

21   Q.   I'm sorry?

22   A.   Executive housekeeper.

23   Q.   Who is your supervisor?

24   A.   Corrado Palenzona.

25   Q.   Who do you supervise?

1  A.    I supervise the housekeeping supervisors and the
2  housekeeping staff.
3  Q.    Who are the housekeeping supervisors?
4  A.    Fanny Reid, Lidia, we call her Carmen Hernandez, Maria
5  Leiva and Karen Martinez.
6  Q.    Do you speak English or Spanish or both?
7  A.    Both.
8  Q.    Do you ever translate for Mr. Palenzona?
9  A.    Yes.
10 Q.    How often do you translate?
11 A.    Not very often.
12 Q.    Have you ever translated in any employee meetings for
13 Mr. Palenzona?
14 A.    Yes.
15 Q.    Did you translate a meeting in July of 2005 for
16 Mr. Palenzona?
17 A.    Yes.
18 Q.    Do you recall what that meeting was about?
19 A.    It was about, that we were giving them a raise.
20 Q.    Do you recall the words that you translated for
21 Mr. Palenzona?
22 A.    I can't remember the exact words, but it was something to
23 the effect that it had been brought to his attention that the
24 majority of the employees had not wanted the union.  So we
25 were going to act as if the union was not in place and we

1    were going to give them the raise that the rest of the

2    company had already received.

3    Q.    Did you ever tell the employees they would get a raise if

4    they got rid of the union?

5    A.    No.

6    Q.    Did you ever hear Mr. Palenzona tell employees they would

7    get a raise if they got rid of the union?

8    A.    No.

9    Q.    Did you ever translate for Mr. Palenzona in any other

10   meetings about the union?

11   A.    No.

12   Q.    Did you ever see union material at the hotel?

13   A.    Yes.

14   Q.    If you would look at the folder in front of you, if you

15   could turn to --

16        MS. HARGROVE:  Your Honor, may I approach?

17        JUDGE BUSCHMANN:  Yes, of course.

18        MS. HARGROVE:  Your Honor, I'm showing the witness GC

19   Exhibit 30 and GC Exhibit 31.

20        JUDGE BUSCHMANN:  Yes.

21   Q.    BY MS. HARGROVE:  Ms. Alvarado, have you ever seen these,

22   Exhibit 30 and 31 before?

23   A.    Yes.

24   Q.    Where did you see them?

25   A.    In the hotel.

1  Q.   Did anyone give you those flyers?

2  A.   I think I just saw this one hanging around in the

3  cafeteria.  Nobody in particular brought it up to me and gave

4  it to me.  No.

5  Q.   Do you know Ana Majano?

6  A.   Yes.

7  Q.   Who is Ana Majano?

8  A.   She's the girl all the way to the left.

9  Q.   Did you ever tell Ana Majano she would be fired for being

10  in this picture?

11  A.   No.  I never discussed this with any of the employees.

12  Q.   Did you ever tell Adriana Nunez she'd be fired?

13  A.   No.  Again, I never discussed this with any of the

14  employees.

15  Q.   Did you ever tell any employee they could not pass out

16  these papers?

17  A.   No.  In fact, they always came up to me and gave it to me

18  and I always thanked them for giving it to me.  I never told

19  them not to give it to me.

20  Q.   Did you ever threaten the employees they would be fired

21  for being involved with the union?

22  A.   No.  And, in fact, I have always asked that all the

23  employees respect each other because they usually fight

24  amongst themselves, and I have asked them all to respect each

25  other's opinions.

1  Q.   Did you ever promise the employees they would get a raise

2  if they got rid of the union?

3  A.   No.

4  Q.   Did Mr. Palenzona ever tell you the employees would get a

5  raise if they got rid of the union?

6  A.   No.

7  Q.   Did you ever pass out any papers for employees to sign?

8  A.   No.

9      MS. HARGROVE:  Nothing further, Your Honor.

10     JUDGE BUSCHMANN:  Go ahead.

11     MR. McCARTHY:  No cross, Your Honor.

12     JUDGE BUSCHMANN:  Was it a hardship for you to be here

13  today with your foot surgery so recent?

14     THE WITNESS:  Just a little.

15     JUDGE BUSCHMANN:  Would it have been easy on you if you

16  had come in Monday?

17     THE WITNESS:  I think so.  I'm still trying to get the

18  hang of using these, so I'm a little slow.

19     JUDGE BUSCHMANN:  It's important that you don't put those

20  crutches under your arms.

21     THE WITNESS:  Yeah.  I think I did that the first couple

22  of days.  Everything was kind of sore.  So I'm now getting

23  the hang of using them.

24     JUDGE BUSCHMANN:  Well, I understand your testimony that

25  you translated, and I don't quite understand what you said in

1    that translation period with Mr. Palenzona.  There was a

2    meeting in July.  We heard about a meeting in July.  And

3    there was a meeting with the employees; is that right?

4         THE WITNESS:  Yes.

5         JUDGE BUSCHMANN:  All the employees were at that time

6    assembled there?

7         THE WITNESS:  Yes, sir.

8         JUDGE BUSCHMANN:  You were there to translate?

9         THE WITNESS:  Yes, sir.

10        JUDGE BUSCHMANN:  And Mr. Palenzona, was anyone else from

11   management there?

12        THE WITNESS:  No.  Nobody else was there.

13        JUDGE BUSCHMANN:  Just you from management and also

14   Mr. Palenzona?

15        THE WITNESS:  Yes, sir.

16        JUDGE BUSCHMANN:  What was the purpose of the meeting?

17        THE WITNESS:  He wanted to let everybody know that on

18   their next check they would see a raise.  So, that's what's

19   the meeting -- That was -- The purpose of the meeting was to

20   let them know that they were going to get a raise.

21        JUDGE BUSCHMANN:  What did you say was the classification

22   of the raise, what was it called?

23        THE WITNESS:  Well, basically what he said to in the

24   meeting was that they had realized that most people didn't

25   want the union so they were going to act as if the union was

 1  not in place at this time and they were going to give them

 2  the raise that the rest of the company had already received.

 3      JUDGE BUSCHMANN:  The rest of company meaning what?

 4      THE WITNESS:  The other hotels.

 5      JUDGE BUSCHMANN:  They had already gotten the pay raise?

 6      THE WITNESS:  They had already had a raise, yes.

 7      JUDGE BUSCHMANN:  Are those other hotels unionized or not

 8  unionized?

 9      THE WITNESS:  They are not.

10      JUDGE BUSCHMANN:  They are not unionized?

11      THE WITNESS:  No.  When you made that announcement, was

12  it a very long announcement, very short?

13      THE WITNESS:  It was very short.  It was a very short

14  announcement.

15      JUDGE BUSCHMANN:  Now, what was the reaction of the

16  employees?

17      THE WITNESS:  They were very happy.  Very, very happy.

18  They applauded at the end of the meeting.

19      JUDGE BUSCHMANN:  How many employees would you say were

20  present?

21      THE WITNESS:  I'm not really sure.  There was at least

22  20.

23      JUDGE BUSCHMANN:  Twenty that were present?

24      THE WITNESS:  At least 20 yes.

25      JUDGE BUSCHMANN:  Did every one get a pay raise that day

1  or was --

2      THE WITNESS:  It was on their next paycheck, yes.

3      JUDGE BUSCHMANN:  Because we have heard some witnesses

4  who did not get the pay raise all the way up to that level.

5      THE WITNESS:  I don't know anything about that.  All I

6  was there to do was to translate but, to the best of my

7  knowledge, yes, everybody got the raise at the same time.

8      JUDGE BUSCHMANN:  Were the employees that were assembled

9  just housekeeping or other people as well from, say, the

10  front office or from the lobby and so forth?

11      THE WITNESS:  No.  Ours was just housekeeping he wanted

12  to talk to them at the end of the day when most of my people

13  are downstairs punching out.  That's why he decided to do it

14  at that time so he would get most of them.

15      JUDGE BUSCHMANN:  Just the housekeeping staff?

16      THE WITNESS:  Right.

17      JUDGE BUSCHMANN:  I see.  Okay.  You said something about

18  union flyers.  Did you see a lot of union flyers there?

19      THE WITNESS:  Yes, sir.  There's always a lot of union

20  flyers.

21      JUDGE BUSCHMANN:  Where were they on the bulletin board

22  or just flying around tables on the floors, where are they?

23      THE WITNESS:  Yes.  They usually pass them out in the

24  cafeteria and people will leave them there because they don't

25  want to read them.  So they usually end up on the table, on

803

1    the floor, in the locker rooms.

2        JUDGE BUSCHMANN:  So they have to be cleaned up

3    afterwards?

4        THE WITNESS:  Yes, sir.

5        JUDGE BUSCHMANN:  Who does the cleaning?

6        THE WITNESS:  The lobby attendant.

7        JUDGE BUSCHMANN:  Is that a big chore to do that?

8        THE WITNESS:  Well, I'm not so much sure it's a big chore

9    as much as it probably is frustrating to her, that, you know,

10   somebody else is just going to come and throw stuff on the

11   floor.  I'm sure the housekeeper wouldn't like if we walked

12   to her room and lobby maid would just put stuff on the floor.

13   That's what they complain about.

14       JUDGE BUSCHMANN:  I would imagine employees wouldn't

15   throw things on the floor.

16       THE WITNESS:  Well, a lot of people didn't want to read

17   them and they would actually try to give them to me, like,

18   take it I don't want to read it.  And I was like, no, if you

19   don't want to read it please put it in the trash.  But some

20   people would just leave it on the table and they would fall

21   to the floor or they would take them to the locker room and

22   what not.

23       JUDGE BUSCHMANN:  Now, you were also asked that you

24   didn't threaten anybody or that you heard of no one telling

25   the employees that they would get a pay raise if they signed

1  petitions to decertify the union.

2      THE WITNESS:  No, sir.

3      JUDGE BUSCHMANN:  Were you at all involved in any of this

4  union campaign?

5      THE WITNESS:  No.  I have stayed out of it.  If anybody

6  ever tries to mention it to me I just ask them please not to

7  talk to me about it because I don't want to get involved in

8  it.

9      JUDGE BUSCHMANN:  Was there any campaign against the

10  union by management conducted?

11      THE WITNESS:  No.  Not to my knowledge.  I have no

12  knowledge of anything of such.

13      JUDGE BUSCHMANN:  Of course, you didn't threaten anybody

14  with anything, that's what you testified about?

15      THE WITNESS:  No.  I have not threatened anybody.  The

16  only thing I have ever asked of them is for them to please

17  respect each other because there are a lot of little tiffs,

18  you know, between the employees.  And I just asked them to

19  respect each other's opinions.  They may not like what the

20  other person things but they should respect them and not

21  fight.

22      JUDGE BUSCHMANN:  I could tell that you had several

23  ethnic groups there at the hotel, mostly Spanish.

24      THE WITNESS:  Correct.

25      JUDGE BUSCHMANN:  Don't they sort of get along with each

1 other most of the time or are there also tiffs between them

2 as well?

3     THE WITNESS:  There are also tiffs between them as well,

4 yes.

5     JUDGE BUSCHMANN:  Fractions between them?

6     THE WITNESS:  They all complain like, oh, she said this

7 to me or she's laughing at me or just little things.  Even

8 little things they argue about.  Or she said something

9 indirectly and I know she was trying to say it to me.

10 There's not much, you know, we can do about that, you know,

11 just, you know, ask everybody to respect each other and to

12 act like adults.

