UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WAYNE R. GOLD, Regional Director of
Region Five of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD,

     Petitioner

     v.

STATE PLAZA, INC., A WHOLLY-
OWNED SUBSIDIARY OF RB
ASSOCIATES, INC., D/B/A/ STATE
PLAZA HOTEL,

     Respondent.

Civil Action No. 06–329 (CKK)

## MEMORANDUM OPINION
(June 5, 2006)

On February 24, 2006, Petitioner Wayne R. Gold, Regional Director of Region Five of

the National Labor Relations Board (hereinafter "NLRB"), for and on behalf of the NLRB, filed

a [1] Petition for Injunction under Section 10(j) of the National Labor Relations Act,[1] as

Amended.  Therein, Petitioner alleged that Respondent State Plaza, Inc., a wholly-owned

subsidiary of RB Associates, Inc., d/b/a State Plaza Hotel (hereinafter "State Plaza"), has and

continues to engage in acts in violation of Sections 8(a)(1), 8(a)(3), and 8(a)(5) of the Act.

Petitioner requested that the instant Court issue injunctive relief pending a final decision by the

administrative law judge in Case 5-CA-32594 with respect to these allegations.  Also on

February 24, 2006, Petitioner requested permission to rely on the record to be developed during

the proceedings before the Administrative Law Judge (rather than using the traditional approach

---

[1] Hereinafter "NLRA" or "the Act."

of supplying affidavits) as the factual basis for a memorandum to support its Petition. After

holding a conference call with the Parties, the instant Court granted Petitioner's request to rely on

the administrative record on the narrow grounds that the administrative hearing was scheduled to

begin so near in time to the filing of Petitioner's 10(j) Motion that proceeding with a full hearing

and/or by submitting independent affidavits would have run contrary to judicial economy in this

particular case. Additionally, on March 6, 2006, the instant Court granted the [6] Unopposed

Motion of Hotel and Restaurant Employees, Local 25, Unite Here International Union[2] for Leave

to Participate as Amicus Curiae. Proceedings were held before Administrative Law Judge Karl

H. Buschmann between March 13, 2006, and March 17, 2006.

On April 4, 2006, Petitioner filed [12] Memorandum of Points and Authorities in Support

of Petition for Preliminary Injunction Under Section 10(j) of the National Labor Relations Act, as

Amended, including citations to the administrative record. Local 25 filed a Notice on the same

day, joining in Petitioner's Memorandum. On April 24, 2006, State Plaza filed its [14]

Opposition. On April 28, 2006, both Petitioner and Local 25 filed Reply Memoranda. *See dkt.*

*entries* [16] and [17], respectively. The complete transcript of the proceedings before Judge

Buschmann was filed with the Court on May 31, 2006. Because Petitioner has met the required

traditional four-pronged standard for preliminary injunctive relief that this Court finds applies

even to petitions brought under Section 10(j) of the NLRA, this Court shall GRANT Petitioner's

[1] Petition for Injunction and order relief as set forth in an accompanying Order.

## I: BACKGROUND

Petitioner alleges that Respondent has engaged in acts and conduct in violation of Section

---

[2] Hereinafter "Local 25" or "the union."

8(a)(1), 8(a)(3), and 8(a)(5) of the NLRA. Pet. at 2. The Petitioner requests that the instant

Court grant temporary injunctive relief pending final disposition of matters before the National

Labor Relations Board in Case 5-CA-32594. *Id.*

In Case 5-CA-32594, Local 25's third (and most recent) amended unfair labor charge

against Respondent alleges that Respondent engaged in, and is engaging in, unfair labor practices

within the meaning of Section 8(a)(1), 8(a)(3), and 8(a)(5) of the NLRA, interfering, coercing,

and restraining employees in the exercise of their rights as guaranteed in Section 7 of the Act.

*See* Pet. at Ex. D. Specifically, this third amended charge, filed on October 31, 2005,[3] alleges

that State Plaza violated Sections 8(a)(1), 8(a)(3), and 8(a)(5) by the following acts or conduct:

dealing directly with employees regarding wages; undermining the union by sponsoring and by

soliciting and inducing employees to sign petitions expressing dissatisfaction with the union;

inducing employees to sign such petitions by promising pay wage increases in the event that a

majority of employees signed; withdrawing recognition from the union since on or about July 5,

2005, without evidence that an uncoerced majority of the employees no longer supported the

union; granting employees in the bargaining unit wage increases since on or about July 8, 2005,

in accordance with promises made when the decertification petitions were circulated; and

engaging in surface bargaining and/or other bad faith conduct designed to delay, hamper and

frustrate the union in its efforts to engage in meaningful bargaining over the terms and conditions

of employment for the employees represented by the union. *Id.* This third amended charge

---

[3] The Court notes that the initial, first amended, and second amended charges were filed
by Local 25 against State Plaza under the same case number (Case 5-CA-32594) on July 25,
2005; August 11, 2005; and October 13, 2005; respectively. *See* Pet. at Exs. A, B, and C. The
third amended charge appears to be the most inclusive.

likewise states that Respondent impeded employees in the exercise of their Section 7 rights by promulgating an overly broad no-distribution/solicitation rule; created the impression of surveillance of union activity; interrogated employees about their union involvement; threatened employees with termination if they continued to support the union; told employees that Respondent was going to rid itself of the union; told employees that they would receive a raise if they signed a petition seeking the removal of the union; and told employees that Respondent did not want anything to do with them because they supported the union. *Id.*