13     JUDGE BUSCHMANN:  You have some employees who have been

14 there for a long time, I can see that as well --

15     THE WITNESS:  Yes, sir.

16     JUDGE BUSCHMANN:  -- then some more recent employees.  Is

17 there any association between the more long lasting employees

18 versus the newer employees that they would somehow, that the

19 newer employees would be more with each other than the older

20 employees?  Did you notice any of that?

21     THE WITNESS:  Well --

22     JUDGE BUSCHMANN:  No.  Not really.

23     THE WITNESS:  -- I don't really notice anything like that

24 at all, no.

25     JUDGE BUSCHMANN:  The ethnic groups generally get along

1  with each other, other than just the tiffs that you were

2  talking about I assume?

3       THE WITNESS:  Generally, yes.  They generally get along

4  other than things.

5       JUDGE BUSCHMANN:  Well, I hope you can get home safely.

6  I hope it wasn't too much of a chore for you to be here.

7       THE WITNESS:  Thank you.

8       MS. HARGROVE:  Your Honor, could I ask one follow-up

9  question?

10       JUDGE BUSCHMANN:  Yeah, go ahead.

11       MS. HARGROVE:  Or a couple follow-up questions.

12  Q.  BY MS. HARGROVE:  Do you supervise the front desk

13  workers?

14  A.  Only when my manager is off-duty, which is usually

15  Saturdays.

16  Q.  Are you aware if the front desk received a raise in July?

17  A.  I have no idea.

18       MS. HARGROVE:  Nothing further, Your Honor.

19       MR. McCARTHY:  Your Honor, I have one question.

20       JUDGE BUSCHMANN:  Okay.

21                      **CROSS-EXAMINATION**

22  Q.  BY MR. McCARTHY:  You started working after the union

23  election, correct?

24  A.  Yes.  I didn't start until January of last year.

25       JUDGE BUSCHMANN:  Okay.  You may hobble out.

```
1        THE WITNESS:  Thank you.

2        JUDGE BUSCHMANN:  Make sure that you put your weight on

3   your hands and not on your underarms.

4        THE WITNESS:  Okay.  Thank you.

5        JUDGE BUSCHMANN:  Do you need any help?

6        THE WITNESS:  Maybe just with my water.

7        MS. HARGROVE:  I've got the water.

8        JUDGE BUSCHMANN:  Take all the time in the world.

9        THE WITNESS:  Thank you.

10        JUDGE BUSCHMANN:  off the record.

11   (Off the record.)

12        JUDGE BUSCHMANN:  Let's go back on the record.

13        Mr. Bello, I have to swear you in.  Please raise your

14   right hand.

15   (Whereupon,

16                        STEPHEN BELLO

17   was called as a witness by and on behalf of the Respondent,

18   and having been first duly sworn, was examined and testified

19   as follows:)

20        JUDGE BUSCHMANN:  Please be seated.

21        THE WITNESS:  Thank you.

22                     DIRECT EXAMINATION

23   Q.   BY MR. GREENBAUM:  Please state your name, for the

24   record.

25   A.   My name is Stephen Bello.
```

1   Q.    Mr. Bello, where do you work?

2   A.    I work for Classic Hospitality.

3   Q.    What's your position there?

4   A.    President of the hotel division.

5   Q.    What is Classic Hospitality?

6   A.    Classic Hospitality is a group of five hotels and one

7   independent restaurant all located here in Washington, D.C.,

8   for quite some time.  We cater to the three and four start

9   customer guest.

10  Q.    Is the State Plaza Hotel one of those hotels?

11  A.    Correct.

12        JUDGE BUSCHMANN:  What kind of guest?

13        THE WITNESS:  The three star, four star guest.  We are

14  the middle of the road type of hotel operation.

15        JUDGE BUSCHMANN:  Okay.  And you said five hotels is what

16  you own?

17        THE WITNESS:  Yes, sir.  Five hotels.

18        JUDGE BUSCHMANN:  And the other one?

19        THE WITNESS:  One independent restaurant.

20        JUDGE BUSCHMANN:  I see.

21        THE WITNESS:  I'm sorry.  I think the allergies are

22  kicking in over here.

23  Q.    BY MR. GREENBAUM:  The State Plaza Hotel is one of those

24  hotels?

25  A.    Yes.  It is.

1  Q.    That hotel is under your direction?

2  A.    Correct.

3  Q.    How long have you held the position of President of

4  Classic Hospitality?

5  A.    August of '04.

6  Q.    Who is the general manager currently at the State Plaza

7  Hotel?

8  A.    Corrado Palenzona.

9  Q.    How long has Mr. Palenzona held that position?

10  A.    I want to say a little bit over a year, maybe a year-and-

11  a-half.

12  Q.    How often do you make it over to the State Plaza?

13  A.    My first year employed was probably twice a week.  Now,

14  it's probably once a week, maybe a little bit less.

15  Q.    Did you ever meet with the employees of the State Plaza?

16  A.    Yes.

17  Q.    Do you recall any meetings with housekeeping employees in

18  the past year at the State Plaza?

19  A.    Yes.

20  Q.    Do you recall a meeting you had in a conference room at

21  the State Plaza Hotel?

22  A.    Yes.

23  Q.    Do you recall what room that was?

24  A.    I believe it was the Ambassador room or the Diplomat

25  room.  They are next to each other.

1  Q.    Are those conference rooms in the hotel?

2  A.    Yes.

3  Q.    What was the purpose of that meeting?

4  A.    We do quarterly meetings at the hotels with different

5  levels, managers different levels of staff.  Some we do every

6  first Monday of the month, we rotate at different properties

7  to get employee input.  This particular one was we had a new

8  director of housekeeping and the housekeepers wanted to share

9  with us some of their concerns.

10  Q.    What were those concerns, if you can recall?

11  A.    To the best of my recollection, standard type of concerns

12  with the new supervisor, stocking the closets, supplies, you

13  know, taking out the trash.  Who is going to do that?  Very

14  general types of things that they just want reassurance

15  about, policy and procedure and my role is to give support

16  there and to listen.

17      JUDGE BUSCHMANN:  Who was the new supervisor?

18      THE WITNESS:  Lisa.  Lisa was actually the director of

19  housekeeping in one of our other properties, left to have a

20  baby and came back and we assigned her to State Plaza.

21  Q.    BY MR. GREENBAUM:  Did the issue of the union come up?

22  A.    Before all meetings, when meetings start, I have a

23  customary saying that we do at all the meetings, that there's

24  rules of the road.  We talk to each other with respect.  We

25  let people finish their sentences.  If somebody has trouble

1    communicating we take a moment and communicate a little bit

2    better.  A lot of just making sure people follow.

3        At that particular meeting because we were in

4    negotiations with the union I said, "We cannot talk about

5    union issues."

6    Q.    Did employees bring up union issues during that meeting?

7    A.    They attempted to.

8    Q.    What was your response?

9    A.    Our response was, "We are in negotiations.  We really

10    can't talk about it."

11    Q.    Was someone translating -- Do you speak Spanish?

12    A.    No.

13    Q.    Was someone translating during that meeting?

14    A.    Yes.

15    Q.    Who was that?

16    A.    Corrado.

17    Q.    Do you recall another meeting you had with employees?

18    A.    Yes.

19    Q.    When was that?

20    A.    That meeting was probably, I want to say a month or two

21    after the first meeting.

22        JUDGE BUSCHMANN:  Could we ask you, the meeting that you

23    are now talking about in the diplomat room, when that meeting

24    occurred?

25        THE WITNESS:  Which month?

1      JUDGE BUSCHMANN:  Yes.

2      THE WITNESS:  I'm sorry, Judge, I don't recall.

3      JUDGE BUSCHMANN:  Do we know?  Is it on the record when

4  that meeting occurred?

5      MR. GREENBAUM:  I don't believe so, Your Honor.

6      MR. McCARTHY:  Yes, Your Honor, we do.

7      JUDGE BUSCHMANN:  Do you have a suggestion to see whether

8  it refreshes his recollection?

9      MR. McCARTHY:  The record indicates that the meeting was

10  in late March, Your Honor, of 2005?

11      JUDGE BUSCHMANN:  Does that refresh your recollection,

12  late March.

13      THE WITNESS:  To be honest with you, I can't say for

14  sure.  I mean I remember walking to the building.  It wasn't

15  cold outside.  So I assume it could have been early spring.

16      JUDGE BUSCHMANN:  Okay.

17  Q.  BY MR. GREENBAUM:  Do you recall another meeting you had?

18  A.  Yes.

19  Q.  Where was that?

20  A.  It was in the laundry room of the State Plaza.

21  Q.  Was that before or after the first meeting?

22  A.  It was after the first meeting.

23  Q.  What was the purpose of that meeting?

24  A.  That meeting had a sense of urgency about it.  I received

25  a call that morning from Corrado that a number of employees

1    had come to his office to complain that they were being

2    called at home, people knocking on their door late at night,

3    basically scared about what was going on and they wanted an

4    opportunity or they wanted to know what we could do about it

5    for them.

6        MR. McCARTHY:  Your Honor, I'm going to object to the

7    answer to the extent it contains hearsay that he's hearing

8    from what other employees are telling him about home visits

9    or phone calls.  It's hearsay, Your Honor.

10        JUDGE BUSCHMANN:  I understand it's hearsay but we want

11    to know what the purpose of the meeting is and I think that

12    the witness is describing what his opinion was the reason for

13    the meeting.  When was the meeting, this one in the laundry

14    room?

15        THE WITNESS:  It was done midday so we could do both

16    shifts.  We invited all employees in the hotel, front desk,

17    engineering, housekeeping, anybody that wanted to attend the

18    meeting.  I don't recall the month of the meeting.

19        JUDGE BUSCHMANN:  Was it this year?

20        THE WITNESS:  Was it this year?  No, sir.

21        JUDGE BUSCHMANN:  2005?

22        THE WITNESS:  Yes, sir.

23        JUDGE BUSCHMANN:  Spring, summer, fall?

24        THE WITNESS:  I would say summer.

25        JUDGE BUSCHMANN:  Okay.

1  Q.   BY MR. GREENBAUM:  So, it was not a planned meeting; is

2  that correct?

3  A.   Was not a planned meeting.

4  Q.   Do you recall; who did the speaking at that meeting?

5  A.   Who did the speaking as --

6  Q.   Did you lead the meeting?

7  A.   I listened to the meeting.  My role, once again is we are

8  calling the meeting.  We understand there are some concerns.

9  As the president of the group, here is what I can promise

10  you.  We are going to be ladies and gentlemen through this

11  entire process, if anybody feels unsafe in walking to their

12  car, walking to their bus stop, people knocking on their

13  doors, calls late at night, anything that makes it

14  uncomfortable for them or their family, we will do anything

15  that's in our power to assure you will get to and from work

16  safely.

17  Q.   Was the union discussed at that meeting?

18  A.   The union was discussed in the fact that an employee

19  said, when can it stop, when is it going to be over.

20       MR. McCARTHY:  Your Honor --

21       JUDGE BUSCHMANN:  I understand it's hearsay.

22       MR. GREENBAUM:  I'll rephrase the question, Your Honor.

23       JUDGE BUSCHMANN:  Yes.

24  Q.   BY MR. GREENBAUM:  Did you say anything about the union

25  at that meeting?

1  A.   Other than we were in negotiations, no, we did not talk

2  about the union.

3  Q.   Did employees ask you for a raise at that meeting?

4       MR. McCARTHY:  Objection, Your Honor, hearsay.

5       JUDGE BUSCHMANN:  It's overruled.

6       THE WITNESS:  No.

7  Q.   BY MR. GREENBAUM:  In either the meeting you talked about

8  in the diplomat room or the Ambassador room and the meeting

9  in laundry room, did you stay after the meeting and talk with

10 employees?