After referral of the initial, first, second, and third unfair labor charges to the Regional Director of Region Five of the Board, a Complaint and Notice of hearing under Section 10(b) of the Act were issued. Pet. ¶ 3(e). The operative amended Complaint and Notice of Hearing under Section 10(b) of the Act in Case 5-CA-32594 was issued on December 27, 2005. *Id.* ¶ 5(a). Respondent filed an Amended Answer on January 9, 2006. *Id.* ¶ 5(b). Additional changes to the operative Amended Complaint were proposed on March 1, 2006, and answered by Respondent on March 9, 2006.[4] As stated above, Petitioner's Petition for Injunction pursuant to Section 10(j) of the Act was then filed before this Court in the interim on February 24, 2006, and briefing citing to the administrative record was filed after the hearing before Judge Buschmann that was held between March 13, 2006, and March 17, 2006.

The bases for injunctive relief included in the Petition before this Court do not differ from the claims before the Board except to the extent that the relief requested from the Board is more extensive than that requested of this Court. Specifically, Petitioner requests injunctive relief

---

[4] *See* Admin. R. Exs. GC-1R, GC-2. The proposed changes to the Amended Complaint were actually adopted at the hearing before Judge Buschmann. Pet'r's Mem. at 5.

from the instant Court, in an effort to restore the status quo ante while awaiting a decision from

the Board, ordering State Plaza to cease and desist from the following: withdrawing recognition

from Local 25 as the collective-bargaining representative of the unit employees; failing and

refusing to recognize and bargain with Local 25; dealing directly with unit employees regarding

terms and conditions of work; granting unit employees a unilateral wage raise to discourage

employees' union activities and without affording the union an opportunity to bargain;

instructing unit employees to solicit and sign a decertification petition; promising unit employees

increased benefits and improved conditions of employment if employees sign a decertification

petition; coercing employees in the exercise of their Section 7 rights; promulgating and

maintaining an overly broad no-distribution rule with respect to union material; creating the

impression among employees that their union activities were under surveillance; interrogating

employees about their union activities; restraining and coercing employees by soliciting

employees to sign a decertification petition; and in any like or related matter interfering with,

restraining or coercing employees in the exercise of their Section 7 rights. Petitioner also

requests an injunction affirmatively requiring Respondent to recognize and, upon request,

bargain in good faith with the union as the certified exclusive collective-bargaining

representative of the unit employees regarding their wages, hours, and other terms of

employment; rescinding the wage raise granted to unit employees on July 8, 2005, and any other

unilateral changes made since State Plaza withdrew recognition from the union on July 5, 2005,

if requested by the union; and provide posted notice in Spanish and English of and demonstrate

5

proof of compliance with the injunction in its entirety.[5] Pet. at 20–23.

## II: LEGAL STANDARD

Pursuant to Section 10(j) of the NLRA,

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j). While the Parties (and the Court) agree that the Court must determine whether temporary injunctive relief would be "just and proper" in this case, the Parties disagree regarding the legal standard by which the Court should determine whether to issue injunctive relief pursuant to Section 10(j) of the NLRA. Petitioner argues that the Court need only find "reasonable cause" that the alleged unfair labor practices occurred before proceeding to determine whether relief is "just and proper" in this case. Respondent, State Plaza, argues that a "reasonable cause" standard does not apply to injunctions pursuant to Section 10(j), and that the four-pronged standard for traditional injunctive relief employed in this circuit should be applied in the instant case.

Based on a plain reading of the statute, and relying on the reasoning set forth by various circuits and in the most recent case in this district to address the issue, the Court agrees with

---

[5] The Amended Complaint before the Board seeks "an order requiring Respondent to bargain in good faith with the Union, on request, for the period required by *Mar-Jac Poultry Co.*, 136 N.L.R.B. 785 (1962), as the recognized bargaining representative in the appropriate unit. The Acting General Counsel further seeks all other relief as may be just and proper to remedy the unfair practices alleged." Pet. at Ex. G (Am. Compl.) at 9.

6

Respondent that the traditional four-pronged test for injunctive relief applies to 10(j) petitions.

While there is a clear divide amongst the federal appellate courts[6] (and silence in our own)[7] with

respect to this issue, this Court is persuaded by the reasoning provided by Judge Frank

Easterbrook in *Kinney v. Pioneer Press*, 881 F.2d 485 (7th Cir. 1989), and applied by Judge Paul