11 A.   I stayed after both meetings would be a correct

12 statement, yes.

13 Q.   Did you talk with employees after those meetings?

14 A.   Yes.

15 Q.   Did you make any phone calls during those meetings?

16 A.   Absolutely not.

17 Q.   Did Mr. Palenzona make any phone calls during those

18 meetings?

19 A.   No.

20 Q.   Did Mr. Palenzona take out his cell phone during that

21 meeting?

22 A.   No.

23 Q.   Do you normally make phone calls during meetings?

24 A.   No.

25 Q.   Do you normally make phone calls when you are having a

1  meeting with employees?

2  A.   Absolutely not.

3  Q.   Did you call your attorney during those meetings?

4  A.   Absolutely not.

5  Q.   Did Mr. Palenzona call an attorney during that meeting?

6  A.   I stated he didn't use his phone.  Absolutely not.

7  Q.   Did there come a time when Classic Hospitality gave

8  market adjustment to housekeeping employees at its hotels?

9  A.   Yes.

10  Q.   When was that?

11  A.   February of '05.

12  Q.   What hotels employees were given market adjustments at

13  that time?

14  A.   It would be the McKinley Park, Morrison-Clark, The

15  Washington Plaza and the Lombardy.

16  Q.   Why was State Plaza employees not given a market

17  adjustment at that time?

18  A.   We were in negotiations with the union.

19  Q.   Now, during this time were employees at State Plaza and

20  the other hotels continuing to get their annual increases?

21  A.   Yes.

22  Q.   How does that work?

23  A.   Processes -- Reviews come up once a year.  Two weeks

24  prior human resources give us a list of those employees.  We

25  have an evaluation program; based on the evaluation they are

1  given a raise somewhere between, I want to say three-and-a-

2  half to five percent.

3  Q.    How did it come that the company decided to give a market

4  adjustment?

5  A.    Since the time that I have been employed by Classic

6  Hospitality we have instituted a few things.  One resolve was

7  to take a look at what the market was paying for similar

8  jobs, similar work.  And we identified a series of positions

9  within the company that we were paying below the norm and we

10  would look at norm hotels similar to ours.  So hotels focused

11  in that three star rating by Triple A, four star rating

12  similar type of work and we took a look at both hourly

13  positions and salary positions and made market adjustments.

14        The second thing we do is we do employee survey once a

15  year and we get feed back about how the employees are feeling

16  both salary employees and nonsalary employees.

17  Q.    Were you at any of the negotiations with the union

18  regarding the State Plaza?

19  A.    Yes.

20  Q.    Did the union make any proposals during those

21  negotiations?

22  A.    Yes.

23  Q.    What was that?

24  A.    Here is the contract that was approved by Hotel

25  Association and this is what we want you to sign.

1    Q.    Was Mr. Boardman at the meeting you were at?

2    A.    Yes.

3    Q.    What did Mr. Boardman say with respect to the hotel

4    association agreement at that time?

5         MR. McCARTHY:  Objection, Your Honor, it's hearsay.

6         JUDGE BUSCHMANN:  I understand that it's hearsay but for

7    him to testify about a conversation that he had he has to say

8    who said what.  I would imagine that in order to come up with

9    a conversation he has had, he has to be able to tell us what

10   the, you know, who said this and he replied that.  I would

11   imagine that it's not necessarily offered for the truth of

12   it, so I would overrule the objection.

13        Go ahead.

14        THE WITNESS:  I have to answer his question?

15        JUDGE BUSCHMANN:  Yes.

16        THE WITNESS:  Okay.  Here's the contract that has been

17   approved by the other hotels in the city we'd like you to

18   move forward on it.

19   Q.    BY MR. GREENBAUM:  Did he indicate there was any

20   negotiating room in that contract?

21   A.    No, sir.

22        MR. GREENBAUM:  Nothing further.

23        JUDGE BUSCHMANN:  Okay.

24        MR. McCARTHY:  Your Honor, could we have a couple minutes

25   to review the payroll records that we just received?

1      JUDGE BUSCHMANN:  Yes.  How much time?

2      MR. McCARTHY:  Ten minutes, Your Honor?

3      JUDGE BUSCHMANN:  You have not reviewed those.  You just

4  got them?

5      MR. McCARTHY:  Ms. Cotilla has reviewed them.  I have not

6  reviewed them, Your Honor.  We'd like to discuss --

7      **JUDGE BUSCHMANN:  All right.  Sure.  Ten minutes.  off**

8  **the record.**

9  **(Off the record.)**

10     **JUDGE BUSCHMANN:  Let's go back on the record.**

11     MR. McCARTHY:  Your Honor, Ms. Cotilla is going to take

12  the cross-examination of this witness.

13     JUDGE BUSCHMANN:  I see.  Okay.

14                     **CROSS-EXAMINATION**

15  Q.   BY MS. COTILLA:  Mr. Bello, my name is Stephanie Cotilla.

16  I'm an attorney at the National Labor Relations Board and I'm

17  going to ask you some questions today.

18     Now, you testified in your direct questioning about

19  market adjustment --

20  A.   Correct.

21  Q.   -- and you mentioned other hotels that are owned by

22  Classic Hospitality and one of those hotels is the Hotel

23  Lombardy, correct?

24  A.   Correct.

25  Q.   The Hotel Lombardy has no union, correct?

```
 1   A.   Correct.

 2   Q.   Another hotel is the Morrison-Clark Inn, correct?

 3   A.   Correct.

 4   Q.   Again, that one is not unionized, is it?

 5   A.   Correct.

 6   Q.   Then you have the Henley Park Hotel?

 7   A.   Correct.

 8   Q.   That one is also not unionized, correct?

 9   A.   (Nonverbal response.)

10   Q.   Finally you have the Washington Plaza, correct?

11   A.   (Nonverbal response.)

12   Q.   And that hotel is not unionized?

13        JUDGE BUSCHMANN:  You have to say yes or no.

14        THE WITNESS:  Yes.

15   Q.   BY MS. COTILLA:  Did you receive a subpoena in relation

16   to this case a subpoena duces tecum?

17   A.   No.  I did not.

18   Q.   Because you represent R.B. Associates, correct?

19   A.   Classic Hospitality, which is owned by R.B. Associates;

20   is that right?

21   A.   Correct.

22   Q.   And R.B. Associates, State Plaza Hotel received a

23   subpoena, correct?

24   A.   I don't know.

25   Q.   You are not aware at all of any sort of document search
```

1    that went on in relation to this case today?

2        MR. GREENBAUM:  Objection, Your Honor.  I didn't present

3    Mr. Bello as the custodian of records.  That's Mr. Cotton.

4        MS. COTILLA:  However, he does represent the company and

5    we did subpoena the State Plaza Hotel, Your Honor.

6        MR. GREENBAUM:  Object to represent the company.

7        JUDGE BUSCHMANN:  Objection overruled.  This witness

8    knows how to answer the -- You know how to answer the

9    question.  If you didn't get a subpoena you didn't get a

10   subpoena, right?

11       THE WITNESS:  Exactly.  I didn't get a subpoena.

12   Q.   BY MS. COTILLA:  You testified on direct that you did

13   employee surveys once a year; isn't that correct?

14   A.   That is correct.

15   Q.   None of those documents were turned over to the General

16   Counsel in this proceeding were they?

17   A.   I wouldn't know.

18   Q.   Did you collect any of those documents?

19   A.   Did I collect them?

20   Q.   Did you gather together?

21   A.   I would have gathered them together.

22   Q.   What's your position again with R.B. Associates?

23   A.   I am president of Classic Hospitality.

24   Q.   And as president of Classic Hospitality aren't you aware

25   of what's going on with your company?  Isn't that a pretty

1  high position in Classic Hospitality?

2  A.    Pretty high position, yes, it is.

3  Q.    Great.  Well, let me ask you this, who else is above you

4  in the chain of hierarchy?

5  A.    Chain for Classic Hospitality?

6  Q.    That's right.

7  A.    Are you asking me for my direct report?

8  Q.    No, I'm asking you who do you report to in Classic

9  Hospitality?

10  A.    So, you are asking me who I report to.

11  Q.    I'm asking you --

12  A.    Are you asking me who I report to or are you asking who

13  is higher than me?  You stated two questions.

14        MR. GREENBAUM:  Your Honor --

15        MS. COTILLA:  Argumentative, Your Honor.  I'm asking him

16  a question.  I'll repeat it again.

17  Q.    BY MS. COTILLA:  Who do you report to at Classic

18  Hospitality?

19  A.    James Martin.

20  Q.    What is his title?

21  A.    He's the CFO.

22  Q.    Is he still with the company?

23  A.    Yes.  He is.

24  Q.    Who does James Martin report to?

25  A.    The owner of the company.

1  Q.   Who is that?

2  A.   Richard Bernstein.

3  Q.   Who reports directly to you?

4  A.   Who reports directly to me?

5  Q.   That's correct.

6  A.   All the general managers in the company.

7  Q.   And that would include Corrado Palenzona; is that

8  correct?

9  A.   That is correct.

10  Q.   And that's why as president of R.B. Associates/Classic

11  Hospitality, are you not aware of what's happening at the

12  hotels?

13  A.   Am I aware of every detail at the hotels?

14  Q.   I didn't ask you if you are aware of every detail.  Are

15  you not aware of the general management of those hotels, yes

16  or no?

17  A.   I'm aware of the general manager of those hotels.

18  Q.   Were you not aware of whether or not documents were

19  gathered in connection to this case?

20  A.   I am not aware of the details of those documents.

21  Q.   But you were aware that documents were gathered in

22  connection with this case; isn't that correct?

23  A.   Of course, I would be.

24  Q.   Okay.  Who gathered those documents?

25  A.   Who gathered those documents?

1  Q.   In response to our subpoena?

2  A.   Corrado.

3  Q.   Mr. Palenzona.  And did you --

4  A.   And counsel.

5  Q.   Did you talk to Mr. Palenzona and counsel with regard to

6  the documents that were gathered?

7  A.   No.

8  Q.   Nothing at all?

9  A.   That's what I said.

10  Q.   I understand that's what you said.  Okay.

11      You testified that you relied on those employee surveys

12  when you were giving --

13  A.   I'm sorry.  I didn't hear the question.

14  Q.   You testified that you relied on the market adjustments

15  when you were giving, you relied on the employee surveys for

16  giving the market adjustment; isn't that correct?

17  A.   That's incorrect.

18  Q.   What did you rely on in giving the market adjustment?

19  A.   Market surveys.

20  Q.   What's a market survey?

21  A.   A market survey, we took a look at our competitive set to

22  find out what other properties were paying for similar jobs.

23  We looked at the surveys to find out how to improve the work

24  environment in the properties.

25  Q.   When did you do those market surveys?

1   A.   I did the first market survey, I started in the company

2   in August and we were instructed to start them in September.

3   Q.   Of what year?

4   A.   '04.

5   Q.   The results of those market surveys then caused you to do

6   a market adjustment that would be your testimony here today?

7   A.   That would correct testimony.

8   Q.   Therefore, those market surveys were part of what you

9   used in making the market adjustment; is that correct?

10  A.   Obviously.

11  Q.   Isn't it correct that you were only present at one of the

12  union bargaining meetings?

13  A.   That is a correct statement.

14  Q.   And that was the meeting that you described that took

15  place at the Nixon Peabody; isn't that correct?

16  A.   That is correct.  But I didn't describe the Nixon

17  Peabody.  I just said I was at one meeting.

18  Q.   It was at the Nixon Peabody; isn't that right?

19  A.   That would be the correct question.

20  Q.   Mr. Greenbaum and Devki Virk were present for that

21  meeting; isn't that correct?