---

[6] Federal appeals courts have split with respect to whether the reasonable cause standard applied to Section 10(*l*) should be applied to the consideration of injunctive relief pursuant to Section 10(j), or if the standard four-pronged inquiry should be made by the Court in lieu of an assessment of "reasonable cause." Specifically, the First, Seventh, and Ninth Circuits apply traditional equitable criteria to injunctions pursuant to Section 10(j). *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456–59 (9th Cir. 1994) (en banc); *Kinney v. Pioneer Press*, 881 F.2d 485 (7th Cir. 1989); and *Maram v. Universidad Interamericana de Puerto Rico, Inc.*, 722 F.2d 953, 957–58 (1st Cir. 1983). The Second, Third, Fourth, Fifth, Sixth, Tenth, and Eleventh Circuits have applied the "reasonable cause" test. *See Overstreet v. El Paso Elec. Co.*, 2006 WL 1049158 at *1 (5th Cir.); *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226 (6th Cir. 2003); *Sharp v. WEBCO Indus., Inc.*, 265 F.3d 1085, 1089–90 (10th Cir. 2001); *Hoffman ex. rel. NLRB v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364–65 (2d Cir. 2001); *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 371 (11th Cir. 1992); *Pascarell v. Vibra Screw Inc.*, 904 F.2d 874, 877 (3d Cir. 1990); and *NLRB v. Aerovox Corp. of Myrtle Beach, S.C.*, 389 F.2d 475, 477 (1967). Additionally, the Eighth Circuit engages in both a reasonable cause and traditional injunctive relief analysis when presented with petitions pursuant to Section 10(j). *See Sharp v. Parents in Cmty. Action, Inc.*, 172 F.3d 1034, 1038 (8th Cir. 1999).

[7] While Petitioner claims that the D.C. Circuit has spoken on this issue in applying a "reasonable cause" standard to 10(j) petitions, this Court appropriately receives statements provided in *dicta* with deaf ears. In *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. NLRB (Ex-Cell-O)*, 449 F.2d 1046 (D.C. Cir. 1971), the U.S. Court of Appeals for the District of Columbia held that in order to obtain temporary relief pursuant to Section 10(e), the Board "need only establish that there is reasonable cause to believe that the Act has been violated . . . ." *Id.* at 1051. While the appellate court noted that it also understood the same standard to apply to Section 10(j), Section 10(j) was not at issue in that case. *See D'Amico*, 867 F. Supp. at 1082. Furthermore, the appellate court noted ambiguity surrounding the standard to be applied to injunctions pursuant to Section 10(j). *Ex-Cell-O*, 449 F.2d at 1051 n.29 ("Whatever the appropriate standard is under § 10(j) . . . ."). Finally, much more recently in *Beverly Health and Rehab. Servs., Inc.*, 103 F.3d 151 (D.C. Cir. 1997), the appellate court cited only to *D'Amico*, which of course applies the traditional four-pronged injunctive standard, albeit for the general proposition that Section 10(j) "provides for the issuance of a temporary injunction in order to prevent the continuation of unfair labor practices from nullifying the effect of any relief ultimately ordered by the Board." *Beverly Health*, 103 F.3d at 153 n.1.

Friedman in *D'Amico v. U.S. Serv. Indus., Inc.*, 867 F. Supp. 1075 (D.D.C. 1994), differentiating

the application and context of injunctions pursuant to Section 10(*l*) of the Act from injunctions

pursuant to Section 10(j) of the Act.

      A straightforward reading of the text of Section 10(j) reveals that a "reasonable cause"

standard is nowhere to be found in the statute itself.  Considering the absence of this alternate

standard for injunctive relief in the text of Section 10(j), the instant Court notes that the "whole

panoply of discretionary issues with respect to granting preliminary relief . . . is the ordinary

statutory principle unless a congressional purpose to the contrary clearly appears." *Maram*, 722

F.2d at 958 (citing *Hecht Co. v. Bowles*, 321 U.S. 321 (1944)).  Furthermore, "[t]here seems, in

fact, a special reason for such overall weighing, section 10(j) being in derogation of the Norris-

LaGuardia Act's prohibition of injunctions in labor disputes." *Id.*

      However, some courts have applied the "reasonable cause" test in determining whether

injunctive relief pursuant to Section 10(j) is warranted by borrowing the "reasonable cause"

standard from Section 10(*l*).  Pursuant to Section 10(*l*),

> (*l*) Boycotts and strikes to force recognition of uncertified labor organizations; injunctions; notice; service of process:  Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has *reasonable cause* to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law[.]

29 U.S.C. § 160(*l*) (emphasis added). The Court initially notes that Sections 10(j) and 10(*l*) were adopted by Congress at the same time, and that the "reasonable cause" standard was explicitly employed in the language of the latter but not the former. It is a general principle of statutory construction that "[W]hen Congress includes particular language in one section of a statute but omits it in another section . . . , it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Amer. Fed'n of Labor & Cong. of Indus. Orgs. & DNC v. FEC,* 333 F.3d 168, 181 (D.C. Cir. 2003) (quoting *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452 (2002) (internal quotations omitted)). *See also Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding . . . that differing language in . . . two subsections has the same meaning in each."). However, while a number of courts have–without engaging in any analysis of the differences between the subsections–applied the "reasonable cause" standard from Section 10(*l*) to Section 10(j), the instant Court finds this unmeasured application unsatisfactory in light of the different levels of discretion given to the Board with respect to different kinds of alleged unfair labor practices invoked by each subsection.

Under the terms of Section 10(*l*), the Board *is required* to request injunctive relief *prior* to the issuance of a complaint with respect to specific allegations if it has "reasonable cause" that certain prioritized unfair labor practices have occurred. The Court notes that the activities prompting such action by the Board are in fact either alleged labor violations committed by a labor organization itself (rather than an employer) or boycotts. *See* 29 U.S.C. § 158(b), 158(e). However, pursuant to Section 10(j), the Board *has discretion* in its pursuit of injunctive relief related to other various alleged unfair labor practices, as the Board "shall have the power" to seek injunctive relief from a district court *after* a complaint has been filed, but is not required to do so.