22  A.   Devki Virk was present the entire time and Mr. Greenbaum

23  was present most of the time.

24  Q.   That meeting took place on June 29th, 2005; isn't that

25  correct?

1  A.    If you say so.  I don't know the date.

2  Q.    It's a fact, isn't it, that the union gave the company a

3  comprehensive proposal on June 29th, 2005?  Isn't that

4  correct?

5  A.    Is it a fact that the company --

6  Q.    Let me ask you again.  It's a fact, Mr. Bello, that the

7  union gave the hotel a comprehensive proposal on April 18th,

8  2005, isn't that correct?

9  A.    I can't state the date because I don't recall the date.

10  Q.    You weren't present, were you?

11  A.    No.  I was not.

12  Q.    For the Hotel Lombardy what was the date that you decided

13  to do a wage adjustment?

14  A.    What day I decided?

15  Q.    What was the day that the market adjustment went into

16  effect for the employees working at the Hotel Lombardy?

17  A.    My guess it was the end of February, sometime between the

18  20th and 25th.

19  Q.    Of what year?

20  A.    Of '05.

21  Q.    So, for the Morrison-Clark Inn, what was the date the

22  market adjustment went into effect?

23  A.    I would some time in the same time frame, February 20th

24  to 25th.

25  Q.    At the Henley Park, when did the market adjustment go

1  into effect?

2  A.   I would say February 20th to 25th.

3  Q.   Of course, you testified at the State Plaza there was no

4  market adjustment in February 20th to 25th of 2005; isn't

5  that correct?

6  A.   Yes.  That's correct.

7  Q.   And the reason you couldn't give a market adjustment at

8  State Plaza between February 20th and 25th, is because there

9  was a union there; isn't that right?

10  A.   We were negotiating with the union, that's correct.

11  Q.   There was a union there and you couldn't give a market

12  adjustment; isn't that correct?

13  A.   We were negotiating with the union.

14  Q.   You were negotiating but the union was representing

15  employees at the State Plaza; isn't that correct?

16  A.   We were negotiating with the union.

17  Q.   Let me ask you again, it's a yes or no question.  Was the

18  union representing employees at the State Plaza Hotel in

19  February of 2005, yes or no?

20  A.   The union?

21  Q.   Yes or no.

22  A.   Yes or no.

23  Q.   Yes or no?

24  A.   We were negotiating with the union.

25  Q.   But was the union representing employees at State

1    Plaza --

2        MR. GREENBAUM:  Objection, Your Honor.  If you are in

3    negotiations, they are representing you.

4        MS. COTILLA:  I believe he's being very hostile, and I'm

5    trying to get --

6        MR. GREENBAUM:  I don't think he understands, Your Honor.

7        JUDGE BUSCHMANN:  I think there's a little bit of a

8    tension going on that I don't think is necessary.  I think if

9    you were to give the witness time to answer I think the

10   witness would probably have answered by now.  But she's

11   entitled to a yes or no answer.  So can you answer -- If you

12   don't know, you don't know.  So yes, no, I don't know.

13       MS. COTILLA:  Let me ask it again.

14       JUDGE BUSCHMANN:  Please repeat your question.

15   Q.   BY MR. GREENBAUM:  In February of 2005 isn't it correct

16   that the union, Local 25, represented employees at the State

17   Plaza Hotel?

18   A.   Yes.

19   Q.   That was the reason that there was no wage adjustment in

20   February of 2005 at the State Plaza Hotel; isn't that

21   correct?

22   A.   Market adjustment, yes.

23   Q.   The hotel never offered a proposal of $12.50 during

24   negotiations with the union; isn't that a fact?

25   A.   I don't know.

1  Q.    You don't know at all how much the hotel proposed?

2  A.    As you stated I was only at one negotiation.

3  Q.    Only at one.  Okay.  The market adjustment at the State

4  Plaza Hotel was given on July 8, 2005; isn't that correct?

5  A.    I know it was the beginning of July, correct.

6  Q.    And the reason that you gave it on July 8, 2005 is

7  because that was the same time when the company withdrew

8  recognition from UNITE HERE, isn't that correct?

9  A.    Correct.

10      MS. COTILLA:  No further questions, Your Honor.

11      JUDGE BUSCHMANN:  Okay.

12      MR. GREENBAUM:  I have some brief follow-up, Your Honor.

13      JUDGE BUSCHMANN:  Okay.

14                    **REDIRECT EXAMINATION**

15  Q.    BY MR. GREENBAUM:  Did the proposal the union gave Hotel

16  Association agreement contain other economic issues other

17  than wages?

18  A.    Yes.  It did.

19  Q.    Did it have a pension plan --

20      MS. COTILLA:  Your Honor, we object as outside the scope

21  of my cross-examination.

22      MR. GREENBAUM:  I'm satisfied with that answer, Your

23  Honor.

24      JUDGE BUSCHMANN:  Okay.  Anything else?

25      MR. GREENBAUM:  No.

1      JUDGE BUSCHMANN:  I think you testified, Mr. Bello, that

2   in your opinion the time that you participated in those

3   negotiations with the union that the union made a proposal

4   which in effect expected you to adopt the proposal that was

5   submitted without any opportunity to bargain, you would say.

6      THE WITNESS:  That would be my statement.  Yes, sir.

7      JUDGE BUSCHMANN:  But there was -- During similar

8   negotiations, there was a give and take, but you are not

9   aware of that?

10      THE WITNESS:  No.  I'm not aware of that.  No.

11      JUDGE BUSCHMANN:  Do you know -- When you said that you

12   participated in one of those meetings, was it the last

13   meeting, was it in the middle, was it in the beginning?  Do

14   you know when it was?

15      THE WITNESS:  It was the last meeting but we scheduled an

16   additional meeting after that meeting.  At that time we

17   didn't know it was the last meeting.

18      JUDGE BUSCHMANN:  Okay.  But in your opinion on the table

19   was basically the union's proposal and they expected you to

20   accept it in toto without bargaining essentially; is that

21   what you are saying?

22      THE WITNESS:  Yes.

23      JUDGE BUSCHMANN:  Okay.  Thank you very much.  You may

24   step down.  Thank you.

25      THE WITNESS:  Thank you.

1         MR. GREENBAUM:  The next witness is Corrado Palenzona.

2         JUDGE BUSCHMANN:  Okay.  Mr. Palenzona, you have

3    testified here before.

4         THE WITNESS:  Yes.

5         JUDGE BUSCHMANN:  You have been sworn in before?

6         THE WITNESS:  Yes.

7         JUDGE BUSCHMANN:  So you are still under oath.

8         THE WITNESS:  Thank you, Your Honor.

9    (Whereupon,

10                      **CORRADO PALENZONA**

11   was recalled as a witness by and on behalf of the Respondent,

12   and having been previously sworn, was examined and testified

13   as follows:)

14                     **DIRECT EXAMINATION**

15   Q.   BY MR. GREENBAUM:  Good afternoon, Mr. Palenzona.

16   A.   Good afternoon.

17   Q.   Were you at any of the negotiation sessions with the

18   union?

19   A.   Yes.  The first two.

20   Q.   At one of those negotiation sessions did the union

21   present the hotel with any proposal?

22   A.   Yes.  One I would say, one book.

23        MR. GREENBAUM:  Bear with me, Your Honor.

24        JUDGE BUSCHMANN:  Yes.

25        MR. GREENBAUM:  May I approach, Your Honor.  What I'm

1  showing the witness is marked and is in evidence I believe as

2  GC Exhibit 86.

3  Q.    BY MR. GREENBAUM:  Mr. Palenzona, is this what the union

4  provided at that negotiation session?

5  A.    It looks like it, yes.

6  Q.    Do you know what that is?

7  A.    Yes.  The union house contract.

8  Q.    Was it represented that that was the hotel association

9  contract?

10  A.    Yes.

11  Q.    Was Mr. Boardman at that meeting?

12  A.    Yes.

13  Q.    What did Mr. Boardman say, if anything about the

14  proposal?

15  A.    He gave us the book and we went very briefly and he said

16  that that was the Hotel Association proposal and he said

17  that's what we are going get.

18  Q.    Did he say we could get anything different?

19  A.    No.  That's what you get.

20  Q.    Did he say he was willing to move off that at all?

21  A.    No.

22  Q.    Now, do you know who Marleni Jiron is?

23  A.    Yes.

24  Q.    Did Marleni ever come to your office and discuss things

25  with you?

1   A.   Several times.

2   Q.   What did you discuss?

3   A.   Problems with provision, respect, employees don't like

4   her, too much work, I can name it.

5        JUDGE BUSCHMANN:  Wait a minute.  Who is this person now?

6        MR. GREENBAUM:  Marleni Jiron.

7        JUDGE BUSCHMANN:  I see.

8   Q.   BY MR. GREENBAUM:  Did you ever have a decision with

9   Ms. Jiron about the union?

10  A.   She asked me how can we --

11  Q.   How can we what?

12  A.   Gather of the union, it was in Spanish.

13  Q.   What was your response?

14  A.   My response was I cannot talk about that -- with the

15  operation.

16  Q.   Now, there were a number of employees from the hotel came

17  to testify in this proceeding; is that right?

18  A.   Yes.

19  Q.   Did you force those employees to come here and testify?

20  A.   No.

21  Q.   How did those employees know about the hearing?

22  A.   A few of them had been subpoenaed and then they decided

23  to not have them here, including all our supervisors and the

24  rest was everybody knows about this.

25  Q.   How did everyone know about this?

1  A.    They talk about that.  We had several employees subpoena.

2  Q.    Did the employees ask you to come here?

3  A.    Yes.  Every morning in my office when I go check my mail

4  before come here a loyal employee comes to my office to ask

5  if they can come here.

6  Q.    Did you tell employees what to say here today?

7  A.    No.

8  Q.    Did you tell employees what to say here yesterday?

9  A.    No.

10  Q.    Now, some employees got subpoenas called but who got

11  subpoenas from the National Labor Relations Board, correct?

12  A.    Yes.

13  Q.    But they were not called by the National Labor Relations

14  Board?

15  A.    No.  But they came.

16  Q.     How did you know they got subpoenaed?

17  A.    They told me.  They came to my office.

18      MR. GREENBAUM:  Your Honor, I would like to have marked

19  as Respondent's 5 and 6, I believe.

20  **(Respondent's Exhibit 5 and 6 marked for identification.)**

21  Q.    BY MR. GREENBAUM:  Just for identification, what we have

22  marked for identification as Respondent Exhibit 5 looks like

23  a flyer and on top it says, "The U.S. Government has issued

24  these charges against the State Plaza."  And then at the

25  bottom it says, "The U.S. Government is watching.  Don't be

1  afraid of us." That's number 5, and then Number 6 has "U.S.

2  Government Charge," and then a case number and then a check

3  mark.

4      Mr. Palenzona, have you seen these before?

5  A.  Yes.

6  Q.  When did you see this?

7  A.  In several places, cafeteria and it was brought up to my

8  office by many employees many times.

9  Q.  Did you ever tell employees not --

10  A.  No.

11  Q.  Do you know how they got in the hotel?

12  A.  I guess somebody brought them in.

13  Q.  Did you ever tell anyone not to distribute these at the

14  hotel?

15  A.  No.

16  Q.  Now, you indicated that several employees brought these

17  to your office?