9

It then follows that in order to trigger the Board's mandatory action under Section 10(*l*),

Congress needed to delineate a specific threshold to prompt the Board to seek such relief, which

it did via its requirement of "reasonable cause."  Since the Board's actions under Section 10(j)

are discretionary, no such trigger is required.  *See Kinney*, 881 F.2d at 489–90 ("'Reasonable

cause' is the trigger of the Board's duty under § 10(*l*).  Because § 10(*l*) is mandatory, Congress

had to establish the boundary of the Board's obligation. . . . Having given the Board unfettered

discretion not to sue under § 10(j), Congress did not need the threshold that 'reasonable cause'

represents under § 10(*l*); having told the Board not to file suit under § 10(j) until the

administrative complaint has been lodged, Congress did not need to require any further minimum

investigation.").  *See also D'Amico*, 867 F. Supp. at 1083–84.

Additionally, this level of discretion inherent in Section 10(j), but not in Section 10(*l*),

also may reflect Congress' heightened concern (and thus greater willingness to *require* federal

courts to hear requests for injunctive relief) with respect to strikes of a certain nature and

boycotts.  *See* 29 U.S.C. § 158(*l*) ("Whenever it is charged that any person has engaged in an

unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this

title, or section 158(e) of this title or section 158(b)(7) of this title, *the preliminary investigation

of such charge shall be made forthwith and given priority over all other cases* except cases of

like character in the office where it is filed or to which it is referred." (emphasis added)).

Because the Board's requests for injunctive relief with respect to other kinds of alleged unfair

labor practices are not mandatory but discretionary, the instant Court's appropriate determination

is whether such relief is "just and proper," which absent indication to the contrary should be

determined through a traditional equitable analysis.  *See Maram*, 722 F.2d at 958 ("[W]hen the

10

Board simply has discretion [whether to seek an injunction] under general section 10(j), we believe the whole panoply of discretionary issues with respect to granting preliminary relief must be addressed by the Court."); *Kinney*, 881 F.2d at 490–491 ("When courts apply traditional equitable principles to inquire whether an injunction is 'just and proper' under § 10(j), no further purpose is served by asking the district judge, as a preliminary matter, to determine whether the Director has established reasonable cause. . . . District court judges have plenty to do without our forcing them to jump through hoops for no good reason.").

Therefore, the Court shall apply the traditional, four-pronged approach to determine if injunctive relief pursuant to Section 10(j) is "just and proper" in this case. *D'Amico*, 867 F. Supp. at 1085. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (2001). In assessing whether to grant preliminary injunctive relief, a court typically must balance four factors: (1) whether the movant is substantially likely to succeed on the merits; (2) whether the movant would suffer irreparable injury if the injunction were not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the public interest would be furthered by the injunction. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

In applying this four-factored standard, district courts employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another. *See CityFed Fin.*, 58 F.3d at 747; *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–44 (D.C. Cir. 1977). A party seeking preliminary injunctive relief must demonstrate at

11

least some irreparable injury because "[t]he basis of injunctive relief in the federal courts has

always been irreparable harm." *CityFed Fin.*, 58 F.3d at 747 (quoting *Sampson v. Murray*, 415

U.S. 61, 88 (1974)).  However, "a court, when confronted with a case in which the other three

factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has

made a substantial case on the merits." *Holiday Tours*, 559 F.2d at 843.  Thus, a party must only

make a "substantial case" on the merits that has demonstrated strong grounds for relief with

respect to the other prongs.  "An order maintaining the status quo is appropriate when a serious

legal question is presented, the public interest is served, denial of the requested relief would

inflict irreparable injury on the movant and when little if any injury would befall the respondent."

*D'Amico*, 867 F. Supp. at 1085.

### III: DISCUSSION

*A.     Public Interest*

"The public interest in a case involving alleged unfair labor practices under the Act lies in

ensuring that the purposes of the statute are furthered and that the processes of the Board, and

any ultimate remedies it imposes are effective." *D'Amico*, 867 F. Supp. at 1085–86.  Deferring

to the legislative history and case law surrounding Section 10(j), it is clear that this section was

enacted to prevent the molehill created by unfair labor practices from turning into a mountain of

permanent injury to the workforce and/or complete but unlawfully-based rejection of union

representation while awaiting a decision from the Board.  "Section 10(j) was passed in

recognition of the possibility that the purposes of the Act could be defeated through the delay

between the filing of charges and the availability of a legally enforceable remedy." *Oil, Chem. &*

*Atomic Workers Int'l Union v. NLRB*, 547 F.2d 598, 600 n.1 (D.C. Cir. 1976).  "The legislative

history of section 10(j) reveals–what is anyway obvious–that the purpose of the statute was to

prevent substantial injury being done by unfair labor practices while Board proceedings were

making their stately progress to conclusion. S. Rep. No. 105, 80th Cong., 1st Sess. 8, 27

(1947)." *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 891 (7th Cir. 1990) (Posner, J.).  In

fact, the legislative history speaks for itself with respect to the congressional purpose behind

Section 10(j):

> Experience under the National Labor Relations Act has demonstrated that by
> reason of lengthy hearings and litigation enforcing its orders, the Board has not been
> unable [sic] in some instances to correct unfair labor practices until after substantial
> injury has been done.  Under the present act, the Board is empowered to seek interim
> relief only after it has filed in the appropriate circuit court of appeals its order and the
> record on which it is based.  Since the Board's orders are not self-enforcing, it has
> sometimes been possible for persons violating the act to accomplish their unlawful
> objective before being placed under any legal restraint and thereby to make it impossible
> or not feasible to restore or preserve the status quo pending litigation.