18  A.  Yes.

19  Q.  What did they say --

20  A.  They were upset about --

21      MS. COTILLA:  Your Honor, I'm going to object, to the

22  relevance.  The two flyers came later time period, like the

23  November 1st, 2005, petition that came after withdrawal,

24  after recognition was withdrawn by the Respondent.  Also as

25  to the complaint at issue in this case they are irrelevant.

1     MR. GREENBAUM:  I believe they are relevant, Your Honor,

2  to the issue of -- It seems as though General Counsel has

3  made an issue as to why employees came to the hearing here

4  and it goes to that.

5     JUDGE BUSCHMANN:  Okay.  I'll overrule the objection.

6     THE WITNESS:  Can I answer?

7  Q.  BY MR. GREENBAUM:  Yes.

8  A.  They were very upset especially about management bribe

9  people with $2.50.

10  Q.  Did anyone come into your office and complain about that?

11  A.  Say, I'm being bribed and they threw this on my desk and

12  they got upset with me.  I don't know why.

13  Q.  Did those employees express whether they wanted to come

14  here and testify on that issue today?

15  A.  Yes.

16     MR. GREENBAUM:  I have no further questions.

17     JUDGE BUSCHMANN:  Okay.

18     MR. GREENBAUM:  I move five and six into evidence, Your

19  Honor.

20     JUDGE BUSCHMANN:  Any objection?

21     MS. COTILLA:  Just for the record, I do object to its

22  relevance, but I understand it.

23     JUDGE BUSCHMANN:  I hereby receive Respondent's Exhibits

24  5 and 6.

25  **(General Counsel's Exhibit 5 and 6 received into evidence.)**

1     MS. COTILLA:  Your Honor, I'd like five minutes.

2     JUDGE BUSCHMANN:  Yes.  Five minutes.

3     Mr. Greenbaum, do you have any witnesses after this?

4     MR. GREENBAUM:  No, Your Honor, but after this I would

5  like to move in one exhibit.

6     JUDGE BUSCHMANN:  Yes.  Five minutes, Ms. Cotilla.

7     MS. COTILLA:  Yes, Your Honor, thank you.  Off the

8  record.

9  **(Off the record.)**

10     **JUDGE BUSCHMANN:  Let's go back on the record.**

11                         CROSS-EXAMINATION

12  Q.   BY MS. COTILLA:  Mr. Palenzona, my name is Stephanie

13  Cotilla.  I have a document -- I'm showing you what's been

14  marked as General Counsel's Exhibit 111.  Do you recognize

15  this document?

16  A.   Yes.

17  Q.   This is the subpoena that we served on you; isn't that

18  correct?

19  A.   Yes.

20     MR. GREENBAUM:  Objection, Your Honor, outside the scope

21  of direct.

22     JUDGE BUSCHMANN:  Well, is it outside the scope?  Are you

23  going to ask him about certain matters that are relevant to

24  the direct examination and tying in the subpoena; is that

25  what you are about to do or is it going beyond direct?

1    MS. COTILLA:  Your Honor, we have reserved the right to

2  question Mr. Palenzona with regard to the subpoena.  By this

3  point in the trial we have received all of the documents.

4  That was what I was going to attempt to do.

5    JUDGE BUSCHMANN:  So are you finished with cross-

6  examination then?

7    MS. COTILLA:  Yes, Your Honor.  If that would make it

8  easier then, no cross-examine, but then I would like to

9  recall him to give testimony.

10    JUDGE BUSCHMANN:  Well, all right.  Yes, please, go

11  ahead.

12  (Whereupon,

13                    **CORRADO PALENZONA**

14  was recalled as a witness by and on behalf of the General

15  Counsel, and having been previously sworn, was examined and

16  testified as follows:)

17                    **DIRECT EXAMINATION**

18  Q.   BY MS. COTILLA:  Mr. Palenzona, if I can direct your

19  attention to paragraph 13 of that subpoena.

20  A.   Yes.

21  Q.   In that paragraph isn't it correct that we asked for all

22  documents concerning any and all of the following topics and

23  we then listed topics; isn't that correct?

24  A.   I can see that but I don't understand the question.

25  Q.   I'm just setting up the question.  The question is, isn't

1   it correct that we asked for all documents regarding the

2   decision to give employees a wage adjustment and/or pay

3   raise?  Do you see that in paragraph 14?

4   A.   Yes.  But I don't have those documents.

5   Q.   Okay.  But I'm just asking you whether or not you see

6   this?

7   A.   I do see this, yes.

8   Q.   Paragraph 13(h) does start with that, correct?

9   A.   I believe so.  Yes.  It is correct.

10  Q.   What kind of search did you conduct in responding to the

11  subpoena?

12  A.   I went through the subpoena and I really cannot provide

13  all these documents -- I did provide others.

14  Q.   You are the one who did the search for the subpoenaed

15  materials; is that correct?

16  A.   That was actually the control of that documentation.

17  Q.   Who was that?

18  A.   Between my accountant and myself.

19  Q.   Are you pointing to someone here in the courtroom?

20  A.   No.  I wasn't.

21  Q.   Nobody here in the courtroom helped you with these

22  documents?

23  A.   No.  Nobody.

24  Q.   But counselor, Mr. Greenbaum, helped you; isn't that

25  right?

1  A.    Of course.

2  Q.    You consulted with him in gathering the documents or at

3  least filing for the subpoena; isn't that right?

4  A.    Of course, yes.

5  Q.    Isn't it correct that in response to paragraph 13(h)

6  before we asked for all of those documents -- decision to

7  give employees a wage adjustment or a pay raise; you only

8  provided on document; isn't that correct?

9  A.    The wage adjustment.

10  Q.    You provided one document, correct?

11  A.    That's what we have.

12  Q.    And that one document pertained only to the Washington

13  Plaza; isn't that correct?

14  A.    We provide that document of our employee and we provide

15  every single of the hotel that we have did the adjustments.

16  Q.    But in response -- Okay.  But let me ask you the question

17  again.

18  A.    Yes, please.

19  Q.    Paragraph 13(h) in response to that paragraph you only

20  provided one document and that one document pertained to

21  Washington Plaza Hotel --

22      MR. GREENBAUM:  Objection, asked and answered.

23      MS. COTILLA:  Your Honor, his answer was non-responsive

24  to the question.

25      JUDGE BUSCHMANN:  He testified that he provided the --

1    what is it called again, the cost adjustment or wage

2    adjustment, he provided that document, now whether it's the

3    only one or two what difference does it make?  Does it make

4    any difference?

5        MS. COTILLA:  It's for the other hotels, Your Honor, and

6    you have heard testimony here about --

7        JUDGE BUSCHMANN:  Well, he answered that question then.

8    I think he answered the question that supplied the wage

9    adjustment document to you about the State Plaza Hotel but

10   not the other hotels; is that right, Mr. Palenzona?

11       THE WITNESS:  I provide the wage adjustment from the

12   hotel.

13       JUDGE BUSCHMANN:  For the State Plaza Hotel.

14       THE WITNESS:  For the State Plaza Hotel.

15   Q.   BY MS. COTILLA:  And that's it; isn't that correct?

16   A.   In my case, yes.  Myself, yes.

17   Q.   And isn't it correct you provided no market surveys;

18   isn't that correct?

19   A.   No.

20   Q.   No market surveys?

21   A.   No.

22   Q.   If you look now at paragraph 17 of this subpoena.

23   A.   Yes.

24   Q.   In fact, 17, 18 and 19 of the subpoena those all request

25   documents reviewed by Respondent when making the decisions to

1  give a wage adjustment to its employees.

2  A.   We had given those raises, those are the dates.

3  Q.   Well, I'm asking --

4  A.   The decision was made when we decided withdrawn --

5  Q.   Right.  In these paragraphs 17, 18 and 19 of the subpoena

6  requested all documents that were reviewed when making that

7  decision; isn't that correct?

8  A.   It is correct.

9  Q.   Okay.

10  A.   But I still don't have --

11  Q.   I'm just asking you yes or no --

12      MR. GREENBAUM:  Your Honor.

13      JUDGE BUSCHMANN:  Yes.

14      MR. GREENBAUM:  The document speaks for itself.  The

15  issue is whether there were any documents that are responsive

16  and that's what he's going to testify but if they want to

17  have an argument over whether there are other documents --

18      JUDGE BUSCHMANN:  Okay.

19      MS. COTILLA:  Your Honor, the issue is that we have

20  already heard testimony from Mr. Bello that market surveys

21  were relied upon in giving these wage adjustments.  We didn't

22  get these documents.

23      JUDGE BUSCHMANN:  But I think you have made your point

24  that you didn't get those documents.  That's the end of the

25  story, right, isn't it?

1      MS. COTILLA:  That's correct, Your Honor.

2      JUDGE BUSCHMANN:  So why go through this laborious

3  questioning of this witness when the record indicates that

4  those documents were not supplied to you.

5      MS. COTILLA:  Well, at this point because we are going to

6  be requesting and adverse inference for not having received

7  any of those documents.

8      JUDGE BUSCHMANN:  Well --

9      MR. GREENBAUM:  Your Honor, they gave a market adjustment

10  to all of the hotels in February.  They are asking him about

11  the State Plaza, what documents he relied on.  That decision

12  was made back in February before any of the allegations in

13  this complaint.

14      JUDGE BUSCHMANN:  I understand.

15      I'm not going to give you any indication one way or the

16  other as to whether or not an adverse inference is justified

17  based upon what you are saying and I must say I'm a little --

18  I would question it at this point that an inference would be

19  justified on that basis.

20      MS. COTILLA:  I understand.  No further questions, Your

21  Honor.

22      JUDGE BUSCHMANN:  Anything.

23      MR. GREENBAUM:  Nothing further, Your Honor.

24      JUDGE BUSCHMANN:  Okay.  Thank you, very much.

25      MR. GREENBAUM:  Your Honor, we have no further witnesses,

1    but what I would like to do is have marked and introduced

2    into evidence our position statement in this matter and I

3    believe the forward letter accompanying the charge indicated

4    that position statements may be introduced into evidence.

5        JUDGE BUSCHMANN:  Yes.

6        MR. GREENBAUM:  So our position statement dated September

7    14, '05 and I would like to have it marked and introduced as

8    Respondent Exhibit 7.

9    **(Respondent's Exhibit 7 marked for identification.)**

10       JUDGE BUSCHMANN:  Any objection?

11       MR. McCARTHY:  Yes, Your Honor.  I vehemently object to

12   the introduction of position statements.  There's no

13   contention that it's an admission by a party opponent at this

14   stage.  To introduce a position statement that the Respondent

15   compared during the investigation of the Region's charge in

16   response to the charge allegations is hearsay, Your Honor,

17   argument of counsel.  Counsel will have an opportunity to

18   brief this matter.  But there is no basis for allowing that

19   hearsay evidence and those arguments of counsel in in

20   response to the charge.

21       Mr. Greenbaum is absolutely correct that when the charge

22   is filed the Respondent is notified that, in fact, they

23   should provide their evidence and we would prefer sworn

24   testimony from witnesses although they may submit a position

25   statement in lieu thereof and it will be given less weight

845

 1  than the sworn testimony of witnesses.  The position

 2  statement at this stage Your Honor, are hearsay and total

 3  argument of counsel and they are not an exception of the

 4  Federal Rules of Evidence.  I mean traditionally when the

 5  position statements come in that's because there's an

 6  admission in that that party opponent or another exception to

 7  the hearsay rule by which they are permitted in.

 8      At this point to allow the position statements wholesale

 9  to come in I believe is entirely inappropriate.