S. Rep. No. 105, 80th Cong., 1st Sess. 27 (1947) (quoted in *Oil, Chem. & Atomic Workers*, 547

F.2d at 600 n.1).

In this case, the 10(j) relief requested would serve the public interest in light of the

serious and substantiated unfair labor practices alleged against Respondent by preventing the

passage of time between the hearing before Administrative Law Judge Buschmann and the

issuance of a decision in that case from completely undermining employee willingness to

participate, as is their right, in union activities, particularly in light of the unilateral wage increase

granted to numerous employees outside of the context of a comprehensive benefits package. *See*

*infra* § III.D.2.  Furthermore, the Supreme Court has determined that in seeking injunctive relief

pursuant to Section 10(j), the Board is acting on *behalf* of the public.  *See Muniz v. Hoffman*, 422

U.S. 454, 467–68 (1975) ("Injunctions authorized by the Labor Management Relations Act were

limited to those sought by the Board, 'acting in the public interest and not in vindication of purely private rights.' S. Rep. No. 105, 80th Cong., 1st Sess., 8 (1947)."). In the instant case, Respondent is quick to note that the Board rarely brings such petitions. *See* Resp't's Opp'n at 2 ("To be sure, it is in the rarest of cases in which the NLRB seeks a temporary injunction under Section 10(j). For example, in Fiscal Year 2005 the NLRB sought injunctive relief in only 15 cases out of the 1,440 complaints issued by NLRB Regional Directors."). The statistics reveal that the Board exercises its Section 10(j) discretion sparingly. In the context of the Board's overall cautious approach, the Court reads the Board's request for injunctive relief pursuant to 10(j) as a good-faith indication by the Board that it entertains the alleged violations in this particular case with a heightened level of concern and believes that serious harm will transpire if interim relief is not granted.

   B.  *Irreparable Injury*

   In this Circuit, injury is irreparable only if it is "both certain and great." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). This requires that the alleged harm "be actual and not theoretical" and "'of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" *Id.* (quoting *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 307 (D.D.C.), *aff'd*, 548 F.2d 977 (D.C. Cir. 1976)).

   Respondent's history of unfair labor practices coupled with the nascent status of the union's representation of State Plaza employees suggests that State Plaza's employees will suffer irreparable injury absent injunctive relief. While Local 25 became the exclusive collective-

bargaining representative of the relevant bargaining unit[8] as of June 30, 2004, Pet. ¶ 6(h), State

Plaza's attempts to discourage union activity prior to this date (including threats that State Plaza

would sell its business if employees voted for the union) are documented in Case 5-CA-31346

and Administrative Law Judge David L. Evans' opinion and order finding that State Plaza had

committed related violations of Section 8(a)(1) and 8(a)(3). Pet. at 2; Pet'r's Mem. at 6; Admin.

R. Ex. GC–49 at 16.[9]  Additionally, Judge Evans found that State Plaza had discharged an

employee for engaging in protected activity and ordered reinstatement of that employee. Admin

R. Ex. GC–49 at 16.  While this case remains pending before the Board on exceptions, it

demonstrates at minimum Respondent's legacy of non-forthright compliance with basic tenets of

applicable labor law.  Absent protection in the form of injunctive relief, no mechanisms are

presently in place to preserve the NLRA-based rights of State Plaza's employees.

Furthermore, "[p]roof of [] actual harm to the organizing campaign is relevant to the

Court's assessment of the Petition." *D'Amico*, 867 F. Supp. at 1087.  While Respondent argues

that the union's own actions have prompted the "harm" of employee disengagement with the

union, there is sufficient evidence in the record to persuade the Court that employee trust in the

---

[8] "All full-time and regular part-time employees, including cooks, prep cooks,
dishwashers, pantry, utility, waiters, busers, hosts, bartenders, room servers, servers,
housekeepers, room attendants, lobby attendants, housemen, turn-down attendants, laundry
attendants, guest service agents, bellmen, bell captains, mini-bar attendants and restaurant
cashiers, employed by the Employer at the State Plaza Hotel in Washington, D.C [sic]; excluding
all reservation sales representatives, office clericals, engineers, painters, guards and supervisors
as defined by the Act." Pet. ¶ 6(g). The Court notes that Respondent's restaurant was closed
indefinitely for renovations such that food and beverage employees may no longer be included in
the bargaining unit. *See* Pet'r's Mem. at 7 n.7.

[9] The Court notes that Respondent's exceptions are still pending. Pet'r's Mem. at 7;
Resp't's Opp'n at 26.

bargaining process unraveled after State Plaza repeatedly refused to meet with union

representatives and effectively negotiate a contract.  The instant circuit has observed that

> [e]mployee interest in a union can wane quickly as working conditions remain
> apparently unaffected by the union or collective bargaining.  When the company is finally
> ordered to bargain with the union some years later, the union may find that it represents
> only a small fraction of the employees.