10      MR. GREENBAUM:  Your Honor, referencing you, the Judge,

11  to General Counsel's Exhibit Number 1(b), which is part of

12  the formal papers, the letter from the Regional Director

13  Mr. Gold accompanying the charge states in part, "Please be

14  advised that we cannot accept any limitations on the use of

15  any evidence or position statements that are provided to the

16  Agency, any position letter will be treated as binding upon

17  the party submitting it and may be introduced in any hearing

18  as evidence of party position."

19      So we move for the admission of the position statement.

20      JUDGE BUSCHMANN:  I mean the purpose of the position

21  statement, I would imagine, is basically argument, isn't it?

22  I mean there is no evidence in the position statement that

23  you are relying upon for the propositions in your case; is

24  that correct?

25      MR. GREENBAUM:  We are not relying on the argument, Your

 1   Honor, we are relying on the facts that are set forth in that

 2   position statement.

 3      JUDGE BUSCHMANN:  There are facts in the position

 4   statement?

 5      MR. GREENBAUM:  Yes, Your Honor.  Regarding, specifically

 6   regarding the bargaining proposals that Respondent did agree

 7   to.

 8      MR. McCARTHY:  Your Honor, if I may be heard on that.   I

 9   was precluded from getting into the give and take of

10   bargaining sessions and the back and forth.  I tried to

11   structure consistent with the Court's instruction the overall

12   comment of limiting my rendition of that.

13      JUDGE BUSCHMANN:  Yes.  I understand.

14      MR. GREENBAUM:  But they did get into it, Your Honor,

15   that's the issue and the position statement is our position

16   with respect to that.

17      JUDGE BUSCHMANN:  All right.  I haven't seen what your

18   position statement is.  I have not looked at it.  I have not

19   studied it.  But I generally agree with Mr. McCarthy that a

20   position statement is a statement that sets forth the, as it

21   says, the position of the particular party that's supplying

22   it and makes argument and tries to defuse the allegations

23   that have been lodged against a particular party.  And, so,

24   basically it does not serve as a factual basis for anything

25   in the case other than the legal position that the party has

1    taken vis-a-vis certain allegations.

2        So I find it very unlikely that anyone would rely upon

3    the position statement by counsel for any factual finding.

4        MR. GREENBAUM:  If that were the case, Your Honor, why

5    have that wording in the Regional Director's transmittal

6    letter to the charge, if that's their position and when we

7    submitted it, it was a binding statement on Respondent.  So

8    it should be treated as such.

9        JUDGE BUSCHMANN:  Maybe I'm wrong.  So, you know, I don't

10   see how the position statement can prejudice your side or the

11   General Counsel's side but, and like I said, I haven't seen

12   it.  I haven't studied it.  It seems to me receiving it into

13   the record does not have a detrimental effect on the General

14   Counsel's case and I would imagine that it would be

15   considered in the fashion that I outlined and that is that it

16   is mostly argumentation setting forth the legal basis -- It's

17   like an opening argument.  That's about what it is like, an

18   opening argument in the sense that there are no facts that

19   are derived from the position statement.  Just like in an

20   opening statement no facts are accepted other than that it is

21   a proposal to show certain facts and to rely upon certain

22   arguments.

23       So I would say that a position statement is analogous to

24   an opening statement or a concluding statement.

25       MR. GREENBAUM:  For that limited purpose, Your Honor, we

1    are acceptable in introducing it for that purpose.

2        JUDGE BUSCHMANN:  Okay.

3        MR. McCARTHY:  Your Honor, again, we object.  It's my

4    understanding consistent with the bench book in Board case

5    law that position statements are not admissible for this

6    purpose.

7        I think what the objective here is perhaps to get this

8    before the District Court and make arguments from that

9    position statement.  Maybe a district judge may not be as

10   well versed in labor law as an administrative law judge.  But

11   we don't think it's proper for the Respondent to be able to

12   make argument from position statements as statements of fact

13   and we would move to exclude that, Your Honor.

14       As set forth in the Regional Director's initial response,

15   the Region needs to know the legal position of the parties in

16   response to the charge.  They only ask for a position

17   statement if the Region believes that the charge has merit

18   and it is worth going forward.  Otherwise, they would dismiss

19   it without obtaining the position of the charged party.  At

20   that point in time they prefer sworn evidence.  But a

21   position statement is oftentimes offered in lieu thereof by

22   counsel for the charged party.

23       So, again, Your Honor, I would object to the admission of

24   the position statement --

25       JUDGE BUSCHMANN:  But don't you think that a position

1    statement is analogous, say, to a concluding argument of

2    counsel or an opening statement of counsel?  Don't you think

3    that that's a pretty good analogy?

4        MR. GREENBAUM:  Your Honor, and I would note that

5    position statements to the EEOC, Equal Opportunity Commission

6    are admissible in Title VII cases in federal court and are

7    treated just like what the Regional Director stated, they are

8    treated, they can be treated as admissions of a party and

9    they are regularly introduced in Title VII cases, ADA cases,

10   cases such as those.  In any Agency position statements are

11   admissible and I don't see what the difference would be here.

12       MR. McCARTHY:  Your Honor, the bench book states that "A

13   party may not affirmatively rely on its own assertions in

14   position statements or briefs to help establish a point on

15   which it carries the burden of proof.  See Cannondale Corp.,

16   310 NLRB 845, 852 (1993) reports by the 5th Circuit,

17   Attorney's letter to the judge in the nature of a

18   supplemental brief.

19       The exceptions to the Rule, Your Honor, are when there is

20   and if an admission by a party opponent or they are used for

21   impeachment purposes, but not to advance in support of

22   counsel's own assertions in there to buttress its case.  And

23   I'm aware of no --

24       JUDGE BUSCHMANN:  And you have a precedent in there that

25   says they are inadmissible, is that what you are saying the

1  you have a citation to the Board law that states that

2  position statements are inadmissible?

3      MR. McCARTHY:  Yes, Your Honor.

4      MR. GREENBAUM:  I read that annotation what he just cited

5  to say you can't rely on it.  We are not -- We are going to

6  use it just for what, Your Honor, stated.  It's background,

7  just like Ms. Virk's testimony was background.  It's not --

8  you know, you could -- The Court could use it for whatever

9  reason they are using it.  But we are not relying on it

10 principally.

11     JUDGE BUSCHMANN:  Okay.  My ruling then is, what is the

12 number of the exhibit?

13     MR. GREENBAUM:  Seven, Your Honor.

14     JUDGE BUSCHMANN:  Seven, I will receive your Exhibit 7

15 with the following proviso.  And that is that it is limited

16 for the purpose of an argument or for the purpose of making a

17 concluding statement, but it is not to be taken as any

18 evidence in support of the allegations or against the

19 allegation in this case.

20     With that proviso I hereby receive that document.

21     Any objection, Mr. McCarthy?

22     MR. McCARTHY:  I now respectfully accept the decision,

23 Your Honor.

24     JUDGE BUSCHMANN:  Yes.  Okay.

25 **(Respondent's Exhibit 7 received into evidence.)**

1    MR. GREENBAUM:  With that we rest, Your Honor.

2    JUDGE BUSCHMANN:  Yes.  Thank you.

3    MS. COTILLA:  Your Honor, if this is an appropriate time,

4  we have a few documents I wanted to introduce.  One of them

5  was mentioned when Ms. Virk was testifying and you asked if

6  we could supplement the record and we have that ready today.

7  It's a copy of the charge in case 5-CA-32454, and that's

8  General Counsel's Exhibit 152, General Counsel's Exhibit

9  152(a) is the withdrawal letter for that charge, General

10  Counsel's Exhibit 153 is the charge in case 5-CA-32533 and

11  General Counsel's Exhibit 153(a) is the withdrawal in that

12  same case.  And I do have copies of that.

13  **(General Counsel's Exhibit 152, 152(a), 153, and 153(a)**

14  **marked for identification.)**

15    JUDGE BUSCHMANN:  Now, I don't remember the relevance of

16  those documents.

17    MS. COTILLA:  I believe, Your Honor, it's my

18  understanding that when we reached a certain point in

19  Ms. Virk's testimony there might have been an objection from

20  Mr. Greenbaum and I believe there was an agreement that we

21  would then produce those documents to supplement what we

22  already had as exhibits and we have gathered those.

23    JUDGE BUSCHMANN:  I see.

24    MS. COTILLA:  So there's -- charge as well.

25    JUDGE BUSCHMANN:  So, are you offering this at this time?

1      MS. COTILLA:  Your Honor, I offer General Counsel's

2  Exhibits 152, 152(a), 153 and 153(a).

3      JUDGE BUSCHMANN:  Any objection, Mr. Greenbaum?

4      MR. GREENBAUM:  No, Your Honor.

5      JUDGE BUSCHMANN:  152, 152(a), 153 and 153(a) are hereby

6  admitted.

7  **(General Counsel's Exhibit 152, 152(a), 153 and 153(a)**

8  **received into evidence.)**

9  **(General Counsel's Exhibit 154, 155, and 156 marked for**

10  **identification.)**

11      MS. COTILLA:  In addition, Your Honor, we would also like

12  to offer General Counsel's Exhibit 154, 155 and 156. These

13  are personnel records for Alexandra Guillen, which we have

14  now received from the subpoena.  At this point we would like

15  to introduce them.

16      JUDGE BUSCHMANN:  That's with respect to only one

17  individual?

18      MS. COTILLA:  Your Honor, it does list the names of other

19  employees but we are, it's only for the limited purpose of

20  Alexandra Guillen who is alleged to have been an agent --

21      JUDGE BUSCHMANN:  I see.

22      MS. COTILLA:  And these are documents that were provided

23  by Respondent that actually say --

24      JUDGE BUSCHMANN:  Yes.  Now, could you repeat those

25  numbers?  General Counsel's Exhibit 154 --

1        MS. COTILLA:  155 and 156.

2        JUDGE BUSCHMANN:  -- 155 and 156.  Any objection,

3    Mr. Greenbaum?

4        MR. GREENBAUM:  I haven't seen them, Your Honor.  I don't

5    believe so.  NO objection.

6        JUDGE BUSCHMANN:  154, 155 and 2156 are hereby admitted

7    as General Counsel's exhibits.

8    **(General Counsel's Exhibit 154, 155 and 156 received into**

9    **evidence.)**

10       JUDGE BUSCHMANN:  What's happening now, Mr. McCarthy?

11       MR. McCARTHY:  Has Respondent concluded its case?

12       MR. GREENBAUM:  Yes.

13       MR. McCARTHY:  Your Honor, we have one rebuttal witness.

14       **JUDGE BUSCHMANN:  Okay, off the record.**

15   **(Off the record.)**

16       **JUDGE BUSCHMANN:  Let's go back on the record.**

17       MR. McCARTHY:  The General Counsel calls Sang Nguyen and

18   we have a Vietnamese interpreter.

19       THE INTERPRETER:  Good afternoon, Your Honor.

20       JUDGE BUSCHMANN:  I have to swear in him.  Would you

21   please raise your right hand.

22   (Whereupon,

23                         **SANG NGUYEN**

24   was called as a witness by and on behalf of the General

25   Counsel, and having been first duly sworn, was examined and

1   testified as follows:)

2                    **DIRECT EXAMINATION**

3   Q.   BY MR. McCARTHY:  Good afternoon.

4   A.   Yes.

5   Q.   Would you state your name and address, please, and spell

6   your last name?

7   A.   My first name is Sang, S-a-n-g, my last name is Nguyen,

8   N-g-u-y-e-n, and my address is 1700 Howard Street Northwest

9   Apartment 506, Washington, D.C. 20009.

10      MR. McCARTHY:  Your Honor, has the translator been sworn

11  in?