*Int'l Union of Elec. Workers v. NLRB (Tiidee Prods., Inc.)*, 426 F.2d 1243, 1249 (D.C. Cir.

1970), *cert. denied*, 400 U.S. 950 (1970).  It appears that the union tried to meet with State Plaza

to negotiate a contract numerous times after certification issued, making requests to bargain in

July, August, and December of 2004 and twice in January of 2005.  G.C. Ex. 54, 56(a), 57, 58,

59.  An initial bargaining meeting did not in fact occur until March 30, 2005, due to stalling

tactics by State Plaza.  *See* G.C. Exs. 62–71 (delineating State Plaza's last minute reschedulings

and cancellations).  The Court notes that the unlawfully circulated decertification petitions,

discussed below in Section III.D.1, increasingly curried favor with employees in the context of

union representation that had been paralyzed over the course of preceding months by

Respondent's failure to meet with Local 25.

    C.    *Harm to State Plaza*

Respondent does not allege in its Opposition that temporary injunctive relief will harm

*Respondent* in any material way, nor does the Court in its own assessment find that injunctive

relief would materially harm Respondent in this case.

    D.    *Substantial Likelihood of Success/Substantial Case on the Merits*

Numerous courts have been mindful to note that Section 10(j) proceedings before a

district court are "subordinate to the unfair labor practice proceedings before the Board." *Ahearn*

16

*v. Jackson Hosp. Corp.*, 351 F.3d 226, 237 (6th Cir. 2003) (quotation omitted). It is not the job of the district court to adjudicate the merits of unfair labor practice allegations–that is the rightful province of the administrative law judge. *See D'Amico*, 867 F. Supp. at 1088 ("In assessing the evidence in the record in a Section 10(j) case, therefore, the Court is not called on to resolve factual disputes because they will ultimately be resolved by the Administrative Law Judge who is charged with ruling on the underlying cases. Rather, the Court must determine whether the evidence presented, whether by affidavit or witness testimony, demonstrates a substantial likelihood of success on the merits or at least a substantial case on the merits in the underlying complaints pending before the Board."). *See also Arlook v. S. Lichtenberg & Co., Inc.*, 952 F.2d 367, 372–73 (11th Cir. 1992). Since Petitioner has made a strong showing with respect to the other prongs for injunctive relief, the Court will assess whether Petitioner has made a substantial case on the merits with respect to its substantive claims.

  *1.  Section 8(a)(1)*

  Pursuant to Section 8(a)(1) of the Act, "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). The Section 7 rights referenced in Section 8(a)(1) of the Act are defined as follows:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157.

While employees are free to reject union representation, forcing such rejection via unfair labor practices is strictly in violation of Section 8(a)(1) of the Act. Furthermore, the testimony *against interest* of a number of present and former employees of State Plaza demonstrates the substantial likelihood, or at very least a substantial case, that State Plaza interfered with, coerced, and/or restrained employees in the exercise of their Section 7 rights. Specifically, hotel management effectively sponsored a decertification petition by directing employees to circulate a decertification petition. Pet'r's Mem. at 9; Tr. 116–126 (Nunez). Testimonial evidence of numerous employees suggests that it is substantially likely that the employees directed by hotel management to circulate such petitions indicated to some employees by word or gesture that they would receive a pay raise to $12.50 per hour if they signed such petitions. Pet'r's Mem. at 10; Tr. 130–32 (Nunez); Tr. 215–17, 221–22 (Velasquez); Tr. 289–93 (Majano); Tr. 436–37 (Jiron); Tr. 469–70, 474–75 (Melgar); Tr. 856–61 (Nguyen). Testimonial evidence further suggests that employees were interrogated as to why they did not sign petitions by management or individuals acting on behalf of management. Pet'r's Mem. at 11; Tr. 133–34 (Nunez); and Tr. 478–79 (Melgar). In propagating an overly broad no-distribution rule, State Plaza management told employees that they could not distribute union flyers, that union propaganda was prohibited in the facility, and further created an impression of surveillance of union activity. Pet'r's Mem. at 12; Tr. 438–45 (Jiron); Tr. 232–34 (Velasquez); Tr. 296–98 (Majano); Admin. R. Ex. GC–109 (English translation of recorded 9.5 minute conversation between hotel management and employee Velasquez).

State Plaza argues that Alexandra Guillen and Reina Lozano, two employees who circulated the decertification petitions, were not in fact agents of State Plaza but housekeeping

18

employees independently frustrated with the union and attempting to garner support for its

ouster.  What is revealed by Local 25 in its uncontested amicus reply, however, is that both

employees received a substantial increase in their responsibilities and payment in late 2004 and

thus had incentives to act on behalf of the Hotel.  *See* Amicus Reply at 5–6; Tr. 562–567, 588

(Lozano); G.C. Ex. 146(a); Tr. 654–55, 659–60 (Guillen); G.C. Exs. 155–56.  Considering the

frequent meetings between these two individuals and hotel management, and testimony from

various employees that Ms. Guillen professed to be circulating the decertification petitions on

management's behalf, it is clear to the Court that Ms. Guillen and Ms. Lozano had apparent

authority to act on behalf of the hotel with respect to these petitions, which were circulated with

management's approval while they and their co-workers were on the clock.  *See* Tr. 319–20