12      JUDGE BUSCHMANN:  Yes.  You are correct.

13  (Whereupon,

14                     **MARTA ARAGON**

15  was first duly sworn to interpret to the best of her

16  knowledge and ability.)

17      JUDGE BUSCHMANN:  Okay.  Thank you very much.

18  Q.   BY MR. McCARTHY:  Do you speak English?

19  A.   Yes.  Some and I also can listen some.

20  Q.   What is your native language?

21  A.   I speak Vietnamese.

22  Q.   Are you currently working?

23  A.   Yes.  I'm working right now.

24  Q.   Where are you working?

25  A.   Four Point Sheraton Hotel.

1   Q.   What job do you perform at the Four Point Sheraton Hotel?

2   A.   I'm a houseman.

3   Q.   Have you ever worked for State Plaza Hotel?

4   A.   Yes.

5   Q.   For how long?

6   A.   For one-and-a-half years.

7        MR. McCARTHY:  May I approach the witness, Your Honor?

8        JUDGE BUSCHMANN:  Yes.

9   Q.   BY MR. McCARTHY:  I show you what is in evidence as

10  General Counsel's Exhibit 3.  Do you recognize that document?

11  A.   Yes.

12  Q.   Did you sign that document?

13  A.   Yes.

14  Q.   Who asked you to sign it?

15  A.   Alexandra and Reina.

16  Q.   Did Alex or Reina speak to you when they asked you to

17  sign it?

18  A.   They say that this paper said that if I don't join the

19  union then the boss would pay me higher salary.

20  Q.   And you made a sign with your fingers, Sang, look at me.

21  You made sign with your fingers when you said that.  Did they

22  make that sign when they told you that?

23  A.   Yes.

24       JUDGE BUSCHMANN:  I think the record should indicate that

25  this gesture that you made, Mr. McCarthy, and of which you

1  inquired is rubbing your thumb and your index fingers

2  together as if to indicate money; is that correct?

3      MR. McCARTHY:  Yes, Your Honor.

4  Q.  BY MR. McCARTHY:  Sang, did either Alex or Reina rub

5  their thumbs together as if to indicate money when they asked

6  you to sign the petition?

7      MR. GREENBAUM:  Objection, leading.

8      JUDGE BUSCHMANN:  Objection, overruled.  I think the

9  witness already answered the question.

10     MR. GREENBAUM:  Asked and answered, objection.

11     JUDGE BUSCHMANN:  Objection overruled.

12     THE WITNESS:  Yes.

13 Q.  BY MR. McCARTHY:  Were Alex and Reina speaking in English

14 or Vietnamese?

15 A.  They spoke English.  They talk and then gestured at the

16 same time.

17     MR. McCARTHY:  May I approach, Your Honor?

18     JUDGE BUSCHMANN:  Yes.

19 Q.  BY MR. McCARTHY:  I'm showing you Government Exhibit 4,

20 page 2, did you sign that document?

21 A.  Yes.

22 Q.  Did anyone ask you to sign that document?

23 A.  Well, they told me to sign it and I saw that other people

24 sign it and they said to me that if I sign it then I would

25 get paid higher salary.

1   Q.    Who told you that?

2   A.    Reina and Alex.

3   Q.    Where were you in the hotel when they told you that?

4   A.    I was at the corner on the first floor.

5         MR. McCARTHY:  May I approach, Your Honor?

6         JUDGE BUSCHMANN:  Yes.

7   Q.    BY MR. McCARTHY:  I direct your attention to General

8   Counsel's Exhibit 5, page 2.  Did you sign that document?

9   A.    Yes.

10  Q.    Who asked you to sign that document?

11  A.    Alexandra and Reina.

12  Q.    Are you sure it was both Alexandra and Reina or could it

13  have been one of them?

14        MR. GREENBAUM:  Objection, leading.

15        JUDGE BUSCHMANN:  I think you should rephrase the

16  question.  Was it one or the other or both?

17  Q.    BY MR. McCARTHY:  Was it one or the other or both?  Let

18  me strike that.

19        Was it Reina or Alex or both?

20  A.    Reina.

21  Q.    Where was this paper in the hotel?

22  A.    I think it was in the lobby on the fifth or the seventh

23  floor inside the room.

24  Q.    Did you see other employees coming in the room to sign

25  the paper?

1  A.  Yes.

2  Q.  Where in the room was the paper?

3  A.  On the desk in the living room.

4  Q.  Did Reina ask you to sign the paper?

5  A.  Yes.  She said to come in and sign, you know, she spoke

6  English and at the same time gesturing for me to do so and I

7  saw that other people had signed so I signed too.

8  Q.  What did she say to you when she asked you to sign?

9  A.  Yes.  In general I kind of understand in general but she

10  was saying that, you know, you sign this then, you know, you

11  don't join the union so your salary would be raised.

12  Q.  Who else, if anyone, did you see come in the room and

13  sign the petition?

14  A.  Yeah.

15  Q.  Well, let me withdraw the question.  Did you see anyone

16  else come into the guest room where the petition was on the

17  desk?

18  A.  Yes.  I didn't look closely but I didn't quite remember

19  really but I think Esmeralda and Mary.

20  Q.  Esmeralda and Claudia?

21  A.  Yes.  I kind of remember what they look like, you know.

22  Q.  Now, did you talk about the raises with other employees?

23  A.  Yes.

24  Q.  Could you name for me all the employees that you talked

25  about the raised to?

1    A.    Well, you know, there's The Nguyen, Loan Phan, there's

2    Thu Nguyen, and there's Francis and Francis asked me, are you

3    going to sign?  And I said, "Yes."  And he said that's good

4    more money.

5        MR. McCARTHY:  No further questions, Your Honor.

6                    **CROSS-EXAMINATION**

7    Q.    BY MR. GREENBAUM:  Good afternoon, Sang.

8        MR. GREENBAUM:  Your Honor, I would like to test the

9    witness' English ability.  Before we start, was there a

10   statement?

11       MR. McCARTHY:  There is no statement, Your Honor.

12       MR. GREENBAUM:  Your Honor, I'd like to test the

13   witness's English ability because he's saying these

14   conversations were in English.  So I would like to ask some

15   questions in English without the interpreter.

16       JUDGE BUSCHMANN:  All right.

17   Q.    BY MR. GREENBAUM:  Mr. Sang, who is the general manager

18   of the hotel?

19   A.    Huh?

20   Q.    Who is the general manager of the State Plaza Hotel?

21   A.    Corrado, Mr. Corrado.

22   Q.    Who was your supervisor at the hotel?

23   A.    My supervisor, Ms. Gladis, Ms. Fanny, Ms. Lidia.

24   Q.    Were you terminated from the hotel?

25   A.    (No response.)

1    Q.   Were you terminated from the hotel?

2         MR. McCARTHY:  Your Honor, I think he has indicated that

3    he's testing his limited English and it appears that he has

4    had difficulty with the word terminated and they should

5    return to his native language at this point.

6         MR. GREENBAUM:  Could I ask it a different way, Your

7    Honor?

8         JUDGE BUSCHMANN:  Yes.  Go ahead.

9    Q.   BY MR. GREENBAUM:  Were you fired from the hotel?

10   A.   (No response.)

11   Q.   How did your employment end at the hotel?

12   A.   (No response.)

13        JUDGE BUSCHMANN:  I think that the witness does not

14   understand you.

15        MR. GREENBAUM:  Okay.  I'll move on.

16   Q.   BY MR. GREENBAUM:  You are currently working at the Four

17   Points?

18   A.   Yes.

19   Q.   What are you earning there?

20   A.   I work --

21        MR. McCARTHY:  Your Honor, I object.

22        THE WITNESS:  (Unintelligible.)

23   Q.   BY MR. GREENBAUM:  What are you earning?

24        JUDGE BUSCHMANN:  Hold on, just a minute.

25   Q.   BY MR. GREENBAUM:  What are you earning at that hotel?

```
 1   A.   (No response.)

 2   Q.   Did you get a pay raise to work at that hotel?

 3   A.   (No response.)

 4        JUDGE BUSCHMANN:  Okay.  Let's work through the

 5   interpreter again now.

 6        MR. GREENBAUM:  Well, I think that question is important,

 7   Your Honor.

 8   Q.   BY MR. GREENBAUM:  Did you get a pay raise to work at

 9   that hotel?

10        JUDGE BUSCHMANN:  Well, have it translated because the

11   witness is just looking at you.  He is not answering you.

12        MR. GREENBAUM:  Well, I think the English translation is

13   important for that one, Your Honor.

14        JUDGE BUSCHMANN:  Yes.

15        MR. McCARTHY:  Your Honor, I asked questions through the

16   translator and they were translated Vietnamese.  He's now

17   asking questions on cross in English.

18        MR. GREENBAUM: Because, Your Honor --

19        JUDGE BUSCHMANN:  Okay.  I'm directing you,

20   Mr. Greenbaum, to go through the interpreter.

21        MR. GREENBAUM:  Thank you.  Okay.

22   Q.   BY MR. GREENBAUM:  Now we are with the interpreter.

23   Mr. Sang, how did your employment end at the State Plaza

24   Hotel?

25   A.   Because I was fired.
```

1  Q.   You were fired for fighting with Marleni Jiron?

2  A.   No.  I don't think so.

3  Q.   After you were fired from the hotel, did you go to the

4  union?

5  A.   I did to complain about it.

6  Q.   Did they help you find another job?

7  A.   Yes.

8  Q.   When you went to go complain to the union did you review

9  what's been marked and introduced in evidence as General

10 Counsel's Exhibit 3, 4, and 5?

11 A.   Yes.

12 Q.   Who did you speak with there?

13 A.   I talked with a lawyer.

14 Q.   Did they tell you what to say here today?

15 A.   No.

16 Q.   Did they tell you to say that Alex and Reina told you to

17 sign that petition?

18     MR. McCARTHY:  I'm going to object, it's been asked and

19 answered, Your Honor.

20     JUDGE BUSCHMANN:  Objection overruled, it's more

21 specific.

22     THE WITNESS:  No because I saw it.

23 Q.   BY MR. GREENBAUM:  When you were at the union office, did

24 they already have that letter in front of them?

25     MR. McCARTHY:  Your Honor, I don't know which letter they

```
 1  --
 2      MR. GREENBAUM:  Exhibits 3, 4, and 5.
 3      MR. McCARTHY:  Could the interpreter show the witness the
 4  exhibits that he's referring to, Your Honor?
 5      THE INTERPRETER:  The interpreter is going to repeat the
 6  question.
 7      THE WITNESS:  Yes.  They did.
 8  Q.  BY MR. GREENBAUM:  They had it there?  And you had a
 9  discussion with them about those letters, correct?
10  A.  Yes.
11  Q.  About how long after you were terminated from the State
12  Plaza did you have that meeting with the union?
13  A.  I'm not sure.  The same day or maybe the day after.
14  Q.  So you went to go complain --
15  A.  Oh, the same day.
16  Q.  The same day.  So you went to go complain about your
17  termination and the union started asking you about what's set
18  forth in General Counsel's Exhibit 3, 4, and 5, correct?
19      MR. McCARTHY:  Your Honor, asked and answered.
20      JUDGE BUSCHMANN:  Objection, overruled.
21      THE WITNESS:  Yes.
22  Q.  BY MR. GREENBAUM:  And how long after that meeting -- Did
23  they also discuss your termination at that meeting?
24      THE INTERPRETER:  The interpreter needs --  would you
25  please -- You said, how long did they discuss --
```

1    MR. GREENBAUM:  I'll move on.

2  Q.  BY MR. GREENBAUM:  How long after that meeting did you

3  get a job?