(Segovia); Tr. 468 (Melgar); Tr. 597 (Guillen); Tr. 317–18 (Segovia); Tr. 479 (Melgar); Tr. 441-

44 (Jiron); Pet'r's Mem. at 23–24.  *See also Laneko Eng'g Co.*, 2004 NLRB LEXIS 82 at *48–51

(2004) ("When the employee acts with the apparent authority of the employer, the employer is

responsible for the conduct.  *D&F Indus., Inc.*, 339 N.L.R.B. No. 73 (2003).  Apparent authority

results from a manifestation by the principal to a third party that creates a reasonable belief that

the principal has authorized the alleged agent to perform the acts in question.  *Southern Bag*

*Corp.*, 315 N.L.R.B. 725 (1994)."); *Technodent Corp.*, 1989 NLRB LEXIS 311, *8–9.  State

Plaza's argument that hotel management told employees that the hotel could not unilaterally

grant a wage increase because such raises must emerge from the collective bargaining process is

not inconsistent with promising a wage increase if the union were ousted.

Furthermore, that the practices engaged in by Respondent and iterated above are unfair

labor practices is supported in the case law.  *See Microimage Display Div. of Xidex Corp. v.*

*NLRB*, 924 F.2d 245, 253–54 (D.C. Cir. 1991);[10] *Equipment Trucking Co.*, 336 N.L.R.B. 277,

282–83, 287 (2001) (finding a violation of 8(a)(1) and 8(a)(5) when agents of employer bypassed

the union and dealt directly with unit employees by offering them wage increases and changes to

employees' benefits if they signed decertification petition); *United Services Auto. Ass'n*, 340

N.L.R.B. 784, 785, 786 (2003) (holding that "an employer's interrogation of an employee

violates Section 8(a)(1) if, under the circumstances, the interrogation reasonably tended to

restrain or interfere with the employees' exercise of the rights guaranteed them under the Act[,]"

and noting that a no-solicitation rule may be overly broad, in that "the Board has found that a rule

prohibiting solicitation or distribution during 'working time' is presumptively valid and one

prohibiting solicitation or distribution during 'working hours' is presumptively invalid."); *Norton*

*Healthcare, Inc.*, 338 N.L.R.B. 320, 320-321 (2002) ("Under Board law, it is well established

that interrogations of employees are not per se unlawful, but must be evaluated under the

standard of 'whether under all the circumstances the interrogation reasonably tended to restrain,

coerce, or interfere with rights guaranteed by the Act.'" (internal citation omitted)); and *Fred'K*

*Wallace & Son, Inc.*, 331 N.L.R.B. 914 (2000) (holding that asking employee about how

conversation with union representative went created an impression of surveillance in violation of

---

[10] "'[A]n employer that has itself orchestrated the union ousting campaign cannot rely on the pendency of a decertification petition or the loss of majority status to justify its withdrawal of recognition, and refusal to bargain with, the incumbent representative.' *NLRB v. Maywood Plant of Grede Plastics*, 202 U.S. App. D.C. 1, 628 F.2d 1, 5 (D.C. Cir. 1980) (per curiam). The record supports the Board's conclusion that the employer's unfair labor practices, not a bona fide dissatisfaction with the union, caused the employees to begin circulating the decertification petition. The employer may not rely on the petition as justification for the withdrawal of union recognition. Without objective evidence to support its doubt about the union's continuing majority status, we conclude the employer violated sections 8(a)(5) and 8(a)(1) by withdrawing recognition of the union." *Id.*

Section 8(a)(1)).

Thus, in the context of lingering unremedied unfair labor practices found by Administrative Law Judge Evans in Case 5-CA-31346 and the nascent status of the collective bargaining relationship at issue, the Court has determined that an interim collective bargaining order is necessary in this case.  It has been noted that new union representation is particularly vulnerable to employer misconduct,[11] and a substantial case has been made by Petitioner regarding the existence of employer misconduct to warrant both injunctive relief against the continuation of such misconduct and intervention to ensure that the employees' legal bargaining representative–in this case Local 25–is able, upon request, to bargain on their behalf pending a decision by the Board.  Notably, neither State Plaza nor the union would be obligated to agree to any specific terms or to an agreement, but just to come to the table for discussions–without unwarranted delay–at the union's request.

2.      *Section 8(a)(3)*

Pursuant to Section 8(a)(3) of the Act, "It shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3).  In this case, the Court finds that the Board has demonstrated a substantial likelihood, or at the very least a substantial case, that Respondent unilaterally increased wages to $12.50 per hour in the housekeeping department as a reward for employees "rejecting" the union via the circulated decertification petitions discussed in Section III.D.1 of this Opinion.  On July

---

[11]  *See* Pet'r's Mot. at 33; *Arlook*, 952 F.2d at 373 ("The Union was only recently certified by the Board and the employees were bargaining for their first contract.  These two facts make bargaining units highly susceptible to management misconduct.").