4  A.  About more than a month later.  Yes.  About more than a

5  month later I got a new job.

6  Q.  And the union got you that job?

7    THE WITNESS:  Huh?

8    THE INTERPRETER:  The interpreter is going to repeat the

9  question.

10    THE WITNESS:  Yes.

11  Q.  BY MR. GREENBAUM:  And you are working at the Four Point

12  Sheraton, which is a union hotel, correct?

13  A.  Yes.

14  Q.  And the union asked you to come here today, correct?

15  A.  No.  I came here to complain.

16  Q.  You came here today to complain?

17  A.  Because I was fired.

18  Q.  Is that why you are here today?

19  A.  Yes.

20  Q.  Did you -- Are you working today?

21  A.  Yes.

22  Q.  Did you receive a subpoena to come here today?

23  A.  Yes.

24  Q.  Did you practice your testimony prior to your coming here

25  today?

1  A.    No.

2  Q.    So when did you review these letters, 3, 4, and 5 other

3  than when you first went to the union the day after your

4  termination?

5  A.    Would you repeat the question, please?

6  Q.    After you went to the union the day after your

7  termination, when did you next discuss these letters,

8  Exhibits 3, 4, and 5?

9  A.    About three or four weeks -- About -- Well, about last

10  week, some time last week.

11  Q.    Where did you go last week?

12  A.    Well, last week -- Well see because, you know, I was

13  fired it was unfair so I complained and so I went to the, you

14  know, union.

15  Q.    When you were at the State Plaza Hotel you did not want

16  the union, did you?

17  A.    Well, you know they told me that, you know, if I joined I

18  could have a higher raise, my salary would be higher then of

19  course, you know, everybody wants to have higher salary.

20  Q.    So the union made a promise to you?

21  A.    No.

22  Q.    My question was, when you were at the State Plaza you

23  were not in favor of the union, correct?

24  A.    Well, you know, because, yeah, because you know, they

25  told me that you know, if I sign these papers then I would

1  have a raise, you know, so I mean and I saw that everybody

2  signing so I wanted to sign too because I hope to get higher

3  raise too.

4  Q.   I'm talking about before those letters.

5  A.   Before I sign these letters?

6  Q.   Yes.  Before you signed those letters you were not in

7  favor of the union, correct?

8  A.   No.

9  Q.   Now, did the union file an unfair labor practice on your

10 behalf?

11 A.   I didn't think about whether I would join or not join.  I

12 didn't think anything about it.

13 Q.   So you were not in favor of the union before you signed

14 those letters, correct?

15 A.   I did want to join the union very much so.

16 Q.   When you met with the union last week who was there?

17      MR. McCARTHY:  Your Honor, I'm going to object to the

18 question that he met with the union last week.  There has

19 been no fact in evidence that he met the union last week.

20      JUDGE BUSCHMANN:  I'll sustain the objection.

21 Q.   BY MR. GREENBAUM:  You indicated that you met with

22 someone last week to go over your testimony, correct?

23 A.   I don't understand your question.  Can you please repeat

24 the question?

25 Q.   Yes.  Who did you meet with last week to review your

1  testimony for today?

2  A.    Well, I went there to meet the lawyer and he showed me to

3  look at these papers again.

4  Q.    Was there a translator there?

5  A.    Yes.  Yes.

6  Q.    Did you meet with Mr. McCarthy?

7  A.    Yes.

8  Q.    And did you go over questions?

9  A.    Yes.  He showed me this paper and he asked me is this

10  your signature.  And he keep showing different pages and then

11  he asked me, you know, is this your signature and I said,

12  yes.  And then, you know, and he looked at more and he asked,

13  so this is you and I said, yes.  And the translator was there

14  and looked at it with me.

15  Q.    Okay.  Did you go over the GC Number 5?

16  A.    Yeah.  I looked at it.  Yeah.  He would show it to me a

17  couple time and he, you know, so I saw it.

18  Q.    And it's your testimony that Alex Guillen gave that to

19  you to sign?

20      MR. McCARTHY:  Objection, Your Honor, it's a

21  mischaracterization of his testimony.  He's deliberately

22  trying to confuse the witness.

23      MR. GREENBAUM:  No, Your Honor.

24  Q.    BY MR. GREENBAUM:  Who gave that to you to sign?

25      THE INTERPRETER:  The interpreter was explaining this is

1   July 1st.

2   Q.   BY MR. GREENBAUM:   The question is who gave that to you

3   to sign, if anyone?

4   A.   You mean -- Okay.   I didn't understand.   You mean gave it

5   to me at the hotel or here?

6   Q.   At the hotel.

7   A.   Reina.

8   Q.   Anyone else?

9   A.   Only Reina.   I remember Reina is the name person.

10  Q.   Is a mean person?

11       THE INTERPRETER:   Name, name, the principal person.

12       MR. GREENBAUM:   Name person.

13       Nothing further, Your Honor.

14       JUDGE BUSCHMANN:   Okay.

15       MR. McCARTHY:   Mr. Sang in -- May I approach, Your Honor?

16       JUDGE BUSCHMANN:   Yes.

17                    **REDIRECT EXAMINATION**

18  Q.   BY MR. McCARTHY:   After you were fired was the first time

19  that you saw GC-5 when you were present in my office last

20  week?

21  A.   Well, no, I saw this one time before at the hotel where

22  we signed it.

23  Q.   That was the only time that -- Was that the only time you

24  saw that at the hotel?

25  A.   These papers?

1   Q.   GC-5.

2   A.   Can you repeat?

3   Q.   Sure.  I'll withdraw the question and ask a new question.

4        After you saw GC-5 at the hotel was the next time that

5   you saw GC-5 in my office last week?

6   A.   Yes.  That's correct.

7        MR. McCARTHY:  No further questions, Your Honor.

8        JUDGE BUSCHMANN:  Okay.  You may step down and you are

9   excused.  Thank you.

10       THE WITNESS:  Thank you, sir.

11       JUDGE BUSCHMANN:  Okay.

12       MR. McCARTHY:  Your Honor, we have one more rebuttal

13  witness we intend to ask one question.

14       JUDGE BUSCHMANN:  Okay.  Go ahead.  You have testified

15  here before, right?

16       THE WITNESS:  I have, Your Honor.

17       JUDGE BUSCHMANN:  So you are still under oath.

18  (Whereupon,

19                        **JENNIFER SHYKULA**

20  was recalled as a witness by and on behalf of the General

21  Counsel and, having been previously duly sworn, was examined

22  and testified on her oath, as follows:)

23                    **DIRECT EXAMINATION**

24  Q.   BY MR. McCARTHY:  Good afternoon.

25  A.   Good afternoon.

1    Q.    Am I pronouncing your last name correctly?  How do you

2    pronounce your last name?

3    A.    Shykula.

4    Q.    Shykula, I'm sorry.  Ms. Shykula, I would like to direct

5    your attention to General Counsel's Exhibit 5.  Did the union

6    ever receive a copy of General Counsel's Exhibit 5?

7    A.    No.

8    Q.    Did anyone from the hotel ever bring the union a copy of

9    GC Exhibit 5?

10   A.    No.

11        MR. McCARTHY:  No further questions, Your Honor.

12        JUDGE BUSCHMANN:  Did you want to examine this witness?

13        MR. GREENBAUM:  No, Your Honor.

14        JUDGE BUSCHMANN:  Okay.  Thank you very much.

15        MR. McCARTHY:  General Counsel would rest, Your Honor.

16        JUDGE BUSCHMANN:  Anything else?

17        MR. McCARTHY:  No, Your Honor.

18        JUDGE BUSCHMANN:  So what do we do now, set the case for

19   briefing?

20        MR. McCARTHY:  I believe so, Your Honor.

21        MR. GREENBAUM:  Your Honor, I believe we do have a

22   briefing schedule with the court.  So, I don't know if we

23   want to --

24        JUDGE BUSCHMANN:  That's why I asked Mr. McCarthy what

25   the procedure consists of at this time, I assume what it is

1    that there's an injunction proceeding scheduled in the

2    District Court but that is parallel to this action, and I

3    assume that I will proceed in the ordinary course of business

4    in my case here, the administrative proceedings.  And unless

5    I'm informed of anything that has changed, I would imagine, I

6    should say, I will treat this case in the normal course of

7    business and render a decision after I have received briefs

8    in this case.

9        It's possible that the District Court will grant an

10   injunction.  My understanding is when there is an injunction

11   issued it is a temporary injunction and it will then be

12   parallel to this case.  Isn't that right, Mr. McCarthy?

13       MR. McCARTHY:  Yes, Your Honor.  It's my understanding

14   that under Section 10(j) of the Act the injunction is

15   effective during the period of time that the Board issues the

16   final decision.  Once the Board issues a final decision I

17   believe Section 10(e) of the Act then applies.

18       JUDGE BUSCHMANN:  Okay.  So, let's go off the record.  Is

19   it your intention, Mr. McCarthy, to file a brief?

20       MR. McCARTHY:  Yes it is, Your Honor.

21       JUDGE BUSCHMANN:  And what about you, Ms. Virk?

22       MS. VIRK:  Yes, sir.

23       JUDGE BUSCHMANN:  And you, Mr. Greenbaum?

24       MR. GREENBAUM:  Yes, Your Honor.

25       JUDGE BUSCHMANN:  Does anyone have a calendar?

1        Off the record.

2    (Off the record.)

3        JUDGE BUSCHMANN:  Let's go back on the record.

4        We have set the time within which to file briefs in this

5    case to April 25th of this year.  The parties I'm sure are

6    familiar with the regulations and the applicable rule in

7    filing these briefs and submitting them to the Chief

8    Administrative Law Judge in this case.  And I understand that

9    Mr. McCarthy on behalf of the Board will file a brief, and

10   Ms. Virk on behalf of the union and Mr. Greenbaum on behalf

11   of the Respondent.

12       Is there anything else, Mr. McCarthy at this time?

13       MR. McCARTHY:  No, Your Honor, at this time I believe we

14   have taken care of the housekeeping arrangements which we get

15   in regard to all the exhibits including the original

16   recording, which is Exhibit 115.

17       JUDGE BUSCHMANN:  Yes.

18       MR. McCARTHY:  And at this time we would, it's my

19   understanding that's in evidence subject to Mr. Greenbaum's

20   review and he's had the opportunity to review that so that I

21   would move that the Court receive it at this time.

22       JUDGE BUSCHMANN:  Yes.  115 is already in the record, if

23   I recall, 115 is in the record and 107, was it, and the

24   translation as well.

25       Is there anything else from you, Ms. Virk?

 1     MS. VIRK:  No, sir.

 2     JUDGE BUSCHMANN:  And from you, Mr. Greenbaum?

 3     MR. GREENBAUM:  No.

 4     JUDGE BUSCHMANN:  With that the record is hereby closed.

 5     **(Whereupon, at 3:41 p.m., the hearing in the above-entitled**

 6     **matter was adjourned.)**

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

## CERTIFICATION

This is to certify that the attached proceedings before the National Labor Relations Board (NLRB), Region 5, in the matter of **State Plaza Hotel**, Case No. 5-CA-32594, held at Washington, D.C., on Friday, March 17, 2006, were held according to the record, and that this is the original, complete, and true and accurate transcript that has been compared to the reporting or recording, accomplished at the hearing, that the exhibit files have been checked for completeness and no exhibits received in evidence or in the rejected exhibit files are missing.

_____
James Powers
Official Reporter

_____
Letha J. Wheeler
Transcriber

Free State Reporting, Inc.
1324 Cape St. Claire Road
Annapolis, MD 21409
(410) 974-0947