5, 2005, State Plaza announced to assembled housekeeping employees that their next paycheck would reflect a raise to $12.50 an hour because "the problem with the Union was over." Pet'r's Mem. at 14; Tr. 252–55 (Velasquez); Tr. 295–96 (Majano); Tr. 446 (Jiron); and Tr. 577 (Lozano). This raise was implemented on July 8, 2005. *Id. See Equipment Trucking Co.,* 336 N.L.R.B. at 287 (2001) ("Respondent violated Section 8(a)(1) of the Act by: (a) Telling an employee that Respondent would grant employees wage increases and change employees' benefits if the employees decertified the Union; (b) Its agents . . . promising employees wage increases and changes in benefits if they decertified the Union. . . . Respondent violated Section 8(a)(1) and (3), and (5) of the Act by granting wage increases to its employees and changing the health insurance and overtime pay benefits of its employees."). *See also Flying Foods Group, Inc. d/b/a Flying Foods,* 345 N.L.R.B. No. 10 (2005) ("By implementing retroactive wage increases for employees in the involved unit to discourage employees from joining, supporting, and assisting a union and engaging in concerted activities, the Respondent committed unfair labor practices contrary to the provisions of Section 8(a)(1) and (3) of the Act."). This actual change in terms of employment in the face of "decertification" tainted by unlawful labor practices also violates Section 8(a)(5) because as of July 8, 2005, the union lawfully still represented bargaining unit employees at State Plaza. *See infra* § III.D.3.

In this instance, the Court has determined that, upon request, the unilateral wage increase implemented by Respondent on July 8, 2005, *may* be rescinded, as this unilateral increase was to the best of the Court's understanding not accompanied by any other important employment terms addressing job security, safety and health conditions, and the protection of a grievance-arbitration procedure. *See* Pet'r's Mem. at 34. *See also Bloedorn v. Francisco Foods, d/b/a Piggly Wiggly,*

22

276 F.3d 270, 299, 301 (7th Cir. 2001). Furthermore, restoration of the status quo *prior* to the

conditions that existed before State Plaza's decertification campaign is necessary to ensure

"meaningful bargaining" between Local 25 and State Plaza. *See Southwest Forest Indus., Inc. v.*

*NLRB*, 841 F.2d 270, 275 (9th Cir. 1988); *Silverman for & on behalf of NLRB v. Imperia Foods,*

*Inc.*, 646 F. Supp. 393, 400 (S.D.N.Y. 1986) ("[W]hen a union loses its majority as the result of

unfair labor practices, it is essential not to freeze the situation, but rather to re-establish the

conditions as they existed before the employers unlawful campaign." (quotation omitted)).

### 3.    Section 8(a)(5)

Pursuant to Section 8(a)(5) of the Act, "It shall be an unfair labor practice for an employer

to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. §

158(a)(5). Withdrawal of recognition of union representation on the basis of decertification

efforts "tainted" by unfair labor practices may be deemed ineffectual such that refusal to deal

with union representation on this basis is a violation of Section 8(a)(5). *See Microimage*

*Display*, 924 F.2d at 254 ("The record supports the Board's conclusion that the employer's unfair

labor practices, not a bona fide dissatisfaction with the union, caused the employees to begin

circulating the decertification petition. The employer may not rely on the petition as justification

for the withdrawal of union recognition. Without objective evidence to support its doubt about

the union's continuing majority status, we conclude the employer violated sections 8(a)(5) and

8(a)(1) by withdrawing recognition of the union."). Because the unfair labor practices violating

Section 8(a)(1) for which Petitioner has made a substantial case occurred during the four-month

time frame when the petitions were circulated, the Court finds that it is disingenuous to argue, as

Respondent does, that these actions are unrelated to the outcome of the decertification petitions

23

themselves.  Petitioner alleges and the Court finds a further violation of Section 8(a)(5) via State

Plaza's direct negotiation on July 5, 2005, with employees regarding the pay increase effected on

July 8, 2005.  Pet'r's Mem. at 15.  *See supra* § III.D.2.

State Plaza alleges that at the hearing before Administrative Law Judge Buschmann, a

number of State Plaza employees testified that they did not wish to be represented by Local 25.

*See* Resp't's Opp'n at 2.  However, as aptly stated in Local 25's amicus brief, "[t]he

determination of whether an employer's unlawful conduct tainted its withdrawal of recognition is

not premised on the subjective statements of employees as to their motives; rather, the question is

whether the employer 'committed unfair labor practices that ha[ve] the tendency to undermine

the union.'"  Amicus Reply at 15 (quoting *AT Systems West*, 342 N.L.R.B. No. 12 (Jan. 30, 2004),

slip op. at 4 (citing *Master Slack Corp.*, 271 N.L.R.B. 78, 84 (1984))).  Furthermore, the Court

views with skepticism State Plaza's stated intention of having the interests of its employees in

mind in asking the Court to honor their "choice" of union decertification.  "Employers'

invocation of employee free choice as a rationale for withdrawing recognition has, with good

reason, been met with skepticism."  *Levitz Furniture Co. of the Pacific*, 333 N.L.R.B. 717, 724 n.

45 (2001).

24

**IV:  CONCLUSION**

For the aforementioned reasons, Petitioner's [1] Petition for Injunction under Section

10(j) of the National Labor Relations Act, as Amended, is GRANTED.  An Order setting forth

the details of the injunctive relief ordered by this Court accompanies this Memorandum Opinion.


Date:   June 5, 2006

                                                    _/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